KIM J. TROUT, ISB #2468
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
ktrout@trout-law.com
Attorney for the Plaintiff.

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>　　　Plaintiff,<br>vs.<br><br>SMITH & WESSON CORP., a Delaware corporation, and AMERICAN OUTDOOR BRANDS CORPORATION,  Nevada corporation,<br><br>　　　Defendants. | Case No. 1:18-CV-00035-CWD<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>F.R.C.P. 56 |
| SMITH & WESSON CORP., a Delaware corporation,<br><br>　　　Counterclaimant,<br>vs.<br><br>GEMINI TECHNOLOGIES, INCORPORATED, an Idaho Corporation; RONALD J. MARTINEZ, an individual; and PHILIP H. DATER, an individual,<br><br>　　　Counterdefendants. | |

Plaintiff Gemini Technologies Inc. ("Gemtech") hereby submits this memorandum in support of its motion for partial summary judgment against Defendants Smith & Wesson Corp. and American Outdoor Brands Corporation (collectively "Smith & Wesson").

## INTRODUCTION

Gemtech claims damages for breach of the parties' escrow agreement because Smith & Wesson wrongfully retained $1,500,000.00 in escrowed funds. Smith & Wesson counter-claimed in an attempt to justify its wrongful retention of the escrow funds on the basis that Gemtech allegedly: (1) failed to indemnify Smith & Wesson for unpaid taxes; (2) failed to indemnify Smith & Wesson for certain pre-acquisition liabilities; (3) failed to indemnify Smith & Wesson for alleged inaccurate representations and warranties related to Gemtech's accounts receivable; (4) failed to indemnify Smith & Wesson for alleged inaccurate representations and warranties related to Gemtech's inventory; and (5) failed to indemnify Smith & Wesson for supposed inaccurate representations and warranties related to intellectual property.

Smith & Wesson has failed to provide any material evidence in support of its counter-claims. The Court should find that Smith & Wesson breached the parties' escrow agreement and order that Smith & Wesson release the escrow funds to Gemtech without delay, together with accrued statutory interest from January 2, 2018, to present.

## STATEMENT OF UNDISPUTED FACTS

### The Escrow Agreement Dispute

a. The parties' Asset Purchase Agreement ("APA"), which closed on August 7, 2017, contains an attached escrow agreement. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 2).

b. The purpose of the escrow agreement was to provide limited use funds for any legitimate indemnity claims held by Smith & Wesson against Gemtech in connection with the APA. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 4).

c. According to the terms of the escrow agreement, Washington Trust Bank was required to hold $5,410,000.00 in escrow funds and then to release the funds to Gemtech (minus the amount of any legitimate claims). Washington Trust Bank was supposed to start releasing the funds on January 2, 2018, in the amount of $4,660,000.00—with subsequent releases of $375,000.00 in July 2018, $187,500.00 in January 2019, and $187,500 in July 2019. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 3).

d. Under Section 6(a) of the escrow agreement, Smith & Wesson was required to submit its indemnity claims prior to the expiration of the escrow period. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 3).

### The Claim Notice

e. On December 22, 2017, Smith & Wesson sent Washington Trust Bank a "claim notice," alleging that Gemtech had committed several breaches of the APA and demanded the bank withhold $1,500,000.00 of the escrow funds in order to indemnify Smith & Wesson for the alleged breaches of the APA, as follows:

    i. For indemnity against alleged invalid accounts receivables in excess of $150,000.00:

    ii. For indemnity against alleged misappropriated cash and credit card payments in an amount of $40,000.00, plus "an amount to be determined".

    iii. For indemnity against alleged duplicate shipments and other alleged

"irregular transactions."

    iv.   For indemnity against alleged necessary working capital adjustments.

    v.   For indemnity against "a claim that [Gemtech] did not have title to certain assets that were transferred to [Smith & Wesson]."

(*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 4).

  f.  Despite the escrow agreement requiring Smith & Wesson to include a "reasonably detailed description of the claim and the basis therefor and the amount, if known, asserted by Buyer for such claim," Smith & Wesson only identified $548,821 in indemnity claims, and demanded a total withholding of $1,500,000. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 4).

## The Working Capital Dispute

  g.  Two weeks later, on January 2, 2018, Smith & Wesson sent Gemtech a separate notice & objection to Gemtech's working capital calculations—including objections to Gemtech's accounts receivables calculations and other working capital calculations. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 5).

  h.  To understand this point, the APA contains a "working capital" clause, which states that Gemtech is entitled to receive any excess working capital that had accrued above the agreed upon amount, *i.e.*, $1,689,000.00 in working capital as of 12/31/2016. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 1).

  i.  The APA defines the term "working capital" to mean: (i) Gemtech's accounts receivable and inventory, minus (ii) the Company's accounts payable as of December 31, 2016. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 1).

j. The APA contains a special dispute resolution clause for resolving a dispute among the parties with respect to the determination of the purchase price. This clause requires that any dispute with respect to the purchase price will "be referred to a recognized firm of independent certified public accountants selected by mutual agreement of the Company and Buyer (the "Settlement Accountants"), and <u>the determination of the Settlement Accountants shall be final and shall not be subject to further review, challenge, or adjustment absent fraud</u>." (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 1) (emphasis added).

k. On October 20, 2017, Smith & Wesson submitted its Buyer's Report which demanded a Purchase Price adjustment of $358,821,58 in favor of Smith & Wesson. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 8).

l. On December 4, 2017, Gemtech submitted its Seller's Report which asserts the Purchase Price should be adjusted by increasing the Purchase Price in Gemtech's favor in the amount of $82,839.61. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 9).

m. On January 18, 2018, Smith & Wesson sent a second Buyer's Report which demanded a Purchase Price adjustment of $505,547.56 in Smith & Wesson's favor. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 10).

**The Grant Thornton Settlement**

n. As a result of the disagreements between Smith & Wesson and Gemtech, the matter was referred to Grant Thornton for a "final resolution." (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶12).

o. The parties identified the following list of disputed items for resolution—including (by implication) the resolution of Smith & Wesson' inventory and accounts receivable disputes contained in the December 22, 2017 escrow notice:

**I. DISPUTED ITEMS**

The Buyer and Seller have identified the following Disputed Items:[14]

Summary of Disputed Items

| Disputed Item | Seller | Buyer | | Disputed Amount (Jan. 2, 2018) | Buyer Updated Amount | | Add'l Disputed Amount (Jan. 18, 2018) | Total Disputed Amount |
|---|---|---|---|---|---|---|---|---|
| Eval / Demo Suppressors | $ 146,158 | $ 109,618 | (1.a.) | $ (36,539) | $ 109,618 | | $ - | $ (36,539) |
| Suppressors for Sale | 1,094,665 | 960,633 | (1.b.) | (134,032) | 996,909 | (3.a.) | 36,277 | (97,755) |
| Stillwood Ammunition | 137,996 | 35,852 | (1.c.) | (102,144) | 76,452 | (3.b.) | 40,600 | (61,544) |
| Parts & Pieces Inventory | 168,946 | - | (2) | (168,946) | - | | - | (168,946) |
| Eagle 22 LR Ammunition | - | - | | - | 3,657 | (3.c.) | 3,657 | 3,657 |
| Accessories | 879,156 | 879,156 | | - | 889,656 | (3.d.) | 10,500 | 10,500 |
| Net Accounts Receivable | 1,075,488 | 1,075,488 | | - | 837,729 | (3.e.) | (237,759) | (237,759) |
| Total: | $ 3,502,408 | $ 3,060,747 | | $ (441,661) | $ 2,914,021 | | $ (146,726) | $ (588,387) |

Sources:
- Engagement Letter, Attachment B
- Appendix C to Seller's Opening Submission
- Exhibit 4 to Buyer's Opening Submission

(*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Ex. 11, p. 3).

p. On February 4, 2019, Grant Thornton issued a final written decision, including a settlement of the parties' inventory and receivables disputes, as follows:

### IV. CONCLUSION

The amounts below summarize the financial impact of my findings described throughout this report.

| Disputed Item | Disputed Amount | Settlement Accountants' Determination: In Favor of Seller | Settlement Accountants' Determination: In Favor of Buyer |
|---|---|---|---|
| (1) Inventory Valuation Adjustment | $ (272,716) | $ (220,523) | $ (52,193) |
| (2) Parts & Pieces Adjustment | (168,946) | - | (168,946) |
| Disputed Amount | $ (441,661) | $ (220,523) | $ (221,139) |
| (3) January 18th Letter Adjustment | (146,726) | (146,726) | - |
| Additional Disputed Amount | $ (146,726) | $ (146,726) | $ - |
| Total of Disputed Amount and Additional Disputed Amount | $ (588,387) | $ (367,249) | $ (221,139) |

**Notes:**
Negative amounts presented under Disputed Amount represent the amount of Buyer's proposed decrease to Working Capital.

(*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Ex. 11).

    q.    The only remaining indemnification claim from the December 22, 2017 escrow notice that was not decided in the written Grant Thornton decision was the "[o]ngoing investigation of a claim that [Gemtech] did not have title to certain assets that were transferred to [Smith & Wesson]." (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 16).

    r.    Neither party sought judicial confirmation of the Grant Thornton decision (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶13).

    s.    Moreover, Smith & Wesson did not seek an administrative appeal (or any judicial review) of the binding arbitration decision. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 14).

    t.    As part of its decision, Grant Thornton reduced the total calculated Purchase Price by $138,299.25 in Smith & Wesson's favor. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 15). In addition, and pursuant to the APA, Gemtech was

to pay the Settlement Accountant's fees. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 17). This means that Smith & Wesson received a material benefit from the Grant Thornton resolution.

u. On June 20, 2019, Gemtech and Smith & Wesson executed a Joint Written Direction to Washington Trust Bank in the amount of $171,706.58, which represented the adjustment to the Purchase Price as well as the fees paid to Grant Thornton by Smith & Wesson. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 18).

**Counterclaim for Working Capital Damages**

v. Smith & Wesson has reasserted its prior working capital claims, including its inventory claims and receivables claims and other working capital claims, as counterclaims to the breach of escrow agreement claim. (*Answer to Complaint and Counterclaim* [Dkt. 28], ¶21).

w. Smith & Wesson's purported counterclaims equate to nothing more than a blatant attempt to do an end-around of the undisputed fact that said claims were all part of the final Grant Thornton arbitration decision.

**Counterclaim for EU Trademark Damages**

x. Smith & Wesson asserted its remaining escrow claim, *i.e.*, its EU Trademark indemnification claim, as a counterclaim to the breach of escrow agreement claim. (*See Answer to Complaint and Counterclaim Against Gemini Technologies Incorporated, Ronald J. Martinez, and Philip H. Dater* [Dkt. 28]).

y. Smith & Wesson does not provide any context for this claim in its pleadings.

z. The relevant material facts on this issue are not in dispute, to wit:

  i. In 2000, Dr. Philip Dater, one of Gemtech's founding members,

formed a business relationship with Greg Felton, the owner of Law Enforcement International, Ltd. ("LEI"), a European gun manufacturing company. (*Declaration of Philip H. Dater in Support of Motion for Partial Summary Judgment,* ¶ 2; *Declaration of Greg Felton in Support of Motion for Partial Summary Judgment*, ¶ 2).

    ii.      In 2003, Dr. Dater and Greg Felton agreed to cooperate such that Gemtech was allowed to use one of LEI's patented inventions in the U.S. in exchange for LEI being able to use one of Gemtech's inventions in the EU. (*Declaration of Philip H. Dater in Support of Motion for Partial Summary Judgment,* ¶ 3).

    iii.      In 2003, Gemtech registered the mark "Gemtech" with the United States Patent and Trademark Office. (*Declaration of Philip H. Dater in Support of Motion for Partial Summary Judgment,* ¶ 4).

    iv.      In 2003, LEI registered the mark "Gemtech" in the European Union. (*Declaration of Philip H. Dater in Support of Motion for Partial Summary Judgment,* ¶ 5; *Declaration of Greg Felton in Support of Motion for Partial Summary Judgment*, ¶ 3).

    v.      Gemtech did not object to LEI's registration and use of the Gemtech trademark in the EU because the United States Department of State rules prohibited Gemtech from selling suppressors overseas to any persons or entities (other than government agencies). Thus, from 1993 to 2016, Gemtech did not register any overseas trademarks and focused exclusively on its U.S. trademarks. (*Declaration of Philip H. Dater in Support of Motion for Partial Summary Judgment,* ¶ 6).

    vi.      In 2017, and as part of the APA, Gemtech transferred all its "intangible rights," including its existing trademark rights, to Smith & Wesson. (*Declaration of*

*Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 19).

vii.   Understandably, Gemtech could not transfer (or even list) the EU trademark in the APA because LEI owned the EU registered mark at the time of the APA. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 20).

viii.   On August 22, 2017 Smith & Wesson requested a confirmation that Gemtech's only trademarks were held in the United States. This fact was confirmed by Ron Martinez on the same day. (*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* ¶ 21).

ix.   In 2019, *i.e.*, 18 months after the closing on the APA, and 13 months after Smith & Wesson's December 22, 2017 Notice of Claim, Robert J. Cicero, Senior Vice President at Smith & Wesson, was approached by Greg Felton, owner of Law Enforcement International, at Las Vegas gun show ("SHOT Show") about the EU trademark. (*Declaration of Greg Felton in Support of Motion for Partial Summary Judgment,* ¶ 4).

x.   Following the 2019 SHOT Show, Mr. Felton and Mr. Cicero corresponded, and Mr. Felton offered to grant Smith & Wesson a non-exclusive (but perpetual) license to use the Gemtech trademark in the EU. Mr. Cicero refused this offer. (*Declaration of Greg Felton in Support of Motion for Partial Summary Judgment,* ¶ 5).

xi.   Mr. Felton also offered to sell the EU trademark to Smith & Wesson for a mere $100,000.00. Again, Smith & Wesson refused the offer, saying that the EU trademark for Gemtech was not worth even $100,000.00. (*Declaration of Greg Felton in*

*Support of Motion for Partial Summary Judgment,* ¶ 6).

xii.	On March 31, 2021 Smith & Wesson formally revoked the EU trademark held by LEI through a trademark dispute process. Smith & Wesson was awarded its fees against LEI in the trademark dispute process. (*Declaration of Greg Felton in Support of Motion for Partial Summary Judgment,* Exhibit 1).

xiii.	LEI has never asserted any damage claims against Smith & Wesson, *e.g.*, trademark infringement claims or any other trademark appropriation claims. (*Declaration of Greg Felton in Support of Motion for Partial Summary Judgment,* ¶ 9).

### Counterclaim for Unpaid Tax Damages

aa.	Smith & Wesson has asserted an unpaid Oregon state taxes claim. (*Answer to Complaint and Counterclaim*, ¶21(a) [Dkt 28]).

bb.	To Gemtech's knowledge, it has no outstanding Oregon state taxes due. (*Declaration of Ron Martinez in Support of Motion for Partial Summary Judgment,* ¶ 22).

### Summary of Counterclaims

cc.	The following table represents the known elements for Smith & Wesson's alleged counterclaims for indemnification:

| Counterclaim Description | Amount |
| --- | --- |
| Disputed Accounts Receivable Claim[1] | $237,759.15 |
| Disputed Withheld Cash Claim | $84,179.15 |
| Disputed Inventory Claim[2] | $174,535.22 |

---

[1] Addressed by Grant Thornton's determination.
[2] Addressed by Grant Thornton's determination.

| | |
|---|---|
| Disputed Arsenal Claim[3] | $219,700.00 |
| Disputed Defective Products Claim | $36,695.86 |
| Disputed Suppressor Claim | $1,725.00 |
| Disputed European Union Trademark Claim | $1,500,000.00 |
| Disputed Unpaid Tax Claim | (unknown) |
| **Total:** | $2,254,594.38 |

(*Declaration of Kim J. Trout in Support of Motion for Partial Summary Judgment,* Exhibit 1).[4]

## **LEGAL STANDARDS**

"To obtain a summary judgment, the movant must demonstrate the absence of any genuine issue of material fact, and the evidence submitted to the court must be viewed in the light most favorable to the opposing party. Movant must show his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *In re: Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 184 (8th Cir. 1976) (internal citations omitted).

"The fact that there exists an important, difficult or complicated question of law is not a bar to a summary judgment where it is clear there is no genuine issue of a material fact. Resolution of the legal issues will not be rendered easier by going through the trial when there is no issue of fact to be tried." *Lewis v. Coleman*, 257 F. Supp. 38, 40 (S.D. W. Va. 1966).

"Where the movant brings forward and supports his motion for summary judgment,

---

[3] Addressed by Grant Thornton's determination.
[4] Smith & Wesson is merely shifting its entire December 22, 2017 escrow demand, i.e., $1,500,000.00, to the EU trademark claim and is now reasserting the same (or similar) values from the Grant Thornton arbitration for its alleged inventory & receivables claims.

his opponent may not rest merely upon his pleadings but rather must come forward to show genuine issues of fact. Mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bryant v. Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974).

## LEGAL ARGUMENTS

1. **Smith & Wesson's Working Capital Claims Are Barred by the Grant Thorton Decision.**

Smith & Wesson cannot reassert its working capital claims in this litigation, *i.e.*, its alleged inventory and receivables claims, because those claims were resolved in the final Grant Thornton decision. The APA was clear that all such claims were part of the working capital adjustment process (APA Section 1.2) and the closing balance sheet process (APA Section 1.3), and that any disputes in those processes were subject to binding third-party arbitration:

> (b) In the event that the Company submits a Company's Report and Buyer's and the Company's Accountants are unable to resolve the disagreements set forth in such report within 30 days after the date of the Company's Report, then such disagreements shall be referred to a recognized firm of independent certified public accountants selected by mutual agreement of the Company and Buyer (the "Settlement Accountants"), and the determination of the Settlement Accountants shall be final and shall not be subject to further review, challenge, or adjustment absent fraud. The Settlement Accountants shall use their best efforts to reach a determination not more than 45 days after such referral. The costs and expenses of the services of the Settlement Accountants shall be paid by the Company if (i) the difference between (A) the Purchase Price resulting from the determinations of the Settlement Accountants, and (B) the Purchase Price resulting from the determinations set forth in the Company's Report, is greater than (ii) the difference between (A) the Purchase Price resulting from the determinations of the Settlement Accountants, and (B) the Purchase Price resulting from Buyer's calculations as set forth in the deliveries pursuant to Section 1.4 hereof; otherwise, such costs and expenses of the Settlement Accountants shall be paid by Buyer.

(*Declaration of Ronald J. Martinez in Support of Motion for Partial Summary Judgment,* Exhibit 1).

The parties unquestionably resolved all of their purchase price disputes in the Grant Thornton arbitration, *i.e.*, accounts receivable disputes, inventory disputes, arsenal claim disputes. (See above). As a matter of contract—the parties had no choice but to resolve the disputes in that arbitration. Under both federal and state legal authorities, Smith & Wesson is

now subject to the principles of res judicata and collateral estoppel in terms of the disputes and is estopped from trying to raise the disputes (as counterclaims) in this litigation. This includes all aspects of the disputes which could have—but were not—resolved in arbitration. Smith & Wesson is not entitled to its alleged relief because these disputes are now moot.

For relevant Ninth Circuit federal case law, *see NTCH-WA, Inc. v. ZTE Corp.,* 921 F.3d 1175 (9th Cir. 2019) (a valid and final award by arbitration has the same effects under the rules of res judicata as a judgment of a court); *Trinchitella v. Am. Realty Partners, LLC,* 2019 U.S. Dist. LEXIS 102863 (E.D. Cal. June 19, 2019) (as to the same party, and for purposes of res judicata, an unconfirmed arbitration award is equivalent to a final judgment).

See also *Vans, Inc. v. Rosendahl*, 307 B.R. 199 (Bankr. D. Or. 2004) (an unconfirmed arbitration award can be regarded as a final determination for issue preclusion on subject matters of fact and law in appropriate circumstances; although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until it is confirmed, it is, nevertheless, the final and binding decision or judgment of the arbitrator in the exercise of his quasi-judicial function to determine the disputed matters referred to him by the parties to the submission; it is a recognized principle that an arbitration award is conclusive on matters of fact and law; the essential adjudication in an arbitration proceeding is the award; the function of the court is limited to confirming the award as made, or to correct and confirm it as corrected, or to vacate it within the limitations and as provided by the state statutes).

For Delaware case law, *see Country Life Homes, Inc. v. Shaffer*, No. 2288-S, 2007 Del. Ch. LEXIS 23 (Ch. Jan. 31, 2007) (it is not necessary that an arbitration award be confirmed judicially before it is entitled to res judicata, or claim preclusion, treatment); *Rss Acquisition v. Dart*

*Grp. Corp.*, C.A. No. 99C-05-275-WTQ, 1999 Del. Super. LEXIS 591 (Super. Ct. Dec. 30, 1999) (arbitration awards have res judicata effect on subsequent litigation efforts in the courts); *Rss Acquisition v. Dart Grp. Corp., C.A.* No. 99C-05-275-WTQ, 1999 Del. Super. LEXIS 591 (Super. Ct. Dec. 30, 1999) (res judicata constitutes an absolute bar on all theories that were litigated, or which could have been litigated, by the parties in the earlier proceeding).

See also *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wash. 2d 885, 16 P.3d 617 (2001) (the Supreme Court of Washington held that arbitration is intended to be final and that parties agree to waive their right to have their disputes resolved in the court system and cannot submit a dispute to arbitration only to see if it goes well for their position before invoking the courts' jurisdiction; the Court found that the state arbitration act does not contemplate nonbinding arbitration and that under the arbitration act and that there is no such thing as a trial de novo; review in the trial court is limited to vacating, modification, or correction of the award).

See also *5 Bros., Inc. v. D.C.M. of New York, LLC*, 39 Misc. 3d 711, 960 N.Y.S.2d 876 (N.Y. Sup.) (to permit parties who agree to arbitrate to then litigate the very same issues necessarily determined by the arbitrator would contravene the well-established policy of the State of New York to encourage resolution of disputes by means of arbitration).

See also *Archer-Daniels-Midland Co. v. Paillardon*, 944 F. Supp. 2d 636 (C.D. Ill. 2013) (the courts uphold an arbitration award so long as an arbitrator is even arguably construing or applying the contract at issue and is acting within the scope of this authority).

See also 4 Am. Jur. 2d Alternative Dispute Resolution § 196 (generally, a very high degree of conclusiveness attaches to an arbitration award; an arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrator; when parties agree

to binding arbitration, they agree to accept the result and may not relitigate the facts as found by the arbitrator; once a case is in arbitration, litigation of a second case arising out of the same transactional nucleus of facts cannot be permitted within the courts).

   2. **Smith & Wesson Does Not Have a Valid Trademark Indemnification Claim.**

Smith & Wesson does not have a valid trademark indemnification claim, *i.e.*, it does not have a valid basis to withhold $1,500,000.00 of the purchase price for its alleged trademark indemnification claim. According to Black's Dictionary, the term "indemnity" means:

> A duty to make good any loss, damage, or liability incurred by another; The right of an injured party to claim reimbursement for loss, damage, or liability from a person who has such a duty; Reimbursement or compensation for loss, damage, or liability in tort.

(*Black's Law Dictionary,* 10th ed., p. 886, "Indemnity").

Smith & Wesson's alleged trademark indemnity claim does not meet this definition because it suffered no damages, *i.e.*, Smith & Wesson has not been subject to any trademark infringement claims. Even if Smith & Wesson had known about the existence of the EU trademark at the time of the APA (through Gemtech's disclosure or its own due-diligence) the outcome would have been the same—Gemtech would not have been able to transfer the mark under the APA, and Smith & Wesson would have still been required to approach LEI about using or purchasing the mark. In the end, Smith & Wesson failed to mitigate its alleged damages by refusing LEI's offer to purchase the trademark for a mere $100,000.00 and, more specifically, by refusing LEI's offer to use the EU trademark for $0.00, in perpetuity. (See above). Thus, Smith & Wesson's alleged trademark indemnification claim is a complete fiction and Gemtech is entitled to a release of the $1,500,000.00 escrow deposit as a matter of law.

Smith & Wesson recently obtained a revocation of the EU trademark. See above. This means that Smith & Wesson is no longer at *any* risk of trademark infringement damages. To-date, Smith & Wesson has not produced any evidence that it incurred trademark-related damages. But even if it did, Gemtech is not responsible for the damages because Gemtech did not own (and, therefore, could not transfer) the EU trademark at the time of the APA. Smith & Wesson is not entitled to its alleged relief because it does not have any cognizable damages.[5]

See *Gugino v. Ortega (In re Pierce),* 428 B.R. 524 (Bankr. D. Idaho 2010) (the principle is well settled that a seller of personal property can convey no greater title than he has; it makes no difference that the purchaser has no notice of, and is ignorant of, the existence of other parties in interest); See also *Taylor v. Armiger Body Shop*, 40 Del. Ch. 22, 172 A.2d 572 (1961) (it is a general rule that a vendor of property can convey no greater right or title than he has).
*See also Yang Ming Marine Transp. Corp. v. Okamoto Freighters LTD.*, 259 F.3d 1086 (9th Cir. 2001) (a nonbreaching party to a contract has a duty to take reasonable steps to mitigate its damages, and its failure to do so may prevent it from recovering damages that otherwise could have been avoided); see also *Conaway v. New Hope Tile, LLC,* 2017 Del. C.P. LEXIS 30 (under Delaware law, if it is feasible to do so, a party is generally obligated to mitigate its damages; a party cannot recover damages for loss that he could have avoided by reasonable efforts; in other

---

[5] Gemtech expects Smith & Wesson to say that it had substantial damages in the trademark matter, e.g., that it lost out on European sales or that it incurred fees in the trademark revocation process. But even under such a speculative theory, Gemtech is not responsible for the loss because it did not own the EU trademark at the time of the APA, or thereafter. Gemtech suspects that if the issue had arisen at the time of the APA, Smith & Wesson would have received the same kind offer from Greg Felton as it received in 2019, i.e., that it could either purchase the mark for pennies on the dollar or else have licensed use of the mark for free in perpetuity. In either scenario, Smith & Wesson is responsible for its own losses because it failed to mitigate its alleged damages and instead waged a headstrong, pointless, expensive, and production-halting trademark battle that could have been avoided if Smith & Wesson had acted reasonably and taken Mr. Felton up on one of his offers.

words, the injured party has a duty to minimize its costs and losses).

   3. **Smith & Wesson Does Not Have a Valid Tax Indemnification Claim.**

Smith & Wesson does not have a valid Oregon state tax indemnification claim because, to Gemtech's knowledge, there are no unpaid tax liabilities for Gemtech in connection with the APA. (*Declaration of Ron Martinez in Support of Motion for Partial Summary Judgment,* ¶ 22). As with the EU trademark claim, Smith & Wesson is seeking indemnity from Gemtech for damage claims which do not exist. Gemtech is entitled to summary judgment as a matter of law.

See *Julian Petroleum Corp. v. Courtney Petroleum Co.,* 22 F.2d 360 (9th Cir. 1927) (as a general rule, remote, uncertain, and speculative damages are not recoverable); *see also PharmAthene, Inc. v. SIGA Techs., Inc.,* Civil Action No. 2627-VCP, 2010 Del. Ch. LEXIS 234 (Ch. Nov. 23, 2010) (under Delaware law, a plaintiff can only recover those damages which can be proven with reasonable certainty; no recovery can be had for losses which are speculative).

   4. **Smith & Wesson Cannot Sustain its Other Counterclaims.**

Smith & Wesson does not have a factual basis for its other counterclaims, *i.e.*, the withheld cash claim, the defective products claim, or the suppressor claim, for the same reason set out in the previous two sections, *viz.,* Smith & Wesson has not provided any proof of actual damages for these claims and is therefore not entitled to recover on the claims. Without that proof, Smith & Wesson is asking Gemtech to indemnify it against a series of fictions. See *Julian Petroleum Corp.* and *PharmAthene, Inc.,* cited above (under Delaware law, parties cannot recover for speculative damages). Accordingly, the Court should grant Gemtech summary judgment in the matter and should dismiss Smith & Wesson's remaining counterclaims.

### 5. <u>Gemtech is Entitled to Summary Judgment on The Counterclaims.</u>

Gemtech is entitled to summary judgment on its breach of escrow agreement claim and on the counterclaims. Smith & Wesson does not have a valid basis in fact or law to withstand the breach of escrow agreement claim by means of its counterclaims, as the counterclaims were either resolved in arbitration or they simply do not exist. The Court should order Smith & Wesson turn over the full escrow balance without further delay, together with a payment of accrued statutory interest from January 2, 2018, to present.

Admittedly, the Court is required to construe all facts and reasonable inferences in Smith & Wesson's favor. See *New Phase Dev., LLC v. Cook,* No. 4:13-CV-00520-EJL, 2015 U.S. Dist. LEXIS 98461 (D. Idaho July 27, 2015) (on summary judgment, all disputed facts and reasonable inferences must be construed in favor of the nonmoving party). But here, the material facts related to the escrow agreement—the dispute resolution procedures, the final decision in arbitration, the lack of proof of damages—are not in genuine material dispute. The only reasonable inference to draw from these facts is that Smith & Wesson has wrongfully withheld the balance of the escrow funds and should now be required to disgorge them.

### <u>CONCLUSION</u>

For each of the above and foregoing reasons, the Court should grant Gemtech partial summary judgment on its breach of escrow agreement claim, as well as on each of Smith & Wesson's counterclaims, ordering Smith & Wesson to release the entire escrow balance plus accrued statutory interest from January 2, 2018, to present at the Delaware statutory rate.[6]

---

[6] 6. Del. C. Ann. § 2301(a).

TROUT LAW, PLLC

    /s/ *Kim J. Trout*
Kim J. Trout

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2021, a true and correct copy of the above and foregoing document was filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means.

B. Newal Squyres
    NSquyres@hollandhart.com

Stefan J. Hasselblad
    SJHasselblad@hollandhart.com

    /s/ *Kim J. Trout*
Kim J. Trout