# EXHIBIT 3
# TO THE DECLARATION OF
# RONALD J. MARTINEZ

**Execution Version**

# ESCROW AGREEMENT

This **ESCROW AGREEMENT**, dated as of August 7, 2017 (this "Escrow Agreement"), is made by and among **SMITH & WESSON CORP.**, a Delaware corporation ("Buyer"); **GEMINI TECHNOLOGIES, INCORPORATED**, an Idaho corporation (the "Company"); and **WASHINGTON TRUST BANK**, a Washington banking association, as escrow agent hereunder ("Escrow Agent").

## BACKGROUND

A. Buyer and the Company have entered into that certain Asset Purchase Agreement (the "Underlying Agreement"), dated as of June 29, 2017, pursuant to which Buyer is purchasing substantially all of the assets of the Company. The Underlying Agreement provides that Buyer shall deposit on behalf of the Company the Escrow Funds (defined below) in a segregated escrow account to be held by Escrow Agent for the purpose of indemnifications that may become due to Buyer pursuant to the Underlying Agreement.

B. Escrow Agent has agreed to accept, hold, and disburse the funds deposited with it and the earnings thereon in accordance with the terms of this Escrow Agreement.

C. Buyer and the Company have appointed the Representatives (as defined below) to represent them for all purposes in connection with the funds to be deposited with Escrow Agent and this Escrow Agreement.

## AGREEMENT

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1. Definitions. The following terms shall have the following meanings when used herein:

"Buyer Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated in a writing signed by Buyer and delivered to Escrow Agent and the Company Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

"Claim Notice" shall have the meaning set forth in Section 6(a).

"Company Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated in a writing signed by the Company and delivered to Escrow Agent and the Buyer Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

"Escrow Funds" shall mean the funds deposited with Escrow Agent pursuant to Section 3 of this Escrow Agreement, together with any interest and other income thereon.

"Escrow Period" shall mean the period commencing on the date hereof and ending at the close of Escrow Agent's business day on August 7, 2019, unless earlier terminated pursuant to this Escrow Agreement.

"Indemnified Parties" shall have the meaning set forth in Section 11.

"Indemnity Claim" shall have the meaning set forth in Section 6(a).

"Joint Written Direction" shall mean a written direction executed by the Representatives and directing Escrow Agent to disburse all or a portion of the Escrow Funds or to take or refrain from taking any other action pursuant to this Escrow Agreement.

"Representatives" shall mean the Buyer Representative and the Company Representative.

2. **Appointment of and Acceptance by Escrow Agent**. Buyer and the Company hereby appoint Escrow Agent to serve as escrow agent hereunder. Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of the Escrow Funds in accordance with Section 3 below, agrees to hold, invest, and disburse the Escrow Funds in accordance with this Escrow Agreement.

3. **Deposit of Escrow Funds**. Simultaneously with the execution and delivery of this Escrow Agreement, Buyer, on behalf of the Company, will transfer the Escrow Funds in the amount of $5,410,000.00, by wire transfer of immediately available funds, to an account designated by Escrow Agent.

4. **Disbursements of Escrow Funds**. Escrow Agent shall disburse Escrow Funds at any time and from time to time, upon receipt of, and in accordance with, a Joint Written Direction. Such Joint Written Direction shall contain complete payment instructions, including wiring instructions or an address to which a check shall be sent. In addition, subject to the terms of this Escrow Agreement, Escrow Agent shall disburse the Escrow Funds to the Company according to the following schedule:

(a) on January 2, 2018 (the "Initial Release Date"), Escrow Agent shall disburse from the Escrow Funds $4,660,000.00; provided, however, that the amount so disbursed from the Escrow Funds pursuant to this paragraph (a) shall be reduced by the aggregate amount of all Indemnity Claims that have been paid or remain unresolved, if any, delivered by the Buyer to the Escrow Agent on or prior to the Initial Release Date;

(b) on August 7, 2018 (the "Second Release Date"), Escrow Agent shall disburse from the Escrow Funds $375,000.00; provided, however, that the amount so disbursed from the Escrow Funds pursuant to this paragraph (b) shall be reduced by the aggregate amount of all Indemnity Claims that have been paid or remain unresolved, if any, delivered by the Buyer to the Escrow Agent on or prior to the Second Release Date;

(c) on February 7, 2019 (the "Third Release Date"), Escrow Agent shall disburse from the Escrow Funds $187,500.00; provided, however, that the amount so disbursed from the Escrow Funds pursuant to this paragraph (c) shall be reduced by the aggregate amount of all Indemnity Claims that have been paid or remain unresolved, if any, delivered by the Buyer to the Escrow Agent on or prior to the Third Release Date; and

(d) on August 7, 2019 (the "Final Release Date"), Escrow Agent shall disburse from the Escrow Funds $187,500.00; provided, however, that the amount so disbursed from the Escrow Funds pursuant to this paragraph (d) shall be reduced by the aggregate amount of all Indemnity Claims that have been paid or remain unresolved, if any, delivered by the Buyer to the Escrow Agent on or prior to the Final Release Date.

Prior to any disbursement of Escrow Funds, Escrow Agent shall have received reasonable identifying information regarding the recipient such that Escrow Agent may comply with its regulatory obligations and reasonable business practices, including without limitation a completed United States Internal

Revenue Service ("IRS") Form W-9 or original IRS Form W-8, as applicable. All disbursements of funds from the Escrow Funds shall be subject to the fees and claims of Escrow Agent and the Indemnified Parties pursuant to Section 11 and Section 12 below.

5.  Suspension of Performance; Disbursement Into Court. If, at any time, (i) there shall exist any dispute between Buyer, the Company, or the Representatives with respect to the holding or disposition of all or any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, (ii) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or (iii) the Representatives have not, within fifteen (15) calendar days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 8 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

(a) suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed; or

(b) petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction, in any venue convenient to Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all Escrow Funds, after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall have no liability to Buyer, the Company, or the Representatives, their respective owners or members or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

6.  Resolutions and Disbursement of Claims. If during the Escrow Period Buyer elects to make a claim for indemnity against the Company, then the procedures for administering and resolving such claims shall be as follows:

(a) If Buyer elects to assert a claim for indemnity in accordance with the Underlying Agreement (an "Indemnity Claim"), it must give written notice of such claim (a "Claim Notice") to Escrow Agent and the Company prior to the expiration of the Escrow Period. Such Claim Notice shall include a reasonably detailed description of the claim and the basis therefor and the amount, if known, asserted by Buyer for such claim (including, if appropriate, an estimate of all costs and expenses reasonably expected to be incurred by Buyer by reason of such claim). Within ten (10) calendar days after the date upon which such Claim Notice is delivered to Escrow Agent and the Company (the "Claim Notice Delivery Date"), the Company may advise Buyer and Escrow Agent in writing (a "Claim Response") whether the Company objects to any or all (the "Contested Amount") of the Claim Notice amount, and the reasons for such objection in reasonable detail.

(b) Escrow Agent shall pay an Indemnity Claim to Buyer in the amount of the Claim Notice (i) if Escrow Agent has not received from the Company a Claim Response within ten (10) calendar days after the Claim Notice Delivery Date and Buyer has provided a written statement to Escrow Agent

3

stating that Buyer has delivered the Claim Notice to the Company in accordance with the notice provisions as defined herein, and that Buyer has not received the Company's Claim Response; or (ii) pursuant to a Joint Written Direction.

(c) If the Company delivers to Escrow Agent and Buyer a Claim Response, Escrow Agent shall release to Buyer all of the Claim Notice amount except for the Contested Amount, if any. Thereafter, Escrow Agent shall release the Contested Amount only pursuant to (i) a Joint Written Direction or (ii) the order, judgment, or decree of any court or the award of an arbitrator chosen by Buyer and the Company.

(d) Escrow Agent shall have no responsibility to determine the validity or sufficiency of any Claim Notice or Claim Response or whether any Claim Notice or Claim Response has been received by, or to provide a copy of any Claim Notice or Claim Response to, any of Buyer, the Company, or their respective Representatives.

7. <u>Investment of Funds</u>.  Based upon Buyer's and the Company's prior review of investment alternatives, in the absence of further specific written direction to the contrary, Escrow Agent is directed to initially invest and reinvest the Escrow Funds in the investment indicated on <u>Schedule B</u> hereto.  The Company and Buyer may provide written instructions changing the investment of the Escrow Funds to Escrow Agent; provided, however, that no investment or reinvestment may be made except in the following: (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United State of America; (b) U.S. dollar denominated deposit accounts and certificates of deposits issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which such deposits are either (i) insured by the Federal Deposit Insurance Corporation or a similar governmental agency, or (ii) with domestic commercial banks which have a rating on their short- term certificates of deposit on the date of purchase of "A-1" or "A-1+" by S&P or "P-1" by Moody's and maturing no more than 360 days after the date of purchase (ratings on holding companies are not considered as the rating of the bank); (c) repurchase agreements with any bank, trust company, or national banking association (including Escrow Agent and its affiliates); or (d) institutional money market funds, including funds managed by Escrow Agent or any of its affiliates; provided that Escrow Agent will not be directed to invest in investments that Escrow Agent in its sole discretion determines are not consistent with Escrow Agent's policy or practices. Buyer and the Company acknowledge that Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice.

If Escrow Agent has not received a Joint Written Direction at any time that an investment decision must be made, Escrow Agent is directed to invest the Escrow Funds, or such portion thereof as to which no written investment instruction has been received, in the investment indicated on <u>Schedule B</u> hereto.  All investments shall be made in the name of Escrow Agent.  Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to Buyer and the Company, sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds permitted or required hereunder.  All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds.  Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Escrow Agreement, or for any loss, cost, or penalty resulting from any sale or liquidation of the Escrow Funds.  With respect to any Escrow Funds received by Escrow Agent after twelve o'clock, p.m., Eastern Standard Time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in New York, New York and the New York Stock Exchange are open for business.

8. <u>Resignation or Removal of Escrow Agent</u>.  Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving thirty (30) days prior written notice to

Buyer and the Company specifying a date when such resignation shall take effect, and, after the date of such resignation notice, notwithstanding any other provision of this Escrow Agreement, Escrow Agent's sole obligation will be to hold the Escrow Funds pending appointment of a successor Escrow Agent. Similarly, Escrow Agent may be removed at any time by Buyer and the Company giving at least thirty (30) days' prior written notice to Escrow Agent specifying the date when such removal shall take effect. Buyer and the Company jointly shall appoint a successor Escrow Agent hereunder prior to the effective date of such resignation. If Buyer and the Company fail to appoint a successor Escrow Agent within such time, Escrow Agent shall have the right to petition a court of competent jurisdiction to appoint a successor Escrow Agent, and all documented costs and expenses (including without limitation reasonable and documented attorneys' fees) related to such petition shall be paid by Buyer and the Company jointly and severally. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction and payment to the retiring Escrow Agent of all fees and expenses (including court costs and reasonable and documented attorneys' fees) payable to, incurred by, or expected to be incurred by the retiring Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

9. <u>Binding Effect; Successors</u>. This Escrow Agreement shall be binding upon the respective parties hereto and their heirs, executors, successors, or permitted assigns. If Escrow Agent consolidates, merges, or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Escrow Agreement) to another corporation, the successor or transferee corporation without any further act shall be the successor Escrow Agent.

10. <u>Liability of Escrow Agent</u>. Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement, including without limitation any other agreement between any or all of the parties hereto or any other persons even though reference thereto may be made herein. Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that Escrow Agent's gross negligence or willful misconduct was the sole cause of any loss to Buyer or the Company. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request, or other instrument, not only as to its due execution, validity, and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential, or punitive damages or penalties (including, but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action. Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control, including without limitation acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, power failures, earthquakes, or other disasters. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds are deposited, this Escrow Agreement, or the Underlying Agreement, or to appear in, prosecute, or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving any party hereto, and shall incur no liability and shall be fully indemnified from any liability whatsoever in acting in accordance with the advice of

such counsel. Buyer and the Company, jointly and severally, shall promptly pay, upon demand, the reasonable and documented fees and expenses of any such counsel. Buyer and the Company agree to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder.

Escrow Agent is authorized, in its sole discretion, to comply with final orders issued or process entered by any court with respect to the Escrow Funds, without determination by Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Funds is at any time attached, garnished, or levied upon under any court order, or in case the payment, assignment, transfer, conveyance, or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment, or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment, or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if Escrow Agent complies with any such order, writ, judgment, or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment, or decree may be subsequently reversed, modified, annulled, set aside, or vacated.

11. <u>Indemnification of Escrow Agent</u>. From and at all times after the date of this Escrow Agreement, Buyer and the Company, jointly and severally, shall, to the fullest extent permitted by law, indemnify and hold harmless Escrow Agent and each director, officer, employee, attorney, agent, and affiliate of Escrow Agent (collectively, the "<u>Indemnified Parties</u>") against any and all documented actions, claims (whether or not valid), losses, damages, liabilities, penalties, costs, and expenses of any kind or nature (including without limitation reasonable and documented attorneys' fees, costs, and expenses) incurred by or asserted against any of the Indemnified Parties, whether direct, indirect, or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action, or proceeding (including any inquiry or investigation) by any person, including without limitation Buyer, the Company, and the Representatives, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance, or failure of performance in connection with this Escrow Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit, or the target of any such inquiry or investigation; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party. Buyer and the Company further agree, jointly and severally, to indemnify each Indemnified Party for all costs, including without limitation reasonable attorney's fees, incurred by such Indemnified Party in connection with the enforcement of Buyer's and the Company's indemnification obligations hereunder. Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable fees of such counsel shall be paid upon demand by Buyer and the Company jointly and severally. The obligations of Buyer and the Company under this <u>Section 11</u> shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

The parties agree that neither the payment by Buyer or the Company of any claim by Escrow Agent for indemnification hereunder nor the disbursement of any amounts to Escrow Agent from the Escrow Funds in respect of a claim by Escrow Agent for indemnification shall impair, limit, modify, or affect, as between Buyer and the Company, the respective rights and obligations of Buyer and the Company under the Underlying Agreement.

6

12. <u>Compensation of Escrow Agent</u>.

(a) <u>Fees and Expenses</u>. Upon execution of this Escrow Agreement, Buyer and the Company agree, jointly and severally, to compensate Escrow Agent for its services hereunder in accordance with <u>Schedule A</u> attached hereto. The obligations of Buyer and the Company under this <u>Section 12</u> shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

(b) <u>Disbursements from Escrow Funds to Pay Escrow Agent</u>. Escrow Agent is authorized to, and may disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement of documented out-of-pocket expenses due and payable hereunder (including any amount to which Escrow Agent or any Indemnified Party is entitled to seek indemnification hereunder), provided that the Company shall retain any rights it has against Buyer pursuant to the Underlying Agreement and Buyer shall retain any rights it has against the Company pursuant to the Underlying Agreement. Escrow Agent shall notify Buyer and the Company of any disbursement from the Escrow Funds to itself or any Indemnified Party in respect of any compensation or reimbursement hereunder and shall furnish Buyer and the Company copies of related invoices and other statements. If either Buyer or the Company has failed to pay its share of any such compensation and reimbursement of out-of-pocket expenses due and payable hereunder in accordance with <u>Section 29 hereof</u>, such party shall promptly restore to the Escrow Fund its share of such amounts.

(c) <u>Security and Offset</u>. The Company, Buyer, and the Representatives hereby grant to Escrow Agent and the Indemnified Parties a security interest in, lien upon, and right of offset against the Escrow Funds with respect to any compensation or reimbursement due any of them hereunder (including any claim for indemnification hereunder). If for any reason the Escrow Funds are insufficient to cover such compensation and reimbursement, Buyer and the Company shall promptly pay such amounts to Escrow Agent or any Indemnified Party upon receipt of an itemized invoice. Escrow Agent acknowledges that the Escrow Funds are the property of the Company, subject only to the terms of this Escrow Agreement.

13. <u>Representations and Warranties</u>. Buyer and the Company each respectively make the following representations and warranties to Escrow Agent:

(a) it has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder; and this Escrow Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms; and

(b) each of the applicable persons designated on <u>Schedule C</u> attached hereto have been duly appointed to act as authorized representatives hereunder and individually have full power and authority to execute and deliver any Joint Written Direction; to amend, modify, or waive any provision of this Escrow Agreement; and to take any and all other actions as authorized representatives under this Escrow Agreement, all without further consent or direction from, or notice to, it or any other party, provided that any change in designation of such authorized representatives shall be provided by written notice delivered to each party to this Escrow Agreement.

14. <u>Identifying Information</u>. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust, or other legal entity, Escrow Agent requires documentation to verify its formation and existence as a legal entity. Escrow Agent may ask to see financial statements, licenses, identification, and authorization documents from individuals claiming authority to represent the entity or

7

other relevant documentation. The parties acknowledge that a portion of the identifying information set forth herein is being requested by Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

15. <u>Consent to Jurisdiction and Venue</u>. In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Escrow Agreement, the parties hereto agree to the personal jurisdiction by and venue in the state and federal courts in the state of Delaware and waive any objection to such jurisdiction or venue. The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.

16. <u>Notices</u>. All notices, approvals, consents, requests, and other communications hereunder shall be in writing and shall be delivered (i) by personal delivery, or (ii) by national overnight courier service, or (iii) by certified or registered mail, return receipt requested, or (iv) via facsimile transmission, with confirmed receipt, or (v) via email by way of a PDF attachment thereto of an executed document. Notice shall be effective upon receipt except for notice via email, which shall be effective only when the recipient, by return email or notice delivered by other method provided for in this <u>Section 16</u>, acknowledges having received that email (with an automatic "read receipt" or similar notice not constituting an acknowledgement of an email receipt for purposes of this <u>Section 16</u>.) Such notices shall be sent to the applicable party or parties at the address specified below:

If to Buyer or Buyer Representative at:

        Smith & Wesson Corp.
        c/o American Outdoor Brands Corporation
        2100 Roosevelt Avenue
        Springfield, MA 01104
        Attention:   Jeffrey D. Buchanan,
                          Executive Vice President, Chief Financial Officer,
                          Chief Administrative Officer, and Treasurer
        Telephone:   (413) 747-3341
        Facsimile:
        E-mail:      jbuchanan@aob.com

With a copy (which shall not constitute notice) to:

        American Outdoor Brands Corporation
        2100 Roosevelt Avenue
        Springfield, MA 01104
        Attention:   Robert J. Cicero,
                          Vice President, General Counsel, Chief Compliance
                          Officer, and Secretary
        Telephone:   (413) 747-3443
        Facsimile:    (413) 747-3373
        E-mail:      rcicero@aob.com

and

PHX 332458823v6

>Greenberg Traurig, LLP
>2375 East Camelback Road, Suite 700
>Phoenix, AZ 85016
>Attention:    Brian H. Blaney
>Telephone:   (602) 445-8322
>Facsimile:    (602) 445-8603
>E-mail:        blaneyb@gtlaw.com

If to the Company or Company Representative at:

>Gemini Technologies, Incorporated
>335 N. Edgewood Lane
>Eagle, ID 83616
>Attention:    Ronald J. Martinez
>E-mail:        ron@martinez.net

With a copy (which shall not constitute notice) to:

>Trout Law, PLLC
>3778 Plantation River Drive, Suite 101
>Boise, ID 83703
>Attention:    Kim J. Trout
>Telephone: (208) 577-5755
>Facsimile: (208) 577-5756
>E-mail:        ktrout@trout-law

If to Escrow Agent at:

>Washington Trust Bank
>945 West Bannock Street
>Boise, ID 83702
>Attention:    Zach Bethel
>Facsimile:    (208) 385-5039
>Telephone:   (208) 385-5021
>E-mail:        ZBethel@watrust.com

or to such other address as each party may designate for itself by like notice and unless otherwise provided herein shall be deemed to have been given on the date received.

17. <u>Optional Security Procedures</u>.  In the event funds transfer instructions, address changes, or change in contact information are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile, or otherwise, Escrow Agent is authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule C</u> hereto, and Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated.  The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by Escrow Agent and shall be effective only after Escrow Agent has a reasonable opportunity to act on such changes.  If Escrow Agent is unable to contact any of the designated representatives identified in <u>Schedule C</u>, Escrow Agent is hereby authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to any one or more of Buyer or the Company's executive officers ("<u>Executive Officers</u>"), as the case may be, which shall include the titles of Chief Executive Officer, President, and Vice President, as

9

Escrow Agent may select. Such Executive Officer shall deliver to Escrow Agent a fully executed incumbency certificate, and Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. Buyer and the Company agree that Escrow Agent may at its option record any telephone calls made pursuant to this Section 17. Escrow Agent in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Buyer or the Company to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. Escrow Agent may apply any of the Escrow Funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. Buyer and the Company acknowledge that these optional security procedures are commercially reasonable.

18. <u>Amendment, Waiver, and Assignment</u>. None of the terms or conditions of this Escrow Agreement may be changed, waived, modified, discharged, terminated, or varied in any manner whatsoever unless in writing duly signed by a duly authorized officer of each party to this Escrow Agreement. No course of conduct shall constitute a waiver of any of the terms and conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion. Except as provided in Section 9 hereof, this Escrow Agreement may not be assigned by any party without the written consent of the other parties.

19. <u>Severability</u>. To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

20. <u>Governing Law</u>. This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the state of Delaware without giving effect to the conflict of laws principles thereof.

21. <u>Entire Agreement, No Third Party Beneficiaries</u>. This Escrow Agreement constitutes the entire agreement between the parties relating to the holding, investment, and disbursement of the Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds. Nothing in this Escrow Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit, or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

22. <u>Execution in Counterparts, Facsimiles and Electronic Images of Signatures</u>. This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction. The delivery of copies of this Escrow Agreement and any Joint Written Instruction and their respective signature pages by PDF or facsimile transmission shall constitute effective execution and delivery as to the parties and may be used in lieu of originals for all purposes.

23. <u>Termination</u>. This Escrow Agreement shall terminate upon the distribution of all the Escrow Funds pursuant to any applicable provision of this Escrow Agreement, including the disbursement of all amounts in the Escrow Funds into a court, and Escrow Agent shall thereafter have no further obligation or liability whatsoever with respect to this Escrow Agreement or the Escrow Funds.

24. <u>Dealings</u>. Escrow Agent and any stockholder, director, officer, or employee of Escrow Agent may buy, sell, and deal in any of the securities of Buyer or the Company and become pecuniarily

10

interested in any transaction in which Buyer or the Company may be interested, and contract and lend money to Buyer or the Company and otherwise act as fully and freely as though it were not Escrow Agent under this Escrow Agreement.  Nothing herein shall preclude Escrow Agent from acting in any other capacity for Buyer or the Company or for any other entity.

25. <u>Brokerage Confirmation Waiver</u>.  Buyer and the Company acknowledge that to the extent regulations of the Comptroller of the Currency or other applicable regulatory entity grant either the right to receive brokerage confirmations for certain security transactions as they occur, Buyer and the Company specifically waive receipt of such confirmations to the extent permitted by law.  Escrow Agent will furnish Buyer and the Company periodic cash transaction statements that include detail for all investment transactions made by Escrow Agent.

26. <u>Tax Reporting</u>.  Escrow Agent shall have no responsibility for the tax consequences of this Escrow Agreement and Buyer and the Company shall consult with independent counsel concerning any and all tax matters.  Buyer and the Company shall provide Escrow Agent Form W-9 and an original Form W-8, as applicable, for each payee, together with any other documentation and information requested by Escrow Agent in connection with Escrow Agent's reporting obligations under applicable IRS regulations.  If such tax documentation is not so provided, Escrow Agent shall withhold taxes as required by the IRS.  The Company and Buyer have determined that any interest or income on Escrow Funds shall be reported on an accrual basis and deemed to be for the account of the Company.  Buyer and the Company shall prepare and file all required tax filings with the IRS and any other applicable taxing authority; provided that the parties further agree that:

(a) <u>Escrow Agent IRS Reporting</u>.  Buyer shall provide Escrow Agent with all information requested by Escrow Agent in connection with the preparation of all applicable Form 1099 and Form 1042-S documents with respect to all distributions as well as in the performance of Escrow Agent's reporting obligations under the Foreign Account Tax Compliance Act and Foreign Investment in Real Property Tax Act or other applicable law or regulation.

(b) <u>Withholding Requests and Indemnification</u>.  Each of Buyer and the Company jointly and severally agrees to (i) assume all obligations imposed now or hereafter by any applicable tax law or regulation with respect to payments or performance under this Escrow Agreement, (ii) request Escrow Agent in writing with respect to withholding and other taxes, assessments, or other governmental charges, and advise Escrow Agent in writing with respect to any certifications and governmental reporting that may be required under any applicable laws or regulations, and (iii) indemnify and hold Escrow Agent harmless pursuant to <u>Section 11</u> hereof from any liability or obligation on account of taxes, assessments, additions for late payment, interest, penalties, expenses, and other governmental charges that may be assessed or asserted against Escrow Agent.

(c) <u>Imputed Interest</u>.  To the extent that IRS imputed interest regulations apply, Buyer and the Company shall so inform Escrow Agent, provide Escrow Agent with all imputed interest calculations and direct Escrow Agent to disburse imputed interest amounts as Buyer and the Company deem appropriate.  Escrow Agent shall rely solely on such provided calculations and information and shall have no responsibility for the accuracy or completeness of any such calculations or information.

27. <u>WAIVER OF TRIAL BY JURY</u>.  EACH PARTY TO THIS ESCROW AGREEMENT HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ESCROW AGREEMENT OR (2) IN ANY WAY IN CONNECTION WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES TO THIS ESCROW AGREEMENT OR IN CONNECTION WITH THIS ESCROW

AGREEMENT OR THE EXERCISE OF ANY SUCH PARTY'S RIGHTS AND REMEDIES UNDER THIS ESCROW AGREEMENT OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES TO THIS ESCROW AGREEMENT, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT, OR OTHERWISE. EACH OF THE PARTIES HERETO HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT EACH HAS REVIEWED OR HAD THE OPPORTUNITY TO REVIEW THIS WAIVER WITH ITS RESPECTIVE LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH SUCH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, THIS ESCROW AGREEMENT MAY BE FILED AS A CONSENT BY ALL PARTIES TO A TRIAL BY THE COURT.

28. <u>Publicity</u>.  No party will (a) use any other party's proprietary indicia, trademarks, service marks, trade names, logos, symbols, or brand names, or (b) otherwise refer to or identify any other party in advertising, publicity releases, or promotional or marketing publications, or correspondence to third parties without, in each case, securing the prior written consent of such other party.

29. <u>Joint and Several Obligations</u>.  Without limiting the joint and several nature of their obligations to Escrow Agent in this Escrow Agreement, Buyer and the Company agree between themselves that each will be responsible for one-half of all such joint and several obligations.

*[Signature page follows.]*

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

Buyer:

**SMITH & WESSON CORP.**

By: _____
Name: Jeffrey D. Buchanan
Title: Executive Vice President, Chief Financial Officer, and Treasurer

Company:

**GEMINI TECHNOLOGIES, INCORPORATED**

By: _____
Name: Ronald J. Martinez
Title: President and Chief Executive Officer

Escrow Agent:

**WASHINGTON TRUST BANK**

By: _____
Name: _____
Title: _____

Signature Page to Escrow Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

Buyer:

**SMITH & WESSON CORP.**

By:_____
Name:   Jeffrey D. Buchanan
Title:   Executive Vice President, Chief Financial Officer, and Treasurer

Company:

**GEMINI TECHNOLOGIES, INCORPORATED**

*/s/ Ron Martinez*

By:_____
Name:   Ronald J. Martinez
Title:   President and Chief Executive Officer

Escrow Agent:

**WASHINGTON TRUST BANK**

By:_____
Name:_____
Title:_____

Signature Page to Escrow Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

Buyer:

**SMITH & WESSON CORP.**

By: _____
Name:   Jeffrey D. Buchanan
Title:   Executive Vice President, Chief Financial Officer, and Treasurer

Company:

**GEMINI TECHNOLOGIES, INCORPORATED**

By: _____
Name:   Ronald J. Martinez
Title:   President and Chief Executive Officer

Escrow Agent:

**WASHINGTON TRUST BANK**

By: _*Zacharie Scott Bethel*_
Name: ZACHARIE BETHEL
Title: AVP, RELATIONSHIP MANAGER

By: _*Camilla Strickler*_
Name: Camilla Strickler
Title: VP, Sr Trust Officer

Signature Page to Escrow Agreement

# SCHEDULE A

### Schedule of Fees

**SMITH & WESSON CORP.**, a Delaware corporation ("Buyer");
**GEMINI TECHNOLOGIES, INCORPORATED**, an Idaho corporation (the "Company");
**WASHINGTON TRUST BANK**, a Washington banking association, ("Escrow Agent").

| | |
|---|---|
| **Administration:** | fiduciary escrow agent - Holdback on sale |
| **Fee Schedule:** | $5000.00 |
| **Administration Period:** | August 7, 2017 – August 7, 2019 |
| **Required Administration:** | fiduciary control<br>Distribution to provisions<br>Distribution reporting<br>1099-tax reporting |

**The fee for this service is a** *set / flat fee* **for period above and not conditioned or calculated upon asset value and subject to Escrow Administration in the Federated Government Obligations Fund #117- GOFXX as subject to:**

    1.    <u>Investment of Funds</u>Based upon Buyer's and the Company's prior review of investment alternatives, in the absence of further specific written direction to the contrary, Escrow Agent is directed to initially invest and reinvest the Escrow Funds in the investment indicated on Schedule B hereto. The Company and Buyer may provide written instructions changing the investment of the Escrow Funds to Escrow Agent; provided, however, that no investment or reinvestment may be made except in the following: (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United State of America; (b) U.S. dollar denominated deposit accounts and certificates of deposits issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which such deposits are either (i) insured by the Federal Deposit Insurance Corporation or a similar governmental agency, or (ii) with domestic commercial banks which have a rating on their short- term certificates of deposit on the date of purchase of "A-1" or "A-1+" by S&P or "P-1" by Moody's and maturing no more than 360 days after the date of purchase (ratings on holding companies are not considered as the rating of the bank); (c) repurchase agreements with any bank, trust company, or national banking association (including Escrow Agent and its affiliates); or (d) institutional money market funds, including funds managed by Escrow Agent or any of its affiliates; provided that Escrow Agent will not be directed to invest in investments that Escrow Agent in its sole discretion determines are not consistent with Escrow Agent's policy or practices. Buyer and the Company acknowledge that Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice.



## SCHEDULE B

**Escrow Funds Investment**

Federated Government Obligations #117 | CUSIP 608919718 | Symbol GOFXX

## SCHEDULE C

### Representatives

Each of the following person(s) is a Buyer Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes, and contact information changes, on Buyer's behalf (only one signature required):

| Jeffrey D. Buchanan | *[signature]* | (413) 747-3341 |
|---|---|---|
| Name | Specimen signature | Telephone No. |
| Robert J. Cicero | *[signature]* | (413) 747-3443 |
| Name | Specimen signature | Telephone No. |
| Deana L. McPherson | *[signature] Deana L. McPherson* | (413) 747-3231 |
| Name | Specimen signature | Telephone No. |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

_____     _____
Name                                                         Telephone Number

Each of the following person(s) is a Company Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes, and contact information changes, on the Company's behalf (only one signature required):

| Ronald J. Martinez | | |
|---|---|---|
| Name | Specimen signature | Telephone No. |
| | | |
| Name | Specimen signature | Telephone No. |
| | | |
| Name | Specimen signature | Telephone No. |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

_____     _____
Name                                                         Telephone Number

## SCHEDULE C

### Representatives

Each of the following person(s) is a Buyer Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes, and contact information changes, on Buyer's behalf (only one signature required):

| | | |
|---|---|---|
| Jeffrey D. Buchanan | | (413) 747-3341 |
| Name | Specimen signature | Telephone No. |
| | | |
| Robert J. Cicero | | (413) 747-3443 |
| Name | Specimen signature | Telephone No. |
| | | |
| Deana L. McPherson | | (413) 747-3231 |
| Name | Specimen signature | Telephone No. |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

| | |
|---|---|
| Name | Telephone Number |

Each of the following person(s) is a Company Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes, and contact information changes, on the Company's behalf (only one signature required):

| | | |
|---|---|---|
| Ronald J. Martinez | *Ron Martinez* | (208) 991-6825 |
| Name | Specimen signature | Telephone No. |
| | | |
| Name | Specimen signature | Telephone No. |
| | | |
| Name | Specimen signature | Telephone No. |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

| | |
|---|---|
| Name | Telephone Number |