UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>               Plaintiff,<br><br>v.<br><br>SMITH & WESSON CORP., a Delaware corporation, and AMERICAN OUTDOOR BRANDS CORPORATION, a Nevada corporation,<br><br>               Defendants. | Case No. 1:18-cv-00035-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |
| SMITH & WESSON CORP., a Delaware corporation,<br><br>               Counterclaimant,<br><br>v.<br><br>GEMINI TECHNOLOGIES, INCORPORATED, an Idaho Corporation; RONALD J. MARTINEZ, an individual; and PHILIP H. DATER, an individual,<br><br>               Counterdefendants. | |

# INTRODUCTION

Before the Court is Gemini Technologies, Inc.'s ("Gemtech") second motion for summary judgment on each of Smith & Wesson Corp.'s and American Outdoor Brands Corp.'s (collectively, "Smith & Wesson") indemnity claims. (Dkt. 127.) The Court denied Gemtech's first motion for summary judgment regarding the indemnity claims on the grounds that Gemtech failed to carry its burden on the motion. (Dkt. 86.) The Court found that genuine disputes as to the material facts precluded entry of judgment as a matter of law.

Although the Court forbade Gemtech from later moving for summary judgment "on any claim or issue raised and determined in its prior motion for summary judgment," Gemtech moves again for judgment on the same claims as it did previously. (*See* Dkt. 4 n. 7.) Gemtech, for the first time in this lawsuit, asserts a legal theory that it claims precludes all of Smith & Wesson's indemnity claims as a matter of hornbook Delaware law.

Upon review of the parties' briefing, the record herein, and applicable legalauthorities,[1] the Court will deny Gemtech's motion, with the exception of Smith & Wesson's indemnity claim for unpaid taxes in the amount of $607.11. *See* Mem. Dec. and

---

[1] The Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before the Court. Dist. Idaho L. Rule 7.1(d).

**MEMORANDUM DECISION AND ORDER - 2**

Order at 11, 14 – 16. (Dkt. 86.) In response to Gemtech's motion and supporting documents, Smith & Wesson conceded that claim may be dismissed.[2]

## BACKGROUND

The Court previously set forth the background and facts related to the parties' relationship, their dispute, and the relevant provisions of the parties' agreement in its prior Memorandum Decision and Order, and will not repeat them all here. (Dkt. 86.) To summarize, this case involves a dispute regarding the rights, obligations, and liabilities of the parties arising out of the purchase by Smith & Wesson of Gemtech's assets. The parties entered into an Asset Purchase Agreement ("APA") on June 29, 2017. The Gemtech sale closed on August 7, 2017. Gemtech initiated this action against Smith & Wesson, raising multiple contract claims. Smith & Wesson denies those claims and filed a counterclaim for indemnification against Gemtech and its former principals, Ronald Martinez and Philip Dater.

In its counterclaim in this lawsuit, Smith & Wesson asserts it is entitled to indemnification pursuant to § 7.3(a)(i) and (ii) of the APA for: (1) unpaid taxes, fees, and penalties owed to the state of Oregon; (2) uncollectible accounts receivables; (3) inaccurate inventory valuations; (4) pre-acquisition liabilities and obligations; and (5) inaccurate representations and warranties regarding intellectual property rights related to

---

[2] Smith & Wesson concedes this claim is subject to dismissal based upon the Declaration of Kevin Kluckhohn and the attached email correspondence from the State of Oregon indicating no taxes were past due. To be clear, Smith & Wesson represented in its response brief that it was not aware of the email attached to the Declaration of Kevin Kluckhohn indicating that there was no outstanding amount due to the State of Oregon by Gemtech for unpaid taxes. Response Brief at 4. (Dkt. 136.) It is unclear why Gemtech did not provide a copy of the email sooner, so that Smith & Wesson could have dismissed its claim for the same.

**MEMORANDUM DECISION AND ORDER - 3**

the GEMTECH trademark. Smith & Wesson claims in excess of $2,250,000.00 in damages, and instructed Washington Trust Bank not to release the $1,500,000.00 remaining in escrow.

Smith & Wesson submitted claim notices to Washington Trust Bank, the escrow holder, which were copied to Gemtech, dated December 22, 2017; February 27, 2018; October 16, 2018; February 11, 2019; March 12, 2019; and August 6, 2019. Smith & Wesson also pursued international patent litigation related to an EU Mark registered by Law Enforcement International (LEI) that LEI was using to market Gemtech products internationally. Smith & Wesson prevailed in the international patent litigation, and the EUIPO revoked the Gemtech mark owned by LEI.

Under the APA's Indemnity provision, Gemtech agreed to "indemnify and hold harmless Buyer" from any and all "Damages arising out of, resulting from, or in any way related to" a breach of or inaccuracies in any representations made by Gemtech. APA § 7.3(a), Post-Closing Indemnity. Gemtech's warranties and representations were set forth in Article III of the APA. Pursuant to § 3.8, Gemtech represented it "has delivered to Buyer true and complete copies of unaudited Financial Statements" for calendar years ending in 2016, 2015, and 2014, as well as certain "unaudited Financial Statements" for the five months up through May 31, 2017. APA § 3.8(a). Gemtech further represented that: "All of such Company Financial Statements present fairly the financial condition and results of operations of the Company for the dates or periods indicated thereon." *Id.* The APA also includes provisions related to Gemtech's accounts receivable and inventory. APA Schedule 3.8(c); APA § 3.8(d).

**MEMORANDUM DECISION AND ORDER - 4**

The APA contemplated that the sale included Gemtech's intangible rights, including all trade names, trademarks, or service marks "owned, Used, licensed, or controlled by the Company and all goodwill associated therewith." APA § 3.15, <u>Intangible Rights</u>.

For the first time in this protracted litigation, Gemtech contends that, under Delaware law, the indemnity provision (§ 7.3) relied upon by Smith & Wesson for its breach of contract counterclaim "does not apply to first-party claims between the contracting parties and does not apply to non-third-party claims." Mem. at 3. (Dkt. 127-1.) In other words, because Smith & Wesson claims damages and seeks indemnification for losses it has sustained, rather than reimbursement for claims asserted against it by third-parties, Gemtech contends Smith & Wesson's counterclaim is foreclosed as a matter of law. Mem. at 10. (Dkt. 127-1.) Gemtech touts its theory as obvious,[3] which begs the question why Gemtech failed to assert it earlier, and casts doubt upon its validity after more than three and one-half years[4] of litigation.

---

[3] Indeed, Gemtech asserted that its legal theory was so obvious that Smith & Wesson "was…bound to know Delaware law governing contract indemnity claims at the time it filed its Counterclaim on November 4, 2019," implying that Smith & Wesson's indemnity claims were baseless. (Dkt. 131 at 2 - 3.)
[4] Although the Complaint was filed on January 24, 2018, Smith & Wesson did not assert its counterclaim until November 4, 2019. (Dkt. 28).

**MEMORANDUM DECISION AND ORDER - 5**

## STANDARDS OF LAW

**1.     Summary Judgment**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**2.     Applicable Law**

Section 9.5 of the APA provides that Delaware law governs disputes concerning interpretation of the APA. The parties agree Delaware law applies to the contract disputes.

Delaware follows the objective theory of contract. *See Haft v. Haft*, 671 A.2d 413, 417 (Del. Ch. 1995); *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, at *7 (Del. Ch. 2002) (unpublished opinion). Although the law of contract generally strives to enforce agreements in accord with their makers' intent, the objective theory considers "objective acts (words, acts and context)" the best evidence of

**MEMORANDUM DECISION AND ORDER - 6**

that intent. *Haft*, 671 A.2d at 417. Unambiguous written agreements should be enforced according to their terms, without using extrinsic evidence "to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *see also City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

Under Delaware law, a contract is not ambiguous merely because the parties disagree about its interpretation. Whether a contract is ambiguous is determined according to an objective, reasonable-person standard and is a question of law. *See Eagle Indus.*, 702 A.2d at 1233 n. 8 ("The true test is what a reasonable person in the position of the parties would have thought it meant," not what the parties to the contract intended it to mean). Words are to be given their ordinary meaning and should not be "torture[d]" to impart ambiguity where none exists. *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). When the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity. In that event, the interpreting court must look beyond the language of the contract to ascertain the parties' intentions. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

## ANALYSIS

Gemtech contends Smith & Wesson's claims are foreclosed, because Smith & Wesson is not seeking reimbursement for costs and expenses stemming from third-party claims, and it cannot request indemnification for its own losses. This assertion is incorrect. Delaware law recognizes two types of indemnification provisions. The first,

**MEMORANDUM DECISION AND ORDER - 7**

characterized as a "common law right" to indemnification, provides for a general right of reimbursement for debts owed to third parties by the seller as a secondarily-liable party. *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *3 (Del. Ch. Jan. 24, 2005). Under Delaware law, claims for "common law indemnity do not accrue until the indemnitee can 'be confident that any claim against him…has been resolved with certainty.'" *Id.* A claim for indemnification allows a contracting party who has been compelled to pay damages for another party's wrongdoing to seek reimbursement from the responsible party.

But, indemnification can also cover direct claims, which are claims or causes of action that one contracting party has against the other. *Id.* In the context of an asset acquisition, "the term 'indemnification' refers generally to the responsibility retained by the seller to make the buyer whole for liabilities related to the assets sold or for breaches of representations and warranties." *Id.* In other words, either contracting party (particularly a purchaser) has the right to recover, post-closing, for misrepresentations and non-compliance with covenants by the other party. *See* Lou R. Kling and Eileen T. Nugent, *Negotiated Acquisitions of Companies, Subsidiaries, and Divisions*, § 1.05[5], at 1-39 (2001). A seller's representations provide a basis for a buyer's right to a remedy if it discovers after the closing that the seller has breached one or more of the representations. ABA Mergers & Acqs. Comm., *Model Stock Purchase Agreement with Commentary* 78 (2nd ed., 2010). So called "first party" indemnification provisions are distinct from the common law right known as indemnity, *Certainteed Corp.*, 2005 WL 217032, at *3, and the right to indemnification is derived from the existence of a misrepresentation made by

**MEMORANDUM DECISION AND ORDER - 8**

one of the parties to the agreement, *Negotiated Acquisitions of Companies, Subsidiaries, and Divisions*, § 1.05[5] n.12.

A plain reading of the APA establishes that Section 7 provides a remedy for Smith & Wesson to recover damages arising out of, or in any way related to, a breach of, or inaccuracy in, any representation or warranty made by Gemtech. APA § 7.3(a). Gemtech's warranties and representations are enumerated in Section 3 of the APA. These warranties and representations included promises that Gemtech's financial statements, liabilities, accounts receivable, inventories, and title to assets were fairly represented in Gemtech's financial statements. APA § 3.8. Gemtech also made representations concerning trademarks of any type "Used, licensed, or controlled by" Gemtech. APA § 3.15. Damages, as referenced in Section 7.3(a), are defined broadly as "any and all damages, liabilities, losses, obligations, penalties, fines, judgments, claims, deficiencies, losses, costs, penalties, wages, expenses, and assessments…." APA § 10.9.

These provisions, when considered as a whole, allow Smith & Wesson to recover for what Gemtech characterizes as "first party claims." Gemtech's tortured interpretation of the APA – that it does not allow for "first party" indemnification claims – is simply not supported by the APA's plain reading. Gemtech would have the Court interpret the APA, specifically Section 9, to completely eviscerate the provisions in Sections 3 and 7. But the sole reference to third-party indemnification claims in Section 9.1(d) is prefaced by the following: "<u>If</u> any claim or demand…is asserted against or sought to be collected from such Indemnified Party by such third party…", which clause precedes a notification provision. A plain reading of this paragraph, and the presence of the conjunction "If,"

**MEMORANDUM DECISION AND ORDER  - 9**

indicates that third-party indemnification claims are in addition to the types of claims enumerated in Section 7.3.[5] Otherwise, Section 9.1(d) expressly recognizes that claims for indemnity may be made pursuant to Section 7.3, which broadly permits Smith & Wesson to assert a claim for damages against Gemtech arising out of or in any way related to misrepresentations or warranties made by Gemtech.

Nor do the authorities Gemtech cites provide persuasive authority that the APA provisions upon which Smith & Wesson's counterclaims rest limit Smith & Wesson to third-party, or common law, indemnity claims. The cases cited in Gemtech's brief concern lawsuits between two contracting parties in which the prevailing party later sought reimbursement of attorney fees under an indemnity clause in the same contract. In each case, the court held that an indemnity provision specifically designed to protect from third-party lawsuits did not allow for the prevailing party to recover attorney fees in litigation between the two contracting parties. *See Chase Manhattan Mort. Corp. v. Advanta Corp.*, No. Civ. A. 01-507-KAJ, 2005 WL 2234608 (D. Del. 2005); *Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *1 (D. Del. May 24, 2001); *Deere & Co. v. Exelon Generation Acquisitions, LLC*, No. N13C-07-330-MMJ-CCLD, 2016 WL 6879525 (Del. Super. Ct. Nov. 22, 2016); *TranSched Sys. Ltd. v.*

---

[5] In its reply, Gemtech raises substantive arguments concerning the characterization of certain claims under the APA. For instance, Gemtech contends Smith & Wesson has no basis to claim damages for the sale of an allegedly defective suppressor; inventory valuation claims should have been raised pursuant to the working capital dispute resolution proceedings; certain claims are specifically precluded by the language of the APA; and, Smith & Wesson suffered no damages other than attorney fees in relation to the trademark proceedings before the EUIPO. Reply at 6 – 9. (Dkt. 137.) Not only did Gemtech have an opportunity in its first motion for summary judgment to raise substantive arguments regarding Smith & Wesson's indemnity claims, but it also failed to raise these arguments in its opening brief. The Court therefore declines to consider them.

**MEMORANDUM DECISION AND ORDER  - 10**

*Versyss Transit Sols.*, LLC, No. CIV.A. 07C-08-286WCC, 2012 WL 1415466, at *1 (Del. Super. Ct. Mar. 29, 2012).

Here, in contrast, Smith & Wesson seeks indemnity under the APA for Gemtech's alleged misrepresentations and breach of warranties regarding Gemtech's assets, accounts receivables, and liabilities. Delaware law, and a plain reading of the APA, allows for Smith & Wesson to seek indemnification for any damages caused by the breach of these APA provisions. *See, generally*, Kling and Nugent, *Negotiated Acquisitions of Companies, Subsidiaries, and Divisions*, § 15.01, Indemnification (2001). Gemtech's motion will therefore be denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Counter-Defendants' Motion for Summary Judgment (Dkt. 127) is **DENIED**.

2) Counterclaimant's claim for taxes, fees and penalties, set forth in paragraph 21(a) of the Answer to Complaint and Counterclaim, (Dkt. 28) is **DISMISSED** with prejudice pursuant to Counterclaimant's withdrawal of the same.

DATED: August 14, 2023

Honorable Candy W. Dale
United States Magistrate Judge