KIM J. TROUT, ISB #2468
ALYSSA R. JONES, ISB #12181
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorney for the Plaintiff.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br>vs.<br><br>SMITH & WESSON, CORP., a Delaware corporation; and AMERICAN OUTDOOR BRANDS CORPORATION, a Massachusetts corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT<br><br>F.R.C.P. 15(a) |

Plaintiff Gemini Technologies Inc. ("Gemtech") hereby submits this reply in support of its motion for leave to file its Third Amended Complaint.

## ARGUMENT

Smith & Wesson fails to address the validity of Gemtech's implied covenant claim as it relates to punitive damages. See Dkt. 205. As such, the Court should allow Gemtech to pursue its punitive damages claim based on the implied covenants claim.

This issue (as a contract issue) is governed by Delaware law, which makes it clear that punitive damages can still be recovered for an implied covenants claim if the alleged conduct would *also* amount to an independent tort. *Bryan v. Thos. Best & Sons, Inc.*, 453 A.2d 107 (Del. Super. 1982). It is the general

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 1**

rule in Delaware that exemplary damages usually cannot be obtained for breach of contract, however, exceptions to the rule and several court opinions have recognized that punitive damages may be awarded in cases where the breach of contract is very similar to a tort. *Id. See also*, Tekstrom Inc. v. Savla, C.A. No. 05A-12-006 (JTV), 2006 WL 2338050, at *1, *14-15 (Del. Super. July 31, 2006) (internal citations omitted) (holding that punitive damage awards are ordinarily not recoverable for a breach of contract unless the conduct also amounted independently to a tort, and noting that punitive damages have been awarded for a breach of the covenant of good faith and fair dealing when the defendant committed a willful wrong in the nature of deceit).

The parties put this issue to rest when they stipulated that Gemtech should be allowed to file its first amended complaint (see Dkt. 50, pp. 20-21, which contained an independent fraud in the inducement claim), followed by an order from the Court granting leave to file the amended complaint (see Dkt. 52). Since then, Gemtech has consistently alleged that the same wrongful conduct by Smith & Wesson supported *both* its implied covenants claim and its fraud in the inducement claim. It is too late for Smith & Wesson to say that the conduct does not allow for the advancement of an independent tort claim.

A.  **Gemtech's Fraud Claim is Valid and Punitive Damages are Permissive.**

Smith & Wesson objects to punitive damages based on the alleged invalidity of the fraud in the inducement claim. Dkt. 205. In doing so, Smith & Wesson has largely repurposed its summary judgments arguments, which means it has relied on a narrow set of heavily contested allegations and self-serving narratives, e.g., that Smith & Wesson would never forego potential profits just to avoid the earnout, that Gemtech was suffering from supply chain and operational issues at the time of the APA, that Mr. Martinez was fired for his compliance failures and ethical lapses, and that that the APA represented a "windfall" for Gemtech that left Smith & Wesson "with disappointing results." Dkt. 205, pp. 1, 6-7, 18.

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 2**

This approach fails, as Defendants have relied on the improper standard for amendments. In Delaware, the policy is to freely permit amendments absent a showing of serious prejudice, and courts freely grant Plaintiffs' motion to allege punitive damages. Boyd v. Fleetwood, No. CV N14C-07-031 WCC, 2016 WL 258755, at *1, (Del. Super. Ct. Jan. 19, 2016). In Idaho, under I.C. § 6-1604, clear and convincing evidence at the motion stage to amend is not required. *Davis v. Blast Props. (In re Certification of Question of Law)*, 551 P.3d 706, 709-12 (2024). Instead, the substantial evidence test applies at the motion to amend stage, which is the same standard applied in a motion for directed verdict. *Id.* The weighing of the evidence does not require an in-court presentation of evidence, but rather, requires a determination of whether there is a reasonable probability of proving facts at trial that are sufficient to support an award of punitive damages. *Id.* This means the trial court must simply assess whether the evidence submitted by the moving party is: (1) admissible at trial; and (2) "sufficient" to support a possible award of punitive damages. *Id.*

Smith & Wesson alleges that the fraud claim (and, by extension, the punitive damages claim) are governed by Idaho substantive law. Dkt. 205, pp. 13-14. It continues to allege that the fraud claim is not legally cognizable or viable as a matter of Idaho law. *Id.*, pp. 15-22. As detailed in Gemtech's *Response to Summary Judgment*, the fraud claim is legally cognizable under both Delaware and Idaho law. *See*, Dkt. 199, pp. 12-19, incorporated herein by reference.

To summarize the *Response*, the fraud claim (including the damages component) is fully cognizable under Idaho law. *See*, *Severinsen v. Tueller*, 559 P.3d 771, 778 (Idaho 2024) (holding that the benefit of the bargain and out-of-pocket rules are not exclusive in terms of fraud damages; the underlying principle of Idaho law is that the victim of fraud is entitled to compensation for every wrong which is the natural and proximate result of the fraud, and the measure of damages which should be adopted under the facts of a case is the one which will affect such a result). Because the fraud claim is viable, as pleaded under *Severinsen*, it can serve as the basis for the punitive damages

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 3**

claim.

Smith & Wesson alleges that Gemtech "lacks substantial evidence of oppressive, fraudulent, wanton, malicious, or outrageous conduct," and that it fails to show that Smith & Wesson acted with the requisite "extremely hurtful state of mind." Dkt. 205, pp. 15-22. And yet, in making this argument, Smith & Wesson continues to rely on its own self-serving narratives when it comes to its actions and states of mind. For instance, Defendants say that it did not engage in any harmful conduct or have a bad state of mind because: "Terminating employees months after acquisition, restructuring operations, and making strategic resource allocation decisions fall squarely within Smith & Wesson's contractual rights." Dkt. 205, p. 20. This is simply not true, as Section 1.6 of the APA does *not* give Smith & Wesson unlimited business discretion when it came to decisions affecting the earnout payment.

The APA states:

**1.6 Earn-Out.**

. . .

(c) Subject to the terms and conditions set forth in this Agreement and the Collateral Agreements, subsequent to the Closing, Buyer shall have sole discretion with regard to all matters relating to the operation of the Business; <u>provided</u>, that Buyer shall not, directly or indirectly, take any actions in bad faith that would have the specific purpose of avoiding or reducing the Earnout Payment hereunder. In addition, Buyer agrees to consult with Ronald J. Martinez in advance of any decision made relating to the operation of the Business only if Buyer has knowledge that such decision will negatively impact the Earnout Payment. The Company and the Stockholders further acknowledge that (i) there is no assurance that the Company will receive any Earnout Payment and Buyer has not promised or projected any Earnout Payment, and (ii) the parties hereto solely intend the express provisions of this Agreement to govern their contractual relationship with respect to the subject matter of this Section 1.6.

Dkt. 191-5.

This language makes it clear that Smith & Wesson had an express contractual duty to avoid taking actions in bad faith for purposes of avoiding or reducing the earnout payment. It also had a duty to consult with Martinez (at all times during the earnout period) in advance of any decisions

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 4**

relating to the operation of the business if it knew that the decision would "negatively impact" the earnout payment. Smith & Wesson knew, or should have known, that terminating the entire Gemtech team within months of the APA, restructuring its operations, and allocating resources to other sectors of the business (all without consulting Martinez) would have a "negative impact" on the earnout payment. This is more than enough to grant Gemtech's motion and allow the punitive damages claim to proceed to trial.

Citing *Jardel Co. v. Hughes,* 523 A.2d 518 (Del. 1987), Smith & Wesson alleges that poor outcomes and errors of judgment are not enough to award punitive damages and that it is "precisely the type of…claims courts reject." Dkt. 205, p. 21. Again, the question of whether Smith & Wesson acted with the requisite harmful state of mind, or with mere "inadvertence, mistake, or errors," as stated in *Jardel,* is a disputed issue for trial. It is not something that the Court can resolve at this juncture by considering Smith & Wesson's improperly argued trial defenses,[1] rather, Gemtech has met its burden of "substantial evidence" to support an amendment for punitive damages under Idaho and Delaware law. Smith & Wesson attempts to argue a standard higher than necessary at this juncture to grant an amendment.

Smith & Wesson continues to allege that some of Gemtech's case law citations are "inapposite and nonsensical." Dkt. 205, p. 23. For instance, it says that "[the] attempt to analogize the sophisticated commercial transaction at issue to the motor vehicle accident in *Howell*—a case that involves neither fraud nor breach of contract claims—demonstrates the weakness of its argument." *Id.* What Smith & Wesson overlooks is that Gemtech cited to *Howell* to show that Delaware has a low bar for adding punitive damage claims.

---

[1] The Court in *Jardel* goes on to explain that punitive damages may be awarded for conduct is "reckless" or "motivated by…fraud," for "intentional torts," and for "willful or malicious breaches of contract." *Id.*, at 529. Gemtech has made several allegations of harmful conduct and bad states of mind, which, if proven at trial, would constitute reckless indifference, fraud, and a willful breach of the APA.

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 5**

In *Howell v. Kusters*, the Court allowed an injured motorist to assert a punitive damage claim because the driver acted with a willful and wanton disregard for the safety of others at the time of the automobile collision. No. CIV.A. 08C-02-043CLS, 2010 WL 877510, at *1, *2 (Del. Super. Ct. Mar. 5, 2010). The Court explained that the driver was traveling up to 20 miles per hour over the speed limit and was talking on her cell phone as she ran a red light. *Id.* The Court concluded: "<u>These facts, if believed, could support a finding that [the driver] was more than merely negligent and acted with a "conscious indifference" or "I don't care" attitude</u>." *Id.*

Smith & Wesson has exhibited the same "I don't care" attitude and took several post-APA steps that would ensure the ultimate failure of the earnout: (1) it fired employees with reckless indifference to the earnout; (2) it did nothing to hire comparable replacement employees with equivalent experience; and (3) it knowingly allocated its finite resources to other areas of the company and failed to consult with Martinez. If mere inattentive driving rises to the level to grant a claim of punitive damages, then the willful and reckless behaviors and actions taken by the Defendants certainly rises to the level. *See*, David L. Finger, Delaware Trial Handbook § 22:2 Punitive Damages, DELAWARE TRIAL HANDBOOK (2010), https://www.delawgroup.com/delaware-trial-handbook-§-222-punitivedamages/.

Even if Idaho law applies to Gemtech's claims, the Court must consider *Edmark Auto v. Zurich Am. Ins. Co.,* where the Court granted leave to add a claim for punitive damages under *very* similar circumstances. No. 1:15-CV-00520-EJL-CWD, 2018 WL 734654, at *1, *12 (D. Idaho Feb. 6, 2018). It is worth highlighting a few of the arguments raised in *Edmark* by the parties in their supporting briefing to the Court. This briefing is significant, as counsel for Plaintiff in *Edmark* made several compelling arguments that should be applied in here.

For instance, Plaintiffs in *Edmark* stated in their supporting legal memorandum that the Insurer in *Edmark* (Zurich Defendants) had regular contact and trainings:

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 6**

> [D]uring these visits, the Zurich Defendants' representatives would talk about what a great program they offered Edmark Auto, covering the chargebacks on VSCs, while in fact they were doing nothing to deliver a functioning program that would remain solvent.

1:15-cv-00520-BLW, Doc. 112-1, pp. 6-7.

The *Edmark* Plaintiffs continued:

> The Zurich Defendants misled the Dealerships into believing the No Chargeback Program was being implemented as promised and the Dealerships were protected from future liability: the Zurich Defendants paid the chargebacks as expected, *and the Zurich representatives always spoke about the No Chargeback Program as if all were in working order. But behind the scenes, the Zurich Defendants never took any steps to set up a No Chargeback Plan*, resulting in a four-year-long deficit in the Refund Account that the Zurich Defendants concealed from the Dealerships.

*Id.* at 8 (emphasis added) (internal citations omitted).

Finally, *Edmark* Plaintiffs hit the mark for the ability to amend for punitive damages:

> Evidence of the Zurich Defendants' conduct and state of mind more than meets the threshold standard for amendment to add punitive damages. The Zurich Defendants' *purposely misled* Plaintiffs to believe that they offered a No Chargeback Program. They *disregarded known duties to manage the program*, never intending to perform their legal duties and taking unreasonable positions on their obligations. They fraudulently concealed that the program was and had failed its purpose. They misrepresented to Plaintiffs that the No Chargeback Program was the reason to continue selling the Zurich Defendants' finance and insurance products. Only when it became apparent to the Zurich Defendants they would lose the income stream from two of their largest clients in the region did the Zurich Defendants finally disclose that the program was worth less than nothing. <u>The No Chargeback Program was simply a ploy to get Plaintiffs' business</u>. Although the Dealerships need not establish every factor for amendment, all five factors[2] favor adding a prayer for punitive damages to the Dealerships' complaint.

*Id.* at 15 (emphasis added).

Here, as detailed in the proposed third amended complaint, Smith & Wesson engaged in the same behavior. Smith & Wesson went to great lengths to misrepresent the earnout to *induce* Gemtech to sell, while, after the close of the sale and behind the scenes, Defendants purposefully "reallocate[d] assets to other business segments that offered better [immediate] returns on investment." Dkt. 194-

---

[2] The *Stewart Title* factors. *See*, *Stewart Title Ins. Co. v. Credit Suisse*, No. 1:11-cv-227-BLW, 2013 WL 4710264, at *1, *11 (D. Idaho Aug. 29, 2013); Dkt. 191-11 at 10.

**Reply Memorandum in Support of Motion for Leave to File Third Amended Complaint | Page 7**

002, ¶ 32. Defendants' inducement on the front end, and breach of the duty of good faith and fair dealing after close, give rise to an award of punitive damages.

The Court should find that the same descriptions of reckless corporate conduct, as was found in *Edmark*, are found in this case, which requires the granting of leave to amend the complaint for an award of punitive damages. As found in *Edmark*, cheating another company out of tens of millions of dollars with bad promises and material nondisclosures is actionable, even in a complex commercial setting. Gemtech's only ghost of a chance to truly be made whole, is to be granted leave to amend to include punitive damages. Defendants' use of the earnout was nothing more than a dangled carrot in front of a donkey to induce Gemtech to sell. To not allow leave to amend would be a hobgoblin, and at that point, we all know who to call…Ghostbusters. *See*, *Stambovsky v. Ackley*, 169 A.D.2d 254, 257 (N.Y. 1991).

   **B.**   **Leave Should be Given to Amend the Caption to Include the Proper Parties**

As previously stated, and not disputed by the Defendants, the Defendants had an obligation under Rule 7.1 of the Federal Rules of Civil Procedure to supplement their corporate disclosure statement. The Plaintiff is aware that in 2020, the originally named Defendants had a split, however, no supplementation was filed with the Court. Plaintiff properly named the parent and child corporations in its original filing, however due to Defendants' failures, was unable to discern the successor in interest to American Outdoor Brands as it existed at the time of the transaction or the original filing. Plaintiff is not seeking to add a new party. Therefore, leave to amend the caption should be granted, and Defendants should be ordered to supplement their corporate disclosure statement.

## CONCLUSION

Based on the foregoing, Gemtech requests this Court grant its motion to amend the complaint to add punitive damages.

Dated  September 19, 2025

                              T<small>ROUT</small> & J<small>ONES</small>, PLLC

                              /s/ Alyssa R. Jones
                            Alyssa R. Jones
                            Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on September 19, 2025, I filed a true and correct copy of this entire document through the CM/ECF system, which cause the document to be served upon the following parties or counsel through electronic means, as follows:

B. Newal Squyres
nsquyres@hollandhart.com

Erik D. Stidham
efstidham@hollandhart.com

Zachary J. McCraney
zjmccraney@hollandhart.com

                            */s/ Alyssa R. Jones*
                            Alyssa R. Jones