Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L.McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RICK VASQUEZ** |

COME NOW Defendants, Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants") and hereby submit this Memorandum in Support of their Motion in Limine to Exclude Testimony of Rick Vasquez.

## I. INTRODUCTION

Summary judgment narrowed this case to a single breach-of-contract claim against Defendants Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. That claim turns

on two factual questions: (1) whether Smith & Wesson made post-closing operational decisions with the specific purpose of avoiding or reducing the earn-out payment; and (2) whether it failed to consult Ronald J. Martinez ("Martinez") before a decision it knew would negatively impact the earn-out payment. Dkt. 211 at 23–29; APA, ¶ 1.6(c) (Dkt. 194-14).

Gemini Technologies, Incorporated's ("Gemtech") rebuttal expert Rick Vasquez ("Vasquez") offers a sole opinion that addresses neither question. He opines that compliance deficiencies documented in a 2017 regulatory due diligence of Gemtech's facilities would not have caused ATF to revoke Gemtech's Federal Firearms License ("FFL"). That opinion addresses a question this case does not present and does not rebut anything offered by Smith & Wesson's expert Philip Milks ("Milks").

Vasquez's testimony should be excluded on three independent grounds, and Rule 403 supplies an alternative. First, the testimony is irrelevant to the only claim remaining for trial and does not rebut any opinion Milks offered. Second, Vasquez is not qualified to predict ATF enforcement outcomes—he never served as an Industry Operations Investigator and never determined what action ATF should take against a manufacturer. Third, the opinion rests on no reliable foundation: Vasquez reviewed none of the underlying records, applied no enforcement criteria, could not define the regulatory categories his opinion depends on, and rested his central premise on the absence of criminal charges no one has suggested were ever brought. Alternatively, Rule 403 warrants exclusion because the testimony would consume trial time on a collateral regulatory inquiry the Court need not resolve.

The Court should exclude Vasquez's testimony in its entirety or, if it prefers narrower relief, exclude the three categories of opinion identified in Section IV.F.

## II. BACKGROUND

### A. Only the Section 1.6(c) Breach Claim Remains for Trial.

This case arises from Smith & Wesson's 2017 purchase of Gemtech's assets. The APA provided a cash payment at closing plus a contingent earn-out payment (the "Earn-Out Payment") payable only if Gemtech's post-closing sales over 36 months exceeded $36 million. APA, ¶ 1.6(a)–(b) (Dkt. 194-14). Section 1.6(c) gave the Buyer "sole discretion with regard to all matters relating to the operation of the Business," subject to a bar on actions taken "with the specific purpose of avoiding or reducing the Earn-Out Payment" and a duty to consult Martinez before decisions it knew would negatively impact the Earn-Out Payment. *Id.*, ¶ 1.6(c). Gemtech also acknowledged that the Buyer "has not promised or projected any Earn-Out Payment." *Id.* Post-closing sales fell far short of the threshold, and no Earn-Out Payment became due.

On summary judgment, the Court dismissed Gemtech's fraud-in-the-inducement claim and dismissed the implied covenant claim as duplicative. Dkt. 211 at 17–21, 30–33. Now, to prevail Gemtech must prove: (1) a post-closing decision within the Smith & Wesson's Section 1.6(c) discretion; (2) that Smith & Wesson either: (i) made that decision with the specific purpose of avoiding or reducing the Earn-Out Payment, judged subjectively "based on the circumstances existing at the time of [the] alleged breach" and "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith," or (ii) made a decision it knew would negatively impact the Earn-Out Payment without first consulting Martinez; and (3) that the breach caused the shortfall against the $36 million threshold and resulting damages. Dkt. 211 at 23–29 (quoting *Brinckerhoff v. Enbridge Energy Co.*, 67 A.3d 369, 373 (Del. 2013)).

### B. Milks Documented Gemtech's Compliance Condition at the Time of Acquisition.

Before the acquisition, Smith & Wesson retained Orchid Advisors ("Orchid"), a firearms compliance consulting firm, to assess Gemtech's regulatory compliance. Orchid analyzed Gemtech's operations in the spring of 2017. Declaration of Erik F. Stidham ("Stidham Decl."), Ex. A (Orchid Report) at 8. Smith & Wesson designated Orchid's Senior Vice President of Regulatory Services, Philip Milks—a firearms regulatory attorney who personally participated in the Eagle assessment—as a retained expert. Milks based his expert report in this case on his own observations at Eagle and the diligence reports prepared in 2017. *Id.*

The Orchid Report documents deficiencies in Gemtech's Acquisition and Disposition Books ("A&D Books"), National Firearms Act ("NFA") registrations, security and asset controls, firearm markings, and what Milks concludes was the absence of any functioning compliance program. *Id.* It catalogs the applicable requirements under the Gun Control Act ("GCA") and the NFA and documents "thousands of incorrect record entries, each representing regulatory violations"—including over 20 intact firearms at Eagle that the A&D Book recorded as destroyed months earlier, and roughly 3,900 instances in which the Tucson disposition date for a firearm postdated its Eagle acquisition date. *Id.* The report explains that ATF's escalating sanctions "need not occur step by step," that ATF "can revoke a license for a licensee's first regulatory violation," and that "multiple courts have agreed that the ATF may revoke a license for a single willful violation." *Id.* Milks opines on the compliance condition Smith & Wesson confronted at acquisition and the regulatory risks it created. He did not opine that Gemtech's FFL would have been revoked. *Id.*

### C. Vasquez Annotated Milks's Report and Predicted the Outcome of a Regulatory Proceeding That Never Occurred.

Gemtech designated Vasquez as a rebuttal expert—and only as a rebuttal expert—on July 22, 2025. Stidham Decl., Ex. B (Rebuttal Expert Disclosure). Vasquez spent his ATF career (1999–2014) in the Firearms Technology Branch, which classifies firearms and provides technical support to field operations. *Id.*, Ex. C (Vasquez Report) at 3; *id.*, Ex. D (Vasquez 21:20–22:2, 22:18–28:7). After leaving ATF, he worked for FFLGuard, a compliance consulting organization, and started his own firm. *Id.*, Ex. D (Vasquez 54:1–4, 54:25–55:3, 59:4–20).

Vasquez's expert report consists of a short statement of his background, a list of documents reviewed, and a photocopy of Milks's report with Vasquez's notes in red text. *Id.*, Ex. C (Vasquez Report) at 3, 6. Vasquez concedes his review was limited to the Orchid Report and the emails produced with it, stating that he "did not have the opportunity to review the operation of [Gemtech]." *Id.*, Ex. D (Vasquez 7:19–8:17, 99:15–21).

Vasquez's sole opinion is that the recordkeeping problems in the Orchid Report were "administrative" and that "none of the administrative issues would result in the loss of Gemini's FFL" (the "License Revocation Opinion"). *Id.*, Ex. C (Vasquez Report) at 34; *see id.*, Ex. D (Vasquez 142:21–143:1). He called it a "blanket opinion to cover the report," explaining that "the substance of this is about: Would they lose their license?" *Id.*, Ex. D (Vasquez 70:9–10, 71:23–72:1). He made no effort to quantify the likelihood that the violations would prompt even a warning, calling that "not my area of expertise." *Id.*, Ex. D (Vasquez 152:3–17). Vasquez offered no opinion on what Gemtech should have done about the compliance issues or on whether Smith & Wesson's post-acquisition response was reasonable. *Id.*, Ex. D (Vasquez 152:18–156:7).

## III. LEGAL STANDARD

The Court acts as gatekeeper for expert testimony and "must ensure that all admitted expert testimony is both relevant and reliable." *Glenn v. B & R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1056 (D. Idaho 2018) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Under Rule 702, the proponent must show by a preponderance that: (a) the expert's specialized knowledge will help the trier of fact; (b) the testimony rests on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert reliably applied those methods. Fed. R. Evid. 702 & advisory committee's note to 2023 amend.; *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–50 (9th Cir. 2025). Gemtech bears that burden, and there is "no presumption in favor of admission." *Engilis*, 151 F.4th at 1050.

A motion in limine is "a procedural mechanism to limit in advance testimony or evidence in a particular area," *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009), and serves to "exclude anticipated prejudicial evidence before the evidence is actually offered," *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Pretrial exclusion remains appropriate in a bench trial where the opinions are unqualified, unreliable, and would not aid the trier of fact. *See Alves v. United States*, No. 3:19-cv-00044-REP, 2022 U.S. Dist. LEXIS 105246, at *4–11 (D. Idaho June 10, 2022) (excluding portions of expert testimony prior to bench trial as outside the expert's field and unhelpful).

## IV. ARGUMENT

### A. Vasquez's Opinion Is Irrelevant to the Only Claim Remaining for Trial.

Expert testimony is relevant only if it "logically advance[s] a material aspect of the party's case," *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc),

*overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc), and bears "a valid scientific connection to the pertinent inquiry as a precondition to admissibility," *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995) ("*Daubert II*"). Vasquez's opinion satisfies neither requirement because it addresses neither the elements of the surviving claim nor anything Milks actually opined.

### 1. The Revocation Opinion Addresses No Element of the Surviving Claim and Does Not Advance Any Disputed Issue for Trial.

After summary judgment, the only claim for trial is breach of APA § 1.6(c). Dkt. 211 at 23–29. The material issues are therefore limited to Smith & Wesson's subjective purpose in making post-closing operational decisions and whether it failed to consult Martinez before a decision it knew would negatively impact the Earn-Out Payment, as well as causation and damages. *Id.*

Vasquez's license-revocation prediction does not speak to any of those issues. Rather, he opines that the recordkeeping issues Orchid documented were "administrative" and "none . . . would result in the loss of Gemini's FFL." *Id.*, Ex. C (Vasquez Report) at 34; *id.*, Ex. D (Vasquez 70:9–10, 71:23–72:1, 142:21–143:1).

That opinion does not make any fact of consequence to the breach-of-contract claim more or less likely. The notion that the worst-case ATF enforcement outcome would not have occurred does not inform whether Smith & Wesson's actual post-closing decisions are explicable on legitimate business grounds or instead only as an effort to defeat the Earn-Out Payment. Dkt. 211 at 23–24; *ev3, Inc. v. Lesh*, 114 A.3d 527, 539–40 (Del. 2014) (holding that breach of an express good-faith provision in an earn-out context requires proof of subjective bad faith, such as deliberately delaying milestones solely to avoid payment).

The consultation theory fares no better. It requires proof that Smith & Wesson made a decision it knew would negatively impact the Earn-Out Payment without consulting Martinez. Dkt. 211 at 28–29. Whether ATF would have revoked the license says nothing about what Smith & Wesson knew or whether it consulted Martinez. Vasquez also provides no evidence on causation or damages. No one contends revocation of Gemtech's license was a reason why revenue missed the earn-out threshold. His testimony therefore cannot "logically advance" Gemtech's proof on an essential element. *Barabin*, 740 F.3d at 463.

**2. The Revocation Opinion Does Not Undermine the Legitimacy or Proportionality of Smith & Wesson's Compliance Response**.

If Gemtech offers Vasquez's opinion to suggest that the compliance problems did not threaten Gemtech's license and therefore could not have motivated Smith & Wesson's post-closing actions, the inference fails at both ends.

It fails at the front end because Vasquez agreed Gemtech had significant compliance problems. Shown the Orchid Report paragraph documenting roughly 3,900 logically impossible date entries and roughly 100 instances reflecting a 315-day discrepancy, Vasquez testified he had no contradicting facts and agreed the findings "reflect[s] widespread . . . flaws" in Gemtech's recordkeeping. *Id.*, Ex. D (Vasquez 145:14–22).

It fails at the back end because Smith & Wesson has never contended Gemtech's license would be revoked. The challenge was how Smith & Wesson would assume and move forward with a business significantly hampered by its widespread flaws in recordkeeping and other regulatory problems—not risk of Gemtech losing its license. Milks opined on the compliance condition and the regulatory risks it created—not that the license would be revoked. Stidham Decl., Ex. A (Orchid Report). An opinion that revocation was unlikely contradicts no premise on which Smith & Wesson acted. And the record cuts the other way. The Orchid Report explains that ATF

may revoke a license for a single willful violation. *Id.* Vasquez agreed that a licensee who "doesn't care what the dates and what's the regulations and what the timelines mean" would be acting willfully, *id.*, Ex. D (Vasquez 113:5–10)—conduct the Orchid Report's findings would permit the Court to find here—and that ATF personnel are "obligated to enforce regulations" even where violations are "a common practice," *id.*, Ex. D (Vasquez 142:5–10). That the most severe sanction may have been unlikely does not show that a manufacturer's concern about thousands of documented violations was pretext.

Where an "expert's testimony does not inform any issue in the case," it is irrelevant and inadmissible and the Court "need not consider the reliability" of it. *United States v. Lopez*, No. 2:23-cr-00055-CDS-DJA, 2025 U.S. Dist. LEXIS 63062, at *2 (D. Nev. Apr. 2, 2025). And courts "must . . . exclude" expert evidence unless it "speaks clearly and directly to an issue in dispute." *Daubert II*, 43 F.3d at 1321 n.17. That is true even in a bench trial. *See Alves*, 2022 U.S. Dist. LEXIS 105246, at *4–11.

### B. Vasquez's Opinion Exceeds the Scope of Rebuttal Testimony and Does Not Rebut Milks.

Rebuttal testimony is limited to "the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). Putative rebuttal testimony that does not "directly respond to or address 'new unforeseen facts' brought out in the other side's report on the same subject matter" should be excluded. *See, e.g.*, *Rovid v. Graco Children's Prods.*, Case No. 17-cv-01506-PJH, 2018 U.S. Dist. LEXIS 192449, at *27-29 (N.D. Cal. Nov. 9, 2018) (excluding expert opinions disclosed as rebuttal testimony because they were not responsive to opposing expert opinions but rather introduced a new theory); *In re High-Tech Emp. Antitrust Litig.*, Case No. 11-CV-02509-LHK, 2014 U.S. Dist. LEXIS 47181, at *12 (N.D. Cal. Apr. 4, 2014) (similar).

Vasquez was disclosed only as a rebuttal expert, Stidham Decl., Ex. B, but he does not actually rebut any opinion Milks offers. Milks's opinions address Gemtech's compliance condition at acquisition and the regulatory risks associated with that condition. Stidham Decl., Ex. A. He did **not** opine that ATF would revoke Gemtech's FFL. *Id.* Vasquez's sole opinion is a prediction about that outcome—"none of the administrative issues would result in the loss of Gemini's FFL." Vasquez Report at 34. That opinion targets a subject Milks did not address.

And on the subject Milks *did* address—the existence and scope of the compliance deficiencies—Vasquez does not contradict him. He testified he had no facts contradicting Orchid's findings and agreed they reflected "widespread" recordkeeping flaws. *Id.*, Ex. D (Vasquez 145:14–22). He also testified his opinion "coincides with" Milks's that there was not enough for ATF to remove the license. *Id.*, Ex. D (Vasquez 109:13–16).

Because Vasquez offers no responsive opinion to Milks's opinions, his testimony is not proper rebuttal. An opinion that does not respond to the opposing expert's subject matter gives the Court no contested proposition to resolve and does not "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702(a).

### C. Vasquez's Opinion Rests on an Unreliable Foundation.

Even if Vasquez's opinion were relevant—and it is not—it would still be inadmissible because it rests on no reliable foundation. Rule 702(b) "requires foundation"; the "key inquiry" is "whether an expert had sufficient factual grounds on which to draw conclusions." *Engilis*, 151 F.4th at 1051. And "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Id.* at 1048 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Vasquez's revocation prediction fails Rule 702 because he: (1) did not review the underlying records needed

to support his factual premise; and (2) applied no identifiable enforcement framework to reach his conclusion.

**1. Vasquez Did Not Review the Underlying Records and Conducted No Independent Analysis**.

An expert who has not examined the underlying records cannot reliably diagnose the source or significance of the errors in them. *See Cameron v. Lowes Home Ctrs. Inc.*, No. CV-17-08082-PCT-JJT, 2019 U.S. Dist. LEXIS 106954, at *6 (D. Ariz. June 26, 2019) (excluding expert's opinion on compliance with safety policy because the opinion required an understanding of how long certain boxes had been stacked, and expert had not cited any such evidence). An opinion lacking foundation is unhelpful to the trier of fact. *Id.*

Vasquez admitted he never reviewed Gemtech's A&D Books—the core records underlying the recordkeeping violations he characterizes as merely "administrative"—even though they were available to him. *Id.*, Ex. D (Vasquez 99:15–100:25). Asked why, he offered only: "There was no reason to go through the A&D book." *Id.*, Ex. D (Vasquez 100:24–25). His review was limited to the Orchid Report and related emails. *Id.*, Ex. D (Vasquez 7:19–8:17).

When confronted with specific findings—including roughly 3,900 logically impossible date entries between the Tucson and Eagle facilities and over 20 intact firearms recorded as destroyed months earlier—Vasquez could not dispute them. *Id.*, Ex. D (Vasquez 146:14–17). He instead speculated, without reviewing the records, that the errors "could be a technical issue in their electronic recordkeeping." *Id.*, Ex. D (Vasquez 146:21–25).

**2. Vasquez Applied No Identifiable Enforcement Criteria and Relied on Circular, Outcome-Driven Reasoning**.

Exclusion is appropriate when the expert relies on selected materials without independently evaluating the data and cannot support the premise on which his conclusion depends. *Engilis*, 151

F.4th at 1051–54. In addition to his failure to review the underlying A&D Books, Vasquez applied no enforcement framework, and derived his core premise from the absence of charges. His opinion is inadmissible. Vasquez's revocation opinion turns on a putative distinction between violations he labels "administrative" (and therefore not revocation-worthy) and violations that are "willful" (and therefore potentially revocation-worthy). But he could not define the categories his opinion depends on. Asked what constitutes "flagrant and willful," he answered: "I cannot. I can't." *Id.*, Ex. D (Vasquez 107:25–108:2). Asked to define "administrative error," he said he would need to "read the regulation guide again" and could offer only that it involved "paperwork issues." *Id.*, Ex. D (Vasquez 108:5–17, 143:16–144:3).

He also could not identify the criteria ATF uses to assess violation severity, did not know the IOI enforcement criteria for 2017–2024, and gave those criteria "no" consideration in forming his opinion. *Id.*, Ex. D (Vasquez 127:4–9, 129:10–15, 130:5–7). Instead, his stated basis for treating the violations as non-willful was circular: he inferred "no willfulness" from the absence of felony or criminal charges and from ATF not "pursu[ing] any charges based on willfulness." *Id.*, Ex. D (Vasquez 104:10–23). That reasoning assumes the absence of the very enforcement outcome he was asked to predict.

Vasquez's concessions underscore the unreliability. He agreed that a manufacturer who "doesn't care what the dates and what's the regulations and what the timelines mean" would be acting willfully; that reckless disregard "could" constitute willfulness; and that ATF has revoked licenses for poor recordkeeping. *Id.*, Ex. D (Vasquez 113:5–10, 110:1–4, 132:17–20). Having made those concessions, and having applied no enforcement criteria to the facts, his "no revocation" conclusion is connected to the record only by his bare, unsupported assertion.

**D. Vasquez's Enforcement-Outcome Prediction Falls Outside His Expertise**.

If there is no evidence the witness has knowledge or experience in the specific area of the proffered opinion, the expert is not qualified to provide it. *See United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (affirming exclusion of expert intending to testify about the authenticity of a particular securities certificate because he had "no experience in identifying counterfeit foreign securities" although he had securities and international finance expertise); *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (C.D. Cal. 2001) (affirming exclusion of architect opinion that large metal and canvas cabanas met contract requirements and free of defect when the record was silent as to whether his training was relevant and he had testified he was not an expert in manufacturing or use of canvas products).

Vasquez's ATF career was in the Firearms Technology Branch—classifying firearms and providing technical and training support. *Id.*, Ex. D (Vasquez 22:18–28:7). He helped train Industry Operations Investigators and assisted them on firearms-technology matters, *id.* at 28:22–29:12, but he never served as an IOI, *id.* at 31:5–15, and he never played "any role in determining . . . what type of either disciplinary or remedial action . . . would be proposed against a firearms manufacturer by ATF," *id.* at 31:21–32:2. His post-ATF work at FFLGuard likewise involved compliance consulting—"keep[ing] people out of trouble"—not determining what enforcement action ATF should take. *Id.*, Ex. D (Vasquez 54:5–18).

Yet his sole opinion is precisely an enforcement-outcome determination: whether ATF would have revoked Gemtech's license. That opinion requires experience evaluating inspection findings under ATF's enforcement criteria and deciding whether violations warrant sanction up to revocation—experience he expressly disclaimed. *Id.*, Ex. D (Vasquez 31:21–32:2).

Like the experts in *Chang* and *In re Canvas Specialty*, Vasquez's expertise does not fit the opinion he offers and should be excluded. And this Court likewise has excluded opinions that fall outside a witness's demonstrated expertise. In *Alves*, it excluded opinions outside the witness's field and based on materials he had not reviewed. 2022 U.S. Dist. LEXIS 105246, at *7–11. In *TB Holding*, it excluded damages testimony where the witness had never performed the valuation task at issue and conceded he was not an expert in that area. *TB Holding Co., LLC v. J&S Siding*, No. 4:22-cv-00307-BLW, 2025 U.S. Dist. LEXIS 146520, at *5–6, *8 (D. Idaho July 29, 2025). The same result follows here.

**E. Alternatively, the Testimony Should Be Excluded Under Rule 403.**

Rule 403 supplies an independent basis for exclusion. Even if Vasquez's testimony clears the low threshold of relevance, its probative value is substantially outweighed by the danger of "undue delay" and "wasting time." Fed. R. Evid. 403. This case is set for a seven-day bench trial with time split equally between the parties. Dkt. 218. Courts may exclude expert opinions under Rule 403 where the "disconnect" between the proffered opinions and the issues for trial would render the testimony "potentially misleading, confusing, and time wasting." *Glenn v. B & R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1058–59 (D. Idaho 2018).

Receiving the revocation opinion would require the Court to try a counterfactual enforcement proceeding—the ATF inspection process, the enforcement spectrum from oral warnings through license removal, the willfulness standard, and shifting ATF enforcement policy across administrations. *See id.*, Ex. D (Vasquez 43:18–44:8, 129:1–18). None of that bears on the questions the Court must decide under APA § 1.6(c): Smith & Wesson's subjective purpose in making post-closing decisions and any consultation with Martinez before a decision it knew would negatively impact the Earn-Out Payment. Dkt. 211 at 23–29.

That this is a bench trial is no reason to defer the ruling. The harm here is the consumption of limited trial time on a collateral inquiry the Court need not resolve. *See Alves*, 2022 U.S. Dist. LEXIS 105246, at *4–11 (excluding expert testimony before bench trial).

### F. In the Alternative, the Court Should Exclude Three Identified Categories of Opinion.

If the Court prefers narrower relief, it should at minimum exclude three categories of opinion. First, Vasquez should not be permitted to opine on whether ATF would have revoked Gemtech's FFL. That is the enforcement-outcome prediction he formed without reviewing the underlying records and without applying any enforcement criteria. *See id.*, Ex. D (Vasquez 99:15–100:25, 127:4–9, 129:10–15, 130:5–7, 152:3–17).

Second, he should not be permitted to characterize the recordkeeping violations as "administrative" rather than "willful." That characterization is the central premise of his revocation prediction, although he could define neither term and acknowledged "administrative" was his own label rather than a regulatory category. *Id.*, Ex. D (Vasquez 107:22–108:17, 143:7–15, 144:1–3).

Third, he should not be permitted to testify about ATF enforcement practice generally—including the enforcement spectrum, the willfulness standard, or policy developments during the relevant period—because he could not identify the applicable criteria and did not know those in force from 2017 to 2024. *Id.*, Ex. D (Vasquez 127:4–9, 128:10–15, 129:10–15).

## V. CONCLUSION

Smith & Wesson respectfully request that the Court exclude the testimony of Rick Vasquez in its entirety. In the alternative, Smith & Wesson requests the narrower relief set forth in Section IV.F.

DATED this 28th day of September, 2026.

HOLLAND & HART LLP

By *__/s/Erik F. Stidham__*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of September, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

*Attorneys for Plaintiff*

- ktrout@trout-law.com
- ajones@trout-law.com

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

36178869.v6