Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L.McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE RE NON-RETAINED EXPERT TESTIMONY** |

COME NOW Defendants, Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants") and hereby submit this Memorandum in Support of their Motion in Limine Re Non-Retained Expert Testimony.

## I. INTRODUCTION

Gemini Technologies, Incorporated ("Gemtech") did not disclose any non-retained experts and thus should be barred from offering expert opinion from any non-retained individuals.

Complete understanding of what Gemtech may seek to offer by way of non-retained expert opinion is unknown due to lack of Rule 26 disclosure. Every expert opinion thus cannot be identified in this Motion, prejudicing Smith & Wesson's ability to move against each unless an order excluding all expert opinion from non-retained experts is granted.

To provide context for the Court, Smith & Wesson identifies some anticipated expert opinions: (1) from Gemtech's former Director of Compliance, Daniel Nakashima ("Nakashima"), and Gemtech's former CEO, Ron Martinez ("Martinez"), on the propriety of Gemtech's or Smith & Wesson's compliance programs; and (2) from Gemtech's former Director of Research & Development, Jacob Kunsky ("Kunsky"), on the sufficiency of Gemtech's product plans or testing protocols for new products. These witnesses were not disclosed as experts.

Moreover, Nakashima, Martinez, and Kunsky are not qualified to offer such opinions. All three lack experience in the particular areas to which Gemtech likely would have them opine and have no applicable education. Nakashima and Kunsky additionally demonstrated unfamiliarity with relevant standards in their depositions.

## II. BACKGROUND

### A. Gemtech Did Not Disclose Any Non-Retained Expert Witnesses.

The deadline to serve expert disclosures was June 21, 2024. Dkt. 167 at 2. Gemtech did not disclose any non-retained experts. *See* Declaration of Jennifer M. Aiko ("Aiko Decl."), Ex. A (6-21-24 Gemtech expert disclosure); *id.*, Ex. B (7-22-25 Gemtech rebuttal expert disclosure).

Smith & Wesson anticipates that Gemtech will nonetheless seek to offer expert opinions through former employees or other individuals it did not retain as experts. By way of example, Gemtech may seek to offer its former Director of Compliance, Daniel Nakashima, to provide opinions relating to regulatory compliance of Gemtech sales or anticipated sales or the adequacy

of Gemtech's or Smith & Wesson's respective compliance programs. As another example, Gemtech might seek to offer its former Head of Research & Development, Jacob Kunsky, to testify about the sufficiency of Gemtech's product plans for successful product manufacturing.

### B. In Discovery, Nakashima and Martinez Offered Their Opinions on Regulatory Compliance Relating to Suppressors.

Nakashima began his employment with Gemtech as a Compliance Coordinator in the summer of 2016, a couple months after he graduated with a bachelor's degree in biochemistry. *Id.*, Ex. C (Nakashima 11:3-7, 12:16-19, 14:20-25). At the time of his hiring, he had no training or education in compliance. *Id.*, Ex. C (Nakashima 15:14-17).

After starting at Gemtech, Nakashima did not obtain any certifications in compliance. *Id.*, Ex. C (Nakashima 18:4-10). His compliance training was limited to attending one import-export compliance conference in Arizona, an Idaho-specific seminar, and an NFA handbook training. *Id.*, Ex. C (Nakashima 19:9-20:21).

Nakashima initially worked under Owen Miller ("Miller"), the Director of Compliance. *Id.*, Ex. C (Nakashima 14:23-25). But about six months into Nakashima's tenure, Miller was asked to leave. *Id.*, Ex. C (Nakashima 27:1-5, 28:6-15). After Miller left, Nakashima was promoted to Director of Compliance for Gemtech without any further training or education. *Id.*, Ex. C (Nakashima 19:9-20:21, 27:23-28:5). He remained Director of Compliance until about February 2018, when his employment was terminated. *See id.*, Ex. C (Nakashima 115:20-116:6).

When asked about the Foreign Corrupt Practices Act ("FCPA") in his deposition, Nakashima did not recall what the statute was or whether he had ever received any training on it. *Id.*, Ex. C (Nakashima 157:22-158:10). When asked about whether Gemtech had a compliance manual, Nakashima testified "I'm sure they did" but could not actually recall its existence or

contents and could not recall any steps taken to ensure it was kept current. *Id.*, Ex. C (Nakashima 159:7-162:2).

Nakashima testified that after the parties executed the APA, all Gemtech's proposed international sales licenses were canceled, and Gemtech sales were put into a "holding pattern" from August 2017 to February 2018. *Id.*, Ex. C (Nakashima 110:23-123:11).

Martinez, with no background in regulatory compliance, nonetheless also testified on the subject. He opined that "Gemtech was in full compliance with ATF regulations and other standards," and that with respect to Gemtech's proposed international sales, "everything was legal." *Id.*, Ex. E (Gemtech 30(b)(6) 207:22-208:9, 208:23-209:2, 211:8-15); *id.*, Ex. F (Martinez 296:2-3, 297:7-11, 298:18-299:1, 302:2-9).

Martinez also testified that Smith & Wesson's compliance standards were unreasonable, that he didn't think it was necessary for Smith & Wesson to cancel Gemtech's licenses post-acquisition. *Id.*, Ex. E (Gemtech 30(b)(6) 122:7-123:25, 207:22-208:9); *id.*, Ex. F (Martinez 166:19-167:16, 168:12-170:5, 226:11-24, 230:11-21, 246:22-247:1, 292:22-23).

To the extent that Gemtech intends to have Nakashima or Martinez testify at trial about whether Smith & Wesson's compliance department terminating Gemtech's licenses or suspending sales was appropriate under applicable law and regulation, such testimony would be inappropriate, undisclosed expert testimony. Any testimony regarding whether Gemtech or Smith & Wesson had sufficient or proper compliance programs, policies, or practices would also constitute undisclosed expert testimony. And testimony about whether the international sales opportunities Martinez and Jason Pace presented to Smith & Wesson on August 30, 2017 would have complied with applicable law and regulation likewise would be improper expert testimony. This Memo refers collectively to the foregoing areas of testimony as "Compliance Opinions."

**C. Kunsky: Gemtech's Former Research and Development Director**.

In 2016, Kunsky became an employee of Gemtech, a member of the Research and Development ("R&D") team. *Id.*, Ex. D (Kunsky 39:16-41:7). He worked under Blake Young ("Young"), the Director of R&D. *Id.*, Ex. D (Kunsky 41:8-10). Young was a mechanical engineer. *Id.*, Ex. D (Kunsky 100:2-3, 127:14-20). As Director of R&D, Young developed and tested products for Gemtech, as well as created blueprints and checked the blueprints' accuracy. *Id.*, Ex. D (Kunsky 99:23-100:1). At some point before resigning from Gemtech around October 2017, Kunsky became the Director of R&D. *Id.*, Ex. D (Kunsky 239:3-10).

Kunsky had no engineering education or training. *Id.*, Ex. D (Kunsky 13:22-24). He could not check product blueprints for accuracy, admitting that a full check required the engineers, including Young, who were the individuals "qualified to check them for their accuracy." *See id.*, Ex. D (Kunsky 99:4-11).

Likewise, he admitted that testing protocols for new products were created in-house, often not based on external requirements or law. *Id.*, Ex. D (Kunsky 73:1-12, 69:22-70:3). Thus, when setting a "round count" that has to be met with the new product, Gemtech would either "meet that objective, or if no one can meet it, then they change it to make it meetable." *Id.*, Ex. D. (Kunsky 72:15-73:23). Kunsky also explained that Gemtech testing standards were materially driven by budget: "[W]e could build a requirement that doesn't exist and then run it past budgeting and they could deny it because it's . . . too much money . . . and that will objectively give you your number just because of budgeting, even though it has nothing to do with function." *Id.*, Ex. D. (Kunsky 69:22-70:3).

To the extent that Gemtech intends to have Kunsky testify at trial about whether Gemtech's blueprints or designs for its products were sufficient to use in production, whether products

Gemtech developed were ready for sale, or whether Gemtech's testing protocols were sufficient, would be improper, undisclosed expert testimony. This Memo refers to the foregoing areas of testimony as the "Engineering Opinions."

## III. LEGAL STANDARD

Whether to exclude expert testimony is within the discretion of the district court. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1046 (9th Cir. 2025) (appellate court reviews decision to exclude expert testimony for abuse of discretion).

## IV. ARGUMENT

### A. All Expert Opinions Offered by Non-Retained Experts Must Be Excluded.

#### 1. A Party Must Properly Disclose Non-Retained Experts or Face Exclusion of Their Testimony at Trial.

A party must provide Rule 26 disclosures relating to expert testimony it seeks to introduce—for both retained and non-retained experts. *See* F.R.C.P. 26(a)(2)(A)-(C) (requiring parties to disclose expert witnesses); *Goodman v. Staples Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (noting parties must make expert disclosures "at the times and in the sequence that the court orders").

As to non-retained experts:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

F.R.C.P. 26(a)(2)(C).

"While this disclosure is 'considerably less extensive than the report [required of retained experts],' the summary is understood to mean the abstract or abridgment of the witnesses' testimony." *Nitta v. United States*, No. 2:17-cv-01137-GMN-CWH, 2019 U.S. Dist. LEXIS

109341, at *14 (D. Nev. June 28, 2019) (holding disclosure insufficient when it only listed topics to which non-retained experts were expected to testify).

Failure to properly disclose experts results in exclusion under Rule 37(c)(1), unless the failure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming exclusion of expert testimony); *Key v. Qualcomm Inc*., 129 F.4th 1129, 1143 (9th Cir. 2025) ("Rule 37(c)(1) gives teeth to [Rule 26] requirements by forbidding the use of any information not properly disclosed.") (internal quotation marks omitted).

The party whose disclosures are at issue bears the burden to show substantial justification or harmlessness. *Yeti by Molly, Ltd.*, 259 F.3d at 1107; *see also Quevedo v. Trans-Pac. Shipping*, 143 F.3d 1255, 1258 (9th Cir. 1998) (affirming exclusion of expert report when disclosed six weeks after the deadline); *Mendoza v. Monsanto Co.*, No. 1:16-cv-00406-KES-HBK, 2024 U.S. Dist. LEXIS 192143, at *19-20 (E.D. Cal. Oct. 22, 2024) (holding substantial compliance and harmlessness not shown and barring testimony from doctors whose non-retained expert testimony was insufficiently disclosed).

### 2. Any Expert Opinions Gemtech Seeks to Introduce Through Individuals Other Than Its Disclosed, Retained Experts, Should Be Excluded.

Because Gemtech failed to disclose any non-retained experts, all expert opinions offered by any individual other than Gemtech's retained experts (Matthew Murdock, Thomas South, and Richard Vasquez)[1] must be excluded. *See Key*, 129 F.4th at 1143 ("Rule 37(c)(1) gives teeth to [Rule 26] requirements by forbidding the use of any information not properly disclosed.").

[1] Smith & Wesson concurrently submits separate motions to exclude relating to Gemtech's retained experts.

To be clear, Smith & Wesson seeks exclusion of all expert testimony from non-retained witnesses. But to illuminate the materiality of the non-retained expert issue, Smith & Wesson provides the following analysis relating to Nakashima, Martinez, and Kunsky and Gemtech's anticipated intent to have them respectively offer Compliance Opinions and Engineering Opinions. The extent of Gemtech's intent to use non-retained individuals to provide expert opinion is unknown to Smith & Wesson due to Gemtech's failure to disclose. Similarly, the specific expert opinions Smith & Wesson can anticipate (even from Nakashima, Martinez, and Kunsky) are likewise unknown due to Gemtech's failure to disclose. This Memo's analysis of Nakashima and Kunsky is limited to their deposition testimony and Smith & Wesson's perceptions of Gemtech's theory of the case, which is inherently incomplete without a disclosure. Thus, Smith & Wesson seeks exclusion of all expert opinion offered by non-retained witnesses.

### 3. The Compliance Opinions and Engineering Opinions Are Expert Testimony and Should Be Excluded for Failure to Disclose.

Testimony about whether a company's products or practices meet regulatory compliance standards is expert testimony that must be properly disclosed under Rule 26. *See, e.g.*, *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 678-80 (N.D. Cal. 2021) (striking Vice President of Innovation and Product Development's undisclosed expert opinions as to product's compliance with applicable regulations); *Gonzales v. Battelle Energy All., LLC*, No. 4:20-cv-00102-BLW, 2024 U.S. Dist. LEXIS 135882, at *11-12 (D. Idaho July 30, 2024) (barring non-retained experts from testifying as to their "evaluation of [plaintiff's] use of prescription medication and compliance with the requirement of [plaintiff's] HRP certification").

Similarly, testimony about the sufficiency of engineering plans or product testing are expert opinions. *See, e.g.*, *Oregon v. Winchester Water Control Dist.*, No. 3:20-cv-01927-IM, 2025 U.S. Dist. LEXIS 75781, at *18-19 (D. Or. Feb. 20, 2025) (limiting testimony of a fisheries biologist

with more than 50 years' experience to his personal observations and prohibiting opinion testimony on a fish ladder's design, which would be appropriate for "an expert with an engineering background"); *FLIR Sys. v. Sierra Media, Inc*., 903 F. Supp. 2d 1120, 1134 (D. Or. 2012) (efficacy of particular product testing is "a proper subject for expert testimony").

Because Gemtech did not disclose Nakashima, Martinez, or Kunsky as expert witnesses, the Compliance Opinions and Engineering Opinions should be excluded. *See, e.g.*, *Quevedo v. Trans-Pac. Shipping*, 143 F.3d at 1258 (affirming exclusion of late-disclosed expert opinion); *Mendoza*, 2024 U.S. Dist. LEXIS 192143, at *19-20 (excluding insufficiently disclosed non-retained expert testimony).

### B. In Any Event, Nakashima, Martinez, and Kunsky Are Not Qualified; Thus the Compliance Opinions and Engineering Opinions Must Be Excluded.

#### 1. To Qualify under Rule 702(a), a Witness Must Have Significant Expertise Specific to the Issue About Which He Testifies.

Federal Rule of Evidence 702 governs qualification of expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702.

Relevant here, to qualify as an expert, the witness must have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue[.]" F.R.E. 702(a).[2]

A witness does not qualify based on general education or experience in a field or industry but rather must show education, training, and/or significant experience in the specific area on which they intend to testify. *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (affirming exclusion of expert intending to testify about the authenticity of a particular securities certificate because he had "no experience in identifying counterfeit foreign securities" although he had securities and international finance expertise); *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (C.D. Cal. 2001) (affirming exclusion of architect opinion that large metal and canvas cabanas met contract requirements and free of defect when the record was silent as to whether his training was relevant and he had testified he was not an expert in manufacturing or use of canvas products).

### 2. Nakashima, Martinez, and Kunsky Lack Relevant Education, Training, or Experience.

Nakashima does not qualify as an expert because he has no education in the field of regulatory compliance of suppressors. *See supra*, Part II.A. He admitted his only training consisted of a couple industry conferences. *Id.* His on-the-job training or experience was likewise limited because the Director of Compliance left Gemtech shortly after he began, at which point Nakashima was promoted to the Director position. *Id.* Nakashima's deposition testimony reveals that he was unaware of a major statutory source of regulation—and that he was even unfamiliar with

[2] Smith & Wesson reserves the right to further challenge Nakashima's, Martinez's, or Kunsky's qualifications or specific opinions as well as any expert opinions from other non-retained witnesses should this Court deny the instant Motion. Gemtech has not provided sufficient information for Smith & Wesson to comprehensively present objections under F.R.E. 702.

Gemtech's compliance manual. *Id.* Nakashima lacks qualification to render any Compliance Opinions. Because of this lack, his opinions would not "help the trier of fact to understand the evidence or to determine a fact in issue[.]" F.R.E. 702(a).

Martinez has no relevant education, training, or expertise in regulatory compliance. *See* Aiko Decl., Ex. F (Martinez 6:15-26:8) (describing education and professional background).

Similarly, Kunsky is not qualified to offer Engineering Opinions. *See Chang*, 207 F.3d at 1172-73 (general experience insufficient to qualify expert for particular opinion offered); *In re Canvas Specialty, Inc.*, 261 B.R. at 19 (same). Kunsky has no engineering education or training. *See supra*, Part II.B. He admitted he did not have expertise in the creation or checking of Gemtech product blueprints. *Id.* Nor did he have expertise on the relevant standards for product testing, admitting that the testing standards he implemented for new Gemtech products were *ad hoc* and often based on budgeting. *See id.*

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court rule that no expert opinion may be offered on Gemtech's behalf by any non-retained individual, including specifically Compliance Opinions from Daniel Nakashima and Ron Martinez, and Engineering Opinions from Jacob Kunsky.

DATED this 28th day of September, 2026.

HOLLAND & HART LLP

By *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of September, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

- ktrout@trout-law.com
- ajones@trout-law.com

*Attorneys for Plaintiff*

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

39125847.v4