KIM J. TROUT, ISB #2468
ALYSSA R. JONES, ISB #12181
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
ktrout@trout-law.com
ajones@trout-law.com
Attorney for the Plaintiff.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

GEMINI TECHNOLOGIES, INC., an Idaho corporation,

Plaintiff,

vs.

SMITH & WESSON SALES COMPANY, a Delaware Corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,

Defendants.

Case No. 1:18-CV-00035-REP

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE REGARDING EXPERT TESTIMONY**

Plaintiff, Gemini Technologies Inc. ("GT"), hereby submits this memorandum in opposition to Defendants' (1) Motion in Limine to Exclude Testimony of Matthew J. Murdock (Dkt. 223); (2) Motion in Limine re: Non-Retained Expert Testimony (Dkt. 222); (3) Motion in Limine to Exclude Testimony of Rick Vasquez (Dkt. 221); and (4) Motion in Limine to Exclude Testimony of Thomas J. South, CPA, CFF (Dkt. 220), as follows:

## HALLUCINATED AND MISCHARACTERIZED CASE LAW AND DEPOSITION TESTIMONY

Defendant has submitted the following errors, that Plaintiff has found, to this Court:

| Case Law in the Motion | Memorandum at Issue | Notes |
|---|---|---|
| TB Holding Co. v. Hagemeyer N. Am., Inc., No. 2:22-cv-00246-REP, 2025 U.S. Dist. LEXIS 146520, at *5-6, *8 (D. Idaho Aug. 15, 2025) | Matthew J. Murdock, p. 7 | Fabricated Case Citation; Cannot be found on Westlaw or Pacer |
| *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). | Matthew J. Murdock, p. 8 | Overruled in part by *United States v. Bacon*, 979 F.3d 766 (2020); Misquoted which thus misstates the requirement of relevancy |
| *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). | Matthew J. Murdock, p. 8 | Misquoted: The actual quote is "plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Id.* at 35. Defendant's memo changes the meaning of the quotation. |
| *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d (1997). | Matthew J. Murdock, p. 15 | Misstates the holding: It cannot be seen where in *Joiner* it says that failure to account for obvious alternative explanations creates an analytical gap. |
| Christiansen v. Siemens Corp., No. 1:18-cv-00068-REP, 2020 U.S. Dist. LEXIS 189737, at *9 (D. Idaho Oct. 13, 2020). | Thomas J. South, p. 10 | Fabricated Case Citation; Cannot be found on Westlaw or Pacer |
| **Deposition Transcript Cites** | **Memorandum at Issue** | **Notes** |
| "Not that I recall." Murdock Dep. 14:12-18. | Matthew J. Murdock, p. 3 | This quotation does not appear at 14:12-18. |
| "[B]ased on a hypothetical where Gemtech operates without Smith & Wesson." Murdock Dep. 211:18-212:2. | Matthew J. Murdock, p. 4 | Defendant claims Murdock made this claim, however, this is counsel's statement/question. Murdock said: "Yes, that would – that would be – " and then Counsel cut him off. |
| "[W]ould have been able to operate the company similarly or better" | Matthew J. Murdock, p. 4 | This quotation does not appear at 64:19-65:4, nor does it appear in the deposition |
| "I don't have a scenario in there where the market share is below what they have done historically." | Matthew J. Murdock, p. 5 | It is unclear what the citation is; it may be Murdock Dep. 126:21-24 which is cited at the end of the paragraph. Either way, the quotation was not found in the deposition, nor does the remainder of the paragraph stand for the testimony given at that citation. |
| "I don't know the answer to that question." | Matthew J. Murdock, P. 15 | This quotation does not appear at 236:12-15, nor does the paragraph stand for the proposition it is asserted for. The beginning of the paragraph, the factors that impacted revenue, e.g. hearing protection act, industry-wide contract, does not appear in the deposition provided by counsel. |

In addition to these egregious errors, Defendant has also misrepresented Mr. Murdock's report in terms of his breach of contract analysis. Defendant says that "after the Court dismissed [the] fraud claim, Murdock imported the [rescissory damages] model unchanged to support the only claim remaining for trial: Breach of contract under Section 1.6(c) of the Asset Purchase Agreement." Dkt. 223-1, p. 1. This is demonstrably false and misleading, as Murdock's expert report contained separate sections for rescissory damages and the breach of contract damages.

Courts across the nation are now facing these issues surrounding the use of generative AI. The Ninth Circuit has recently ruled on this issue. *See*, *Malkeet Lnu v. Blanche*, 177 F.4th 1014 (9th Cir. 2026).[1] Hallucinations, such as fabrications and inaccuracies, are common, even in newer generation AI models. *Id.* at 1024-24. However, these hallucinations can occur without the use of AI, the rule is simply violated at the point of signing and filing. *Id.* at 1025-26. The Court further stated:

> Our Circuit Advisory Committee recently explained that the signature requirement of FRAP 32(d) is our Court's primary guard against inaccurate filings. "Regardless of how the filing is prepared, the signature is an attestation that the signer has reviewed the filing and is responsible for the accuracy of its contents." Rule 32-1 Adv. Comm. Note. In other words, no matter how a filing is prepared—whether by delegation, partnership, solo work, or generative AI—the party or attorney who submits the filing with this Court must read the authorities cited therein to ensure that they are real, properly attributed, and accurately represented.

*Id.* at 1026.

Why Defendant has included fabricated case citations, misquoted case text, and included misstated holdings—whether because of hallucination, gross inadvertence, or deliberate misrepresentation—is unknown. One answer might be to simply increase the burdens on the Plaintiff, causing an extraordinary expenditure of time and resources in chasing ghosts. Plaintiff is prejudiced by the reliance and argument of Defendant. If Defendant were to correct their filings,

---

[1] The Decision was filed June 3, 2026. Mike Singh Sethi, one of the attorneys, has petitioned for Certiorari to the United States Supreme Court. That Petition was filed September 8, 2026.

either through an amendment or on reply, Plaintiff would be prejudiced because it would not be afforded an opportunity to respond. The Court should determine an appropriate remedy.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence permits a witness qualified by "knowledge, skill, experience, training, or education" to offer testimony in the form of an opinion. FED. R. CIV. P. 702. The Rule contemplates:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

"Expert testimony is relevant if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" Scofield v. Guillard, No.: 3:22-cv-00521-REP, 2026 WL 184517, at *2 (D. Idaho Jan. 23, 2026) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (citing FED. R. CIV. P. 702(a)). To be considered admissible, the testimony given by the expert must "rest on a reliable foundation and [be] relevant to the task at hand." *Hyer v. City & Cnty. Of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)). Expert testimony is also "relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Further, this Court stated that "the reliability inquiry is fact-specific and depends 'on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Scofield*, 2026 WL 184517, at *2 (quoting *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 150 (1999)).

Four factors are considered when determining whether expert testimony is reliable: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory of technique; and (4) whether the

theory or technique enjoys general acceptance within the relevant scientific community." *US v. Hankey*, 203 F.3d 1160, 116 (9th Cir. 2000) (citing *Daubert*, 509 U.S. at 592-94). Most importantly, the inquiry under Rule 702 is flexible; the district court holds broad discretion. *Daubert*, 509 U.S. at 594; *Kumho*, 526 U.S. at 142.

## ARGUMENT

This Court held, citing *Flores*, that "*Daubert* is meant to protect juries from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." Alves v. United States, No.: 3:19-cv-00044-REP, 2022 WL 2105976, at *2-6 (D. Idaho June 10, 2022) (quoting *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018)) (internal citations omitted). This Court continued that it "may make its reliability determination during, rather than in advance of, trial." *Id.* Contrarywise, Defendant stated that "[p]retrial exclusion remains appropriate in a bench trial where the opinions are unqualified, unreliable, and would not aid the trier of fact." Dkt. 221-1, p. 6 (citing Alves v. United States, No.: 3:19-cv-00044-REP, 2022 WL 2105976, at *4-11 (D. Idaho June 10, 2022). These motions should be disregarded.

### 1. Matthew J. Murdock is highly qualified by education and experience, his opinions are based on reliable principles and methods, and his testimony will assist the trier of fact in determining the extent of damages.

*A. Mr. Murdock is highly qualified.*

Under Rule 702, a witness is qualified as an expert by knowledge, skill, experience, training, or education. FED. R. CIV. P. 702. Here, Mr. Murdock must be found to be qualified as an expert.

In *Primano*, a doctor was excluded for not being able to say why a plastic part of an artificial elbow failed. *Primiano v. Cook*, 598 F.3d 558, 566 (9th Cir. 2010). The Circuit Court stated that the "will assist" requirement goes to relevance, which depends on what must be proved, and is controlled by law. *Id.* at 567. Since the doctor was able to testify that the artificial joint failed to

perform as expected, that was enough to assist the trier of fact; he did not need to know why. *Id.* "His methodology, essentially comparing what happened with Ms. Primiano's artificial elbow with what surgeons who use artificial elbows ordinarily see, against a background of peer-reviewed literature, is the ordinary methodology of evidence based medicine . . . . Given that the judge is a 'gatekeeper, not a factfinder,' the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it." *Id.* at 567-68.

Mr. Murdock attended BYU and majored in actuarial science with a minor in mathematics. *See*, Declaration of Counsel, Exhibit 1 (Murdock 7:21-23). He then obtained a Fellow of the Casualty Actuarial Society designation, then an MBA from the University of Chicago in economics and finance. *Id.* at 7:23-25; 8:1-2. Actuaries are "individuals that quantify risk and assess risk." *Id.* at 8:9. During his career, over the course of about fifteen years, he worked at Great American Insurance and then Deloitte Consulting before working for the GEC Group. *Id.* at 10: 16-24. Some of his many job functions prior to working for GEC included: (1) quantifying reserves from business lines; (2) quantified and priced insurance; (3) worked on finance, audit, and risk committees; (4) worked on software implementations for policy administration systems; (5) priced insurance securities; and (6) managed overseas teams. *Id.* at pp. 9-10. Now, at the GEC Group, an economic consulting and litigation support firm, he runs the entire company. *Id.* p. 11: 11-25. He is not an attorney, nor is he required nor expected to be, as he was retained to provide economic analysis. *See also*, Declaration of Matthew J. Murdock, Exhibit 1.

Defendant claims Murdock is unqualified because he has never quantified revenue from a manufacturer, nor is he an expert in running a manufacturing business. Dkt. 223-1, p. 3. However, Murdock has worked on cases regarding lost profits for a fire truck manufacturer, as well as a CNC manufacturer, just to name two examples. *See*, Declaration of Counsel, Exhibit 1 (Murdock 13: 14-25; 14: 1-25; 15: 1-2). In fact, he has given economic testimony in some form in over twenty-nine

cases. *See*, Declaration of Matthew J. Murdock, Exhibits 1 and 2. Defendant misstates and mischaracterizes Murdock's testimony. In any event, the Court should reject Defendant's suggestion that an economist cannot perform a present manufacturing analysis without first having performed a prior manufacturing analysis. That would lead to absurd results, i.e., an infinite regress scenario in which the economist could not perform the elusive first manufacturing analysis so as to enable him to perform subsequent analyses.

*B. Defendant is focused on an issue that is no longer relevant in an attempt to improperly persuade this Court.*

It should be noted that throughout the remainder of Defendant's briefing, minimal citations are given, nor are any claims proven or reviewed by Defendant's experts. The brief is mostly Defendant simply disagreeing with Murdock's opinion in terms of its weight and credibility. Under *Daubert*, disagreement is not enough to omit the testimony of any expert.

Rule 702 "applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope." *Kumho*, 526 U.S. at 147. The Supreme Court continued:

> Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called "general truths derived from . . . specialized experience." And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge.

*Id.* at 148-49 (internal citations omitted).

*Daubert* is not a strict "gatekeeping" function; the inquiry itself into assessing methodology of scientific opinion is flexible. *Primiano*, 598 F.3d at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

Defendant claims that Murdock "imported the model unchanged to support the only claim remaining for trial: breach of contract" and that Murdock "never built a model specifically to address breach of contract damages." Dkt. 223-1, pp. 1; 3. This, however, is simply not true. There is a model and analysis done specifically for breach of contract. Dkt. 223-4. Instead, Defendant attempts to mislead this Court by citing to the model Mr. Murdock built to support the claim of fraud. Since that claim was dismissed by this Court on summary judgment, that is no longer relevant, and therefore Plaintiff will not spend time here defending it. The defendant is comparing apples to oranges.

Defendant also claims that Murdock's analysis is contrary to any accepted methodology but fails to provide any expert testimony to support this claim throughout the memorandum, or caselaw. Dkt. 223-1, p. 3. Absent that showing, the Court should find that Mr. Murdock's opinions are admissible and that Defendant's challenges go to weight and credibility only.

This Court stated that "there is a genuine dispute of material fact as to whether Defendants acted in bad faith and with the specific purpose to deny Plaintiff the earnout payment." *See*, Dkt. 211, p. 25. Further, "[t]he haste with which Defendants dismantled GemTech gives rise to a reasonable inference that Defendants purposely intended to acquire and dismantle it, and thereby deny it a meaningful opportunity to achieve the earnout payment during the three-year earnout period." *Id.* at 28. Mr. Murdock calculated damages to place GemTech in the same place it would have been had Smith and Wesson not purposely pulled any opportunity for the earnout payment. *See*, *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009).

Mr. Murdock determined that the correct measure is revenue: at the time of the breach, when Smith and Wesson had fired Mr. Martinez, stopped consulting with him, and dismantled the potential earn out, revenue was the baseline that can be considered. Mr. Murdock opined:

> Included in the Asset Purchase Agreement (APA) was the potential for Martinez to obtain an earn-out based on the revenue performance of Gemtech over a 3-year

> period post-closing (August 7, 2017 to August 7, 2020). The APA indicates that the earn-out would be determined based on the cumulative revenue earned by Gemtech over the earn-out period and is calculated as (Earn-out revenue - $36,000,000) x (0.15), up to a maximum of $17,100,000 . . . . The economic loss associated with the breach of contract and/or breach of implied covenant of good faith and fair dealing claim are calculated within a reasonable degree of economic certainty as follows: $1,097,869 food Scenario 1, $2,387,638 for Scenario 2, and $3,537,982 for Scenario 3.

Dkt. 223-4, p. 18.

Mr. Murdock did not calculate the harm of each individual breach, as that would be impossible. But, when taken as a whole, that the breach were the actions taken to ensure GemTech did not receive the earn-out, the only possible measure of damages to consider is the revenue. Further, the model was not created for "fraud." The model was created for *revenue*, which allows Mr. Murdock to base his calculations. *See*, Declaration of Counsel, Exhibit 1, p. 244: 13-21. It is also improper for Defendant to attack Mr. Murdock's model, when Mr. Pickett adopted the same. Dkt. 223-7.

Defendant's analysis of Mr. Murdock's market share analysis is grossly mischaracterized. The projections are "but-for" scenarios, which are based on reasonable assumptions of market conditions and Gemtech's capabilities. Most importantly, Mr. Murdock relied on the actual past performance of the suppressor market as captured in the number of ATF Form 3 applications per year. This establishes the market share and opportunity available for Gemtech, which allows the analysis to review the potential market share of Gemtech specifically under each Scenario. Dkt. 223-8, pp. 11-14.

Mr. Murdock was also able to look at concrete opportunities Gemtech was actively pursuing, such as Cabela's and other major retailers. Gemtech had been in the market for many years and had a strong competitive position with Smith and Wesson. Using the actual market share, it is not a stretch for a reasonable trier of fact to assume that Gemtech would have met the same. Even so, Mr.

Murdock did not adopt a Gemtech specific model. The model was analyzed and applied appropriately with actual market data. *Id.* pp. 14-16.

Further, Defendant attempts to claim that Mr. Murdock assumed unlimited capacity. Again, that is untrue. Mr. Murdock never assumed capacity beyond what was done in 2016; scenario three does, but not until the year 2020. Dkt. 223-4, pp. 10-11; Dkt. 223-8, pp. 19-20.

Defendant cites a case out of Wisconsin, *Fail-Safe*, as a reason to exclude Mr. Murdock's testimony. This argument is unfounded: the experts in *Fail-Safe* were excluded because they read like a commercial salesman for the company, undermined and dismissed all evidence to the contrary, and cherry-picked data to be used. *See*, *Fail-Safe, LLC. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870 (E.D. Wis. 2010). In fact, one expert admitted to never having researched *actual* sales. *Id.* at 890 (emphasis added). Also, the action was one for unjust enrichment, and therefore future profits was an improper calculation of damages. *Id.* at 898. Therefore, as argued *supra*, this matter is highly distinguished from *Fail-Safe*.

Further, Defendants relied on Yacek at Dkt. 223-9, for a factual statement. However, Defendants do not properly include Mr. Murdock's rebuttal report, as properly filed under this scheduling Order. Therefore, Defendants ask this Court to review Mr. Yacek's report in a vacuum and not consider relevant data provided from Mr. Murdock. This Court is left without the full picture. To tie down this issue, Mr. Murdock's rebuttal report is attached to this opposition. *See*, Declaration of Counsel, Exhibit 2. Again, Mr. Murdock states: "My analysis relies on the actual market data as reported by the ATF during these years to form an opinion." *Id.* p. 1.

When reviewing this with his initial report, the number of registered suppressors increased exponentially. *Id.*; Dkt. 223-4. Mr. Murdock relies on *actual market data* as it relates to the number of registered suppressors. Under *Daubert* and Rule 702, Mr. Murdock's analysis satisfies all prongs, as

this is highly relevant to the Court, and therefore must not be excluded. He rebutted Mr. Yacek and confirmed both the reliability and the relevancy of his methodology.

In sum, Defendant has manipulated Mr. Murdock's testimony and manipulated his model in the hopes of excluding his testimony at trial. Case law has been misstated and hallucinated. On that alone, the motion should automatically fail. Any argument regarding a rescissory model based on fraud is a red herring and is no longer relevant for trial. Mr. Murdock based his model on revenue, not a legal cause of action. It is not Mr. Murdock's job to understand legal conclusions. If Defendants disagree with the model, the proper place to raise those issues is on cross examination, not a motion in limine. Mr. Murdock meets the requirements under *Daubert* and Rule 702. He is qualified, and his testimony will assist the fact finder in determining a damage calculation based on breach of contract. The motion to exclude Mr. Murdock's testimony should be denied.

**2. The Motion in Limine re: Non-Retained Expert Testimony is irrelevant.**

As argued *supra*, this Court sits as the finder of fact, and therefore, any issue surrounding fact witnesses should be determined at the time of trial. *Alves*, 2022 WL 2105976, at *2. Defendants have written an entire memorandum in speculation, even after Plaintiff chose not to submit any non-retained experts. Therefore, Plaintiff will not use this time to comment on the case law regarding non-retained experts, as it is moot.

While Defendants have again, as they did in Mr. Murdock's report, twisted the testimony of Mr. Nakashima, Mr. Martinez, and Mr. Kunsky, issues of fact are to be reserved for the fact finder. Plaintiff also notes that Defendant has chosen to cite in Dkt. 222-8, Martinez's Deposition, page 246:22-247:1, but has failed to produce those pages of testimony. To provide a full picture, Mr. Martinez's Deposition in full is filed herewith. *See*, Declaration of Counsel, Exhibit 3.

However, three claims deserve comment. Defendant alleges that lay witnesses should not be able to testify "about whether Smith & Wesson's compliance department terminating Gemtech's

licenses or suspending sales was appropriate under applicable law and regulation." Dkt. 222-1, p. 4. Defendant also raises whether international sale opportunities would have complied with applicable law. *Id.* A lay witness may testify as to the facts of the termination of licenses and the suspension of sales. Whether it was appropriate under applicable law and regulation is a legal question, which this Court will be able to ascertain on its own. What compliance programs, policies, or practices existed at the time is a question of simple fact, and not necessary for an expert to weigh in.

Mr. Nakashima, Mr. Martinez, and Mr. Kunsky are fact witnesses. They will testify as to their own personal knowledge.

**3. Thomas South is highly qualified by education and experience, his opinions are based on reliable principles and methods, and his testimony will assist the trier of fact resolve disputed issues at trial.**

As with Mr. Murdock, Mr. South is a highly credentialed and experienced expert. Dkt. 220-3, pp. 11-12. The fact that he has not worked in the silencer manufacturing industry does not prevent him from rendering opinions in this matter, especially when Mr. Pickett (Defendant's rebuttal expert) did not raise this challenge in his report or demonstrate that Mr. South was unqualified to act as an expert. Dkt. 220-6; *See also*, *Primiano*, 598 F.3d at 566.

Mr. South's proposed opinions are also highly relevant. Contrary to Defendant's claims, the opinions are not limited to just the dismissed fraud claim. As detailed in his report, Mr. South provides important context and analysis for the breach of Section 1.6(c) of the APA. For instance, he explains that forecasting is a "critical" component of a transaction like the APA. He says it would be highly unlikely and irregular for Defendant to present the model to the company board unless it represented their true expectations as to future earnout performance. His additional professional analysis discusses the Defendant's post-APA actions, including the company's Form 10-Q and its public representations as to the value of the earnout. In short, Mr. South is not discussing

Defendant's subjective intent. Rather, he analyzes their express, objective statements and actions. *See*, 220-3, pp. 6-8.

Section 1.6(c) required Defendant to consult with Martinez on any decisions where it had "knowledge" that such decisions would negatively impact the earnout payment. Far from being an abstract report about intent, Mr. South's analysis focuses on this very question—whether there is objective evidence to support the claim that S&W acted with knowledge and whether that constituted a breach of its contractual duties to Gemtech. *Id.* The Court itself discusses the issue in terms of this same evidence stating that "prior to closing, Defendants internally projected a significant reduction in Gemtech's revenue during the three-year earnout period," and that viewing this evidence most favorably to Gemtech, "Defendants never intended to consult Martinez about decisions that they knew would negatively affect the earnout payment." Dkt. 211, pp. 25-26.

Defendant fails to show that Mr. South's analysis is unreliable. This is especially true when Defendant's own expert, Mr. Pickett, uses the events surrounding the transaction to conclude that S&W was using the model as a mere internal "stress test," not as a projection. Dkt. 220-6 p. 38. If Mr. Pickett is allowed to present such opinions, then Mr. South should be allowed to opine that it *was* used for projection purposes and that Defendant had the requisite "knowledge" under Section 1.6(c), as evidenced by their express statements and actions, so as act in bad faith with respect to their conduct under the APA.

As with Mr. Murdock's report, the Court should find that Defendant's objections to Mr. South go to the weight and credibility of his testimony, not to its admissibility.

**4. Mr. Vasquez is a highly qualified rebuttal expert.**

Under Rule 702, a witness is qualified as an expert by knowledge, skill, experience, training, or education. FED. R. CIV. P. 702. Here, Mr. Vasquez is highly qualified in his field, and thus highly

qualified to testify as an expert. In fact, when it comes to firearms, he's probably the most qualified in the room, with previous top-secret clearance.

Mr. Vasquez owns Rick Vasquez Firearms, LLC out of Jacksonville, NC. Dkt. 221-4, p. 49. He is a certified law enforcement and US Marine Corps firearms shooting instructor, he has provided firearms training and technical assistance to Border Patrol, Customs, the Secret Service, and other law enforcement, and he has testified in a plethora of criminal and civil matters involving firearms. *Id.* He has specialized knowledge in firearm and ammunition classification, and assists foreign and domestic governments in firearms origin, functionality, and importability. *Id.* He is a technical advisor for governments and private companies on the National Firearms Act, the Gun Control Act, the International Traffic in Arms, Arms Export Control Act, and manufacturing and import related concerns. *Id.* He developed the training programs used by the ATF still today. *Id.* at 49-56. Under Rule 702, Mr. Vasquez is highly qualified.

Rule 26(a)(2)(D) defines rebuttal experts as those who present evidence intended solely to contradict or rebut the subject matter of an initial expert witness. FED. R. CIV. P. 26. Here, Mr. Vasquez is a rebuttal expert to Philip D. Milks.

In *Lindner v. Meadow Gold Dairies, Inc.*, Defendant attempted to strike Plaintiff's rebuttal experts. 249 F.R.D. 625, 636 (D. Haw. 2008). Simply striking because experts are marked as rebuttal is not enough. *Id.* (citing *Johnson v. Grays Garbor Cmty. Hosp.*, No. C06-5502BHS, 2007 WL 4510313, at *1 (W.D.Wash. Dec. 18, 2007) ("the Court will not exclude Plaintiff's rebuttal experts from testifying solely because Plaintiff designated only rebuttal experts.")). However, a rebuttal expert's testimony is limited at trial based on the testimony of the expert they rebut; they cannot be called in Plaintiff's case-in-chief. *Id.* Defendants in *Lindner*, claimed that the expert did not review the report of the case-in-chief expert, the same as Defendant does here. *Id.*; Dkt. 221-1, p. 2.

Mr. Vasquez's report is literally a redline of Mr. Milks' report, based on his expertise, training, knowledge and experience. *See*, Dkt. 221-5. He also cites relevant reports. *Id.* His report is, thus, directly contradictory.

Similarly, Mr. Milks is an attorney, does not work in ATF operations, nor is he an investigator. Dkt. 221-3, p. 1. As Defendant has stated, any such testimony would "consume trial time on a collateral regulatory inquiry the Court need not resolve." Dkt. 221-1, p.2. Therefore, the Court should hold any decision regarding Mr. Vasquez dependent upon whether Defendant calls Mr. Milks in their case-in-chief. But this Court could simply limit the testimony of Mr. Milks based on Defendant's own argument.

Further, Defendant again makes multiple citations to Mr. Vasquez's deposition, that are improper representations, or simply not included in their Exhibits. *See*, Dkt. 221-1, p. 12 (Vasquez 104:10-23), p. 14 (Vasquez 43:18-44:8). A full copy of Mr. Vasquez's deposition testimony is filed herein for comparison. *See*, Declaration of Counsel, Exhibit 4. Even so, if under Rule 403 this type of testimony would be wasting time, then Mr. Milks' testimony should not be admitted. FED. R. CIV. P. 403. If excluded, then Mr. Vasquez would also be excluded. However, because Mr. Vasquez is qualified, Plaintiff asks this Court to wait ruling on any such finding under *Alves*, in the instance that Mr. Vasquez would need to rebut the testimony given by Mr. Milks.

## CONCLUSION

Defendant's motions should be denied. They were not submitted in good faith and have attempted to inappropriately sway the Court. The memo for Mr. Murdock was riddled with case law and deposition errors and misstatements. The memo for the non-retained experts was based solely on speculation after Plaintiff did not file any such disclosures. Defendant fails to show that Mr. South's testimony should be excluded. Finally, Mr. Vasquez is a rebuttal expert, and his testimony

would only come in if Defendants themselves called their expert, on an issue they themselves claim is no longer at issue.

The motions should be denied, and Plaintiff asks this Court to determine any appropriate remedies.

DATED October 19, 2026.

Trout & Jones, PLLC

By *<u>/s/ Alyssa R. Jones</u>*
Alyssa R. Jones
Attorneys for Plaintiff