Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF THOMAS J. SOUTH, CPA, CFF (DKT. 220)** |

COME NOW Defendants, Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants"), and hereby submit this Reply Memorandum in Support of their Motion in Limine to Exclude the Testimony of Thomas J. South, CPA, CFF (Dkt. 220).

## I. INTRODUCTION

Gemtech offers Thomas J. South, CPA, CFF, for a single opinion: that when Smith & Wesson signed the Asset Purchase Agreement, its management knew there was a "zero probability" the earn-out would be paid. Its opposition now contends that South does not opine on intent but instead analyzes Smith & Wesson's "express, objective statements and actions." Dkt. 226 at 13.

South himself disagrees. He testified that the parts of his report describing Smith & Wesson's statements and actions offer no separate opinion, and that his single opinion is about what management intended. But an expert may not simply tell the Court what a party intended or believed; that inference is the Court's to draw from the evidence.

South reached that opinion without a probability analysis or any other testable method, and it adds nothing to documents the Court can read for itself. The Court should exclude his testimony or, at minimum, bar him from testifying about management's intent or knowledge, a "zero probability" of payment, Schedule 5 as a forecast, and negligence or ethics violations.

## II. ARGUMENT

### A. Gemtech Cannot Avoid Exclusion by Recharacterizing South's Opinion.

Gemtech now casts South as offering "important context and analysis for the breach of Section 1.6(c)." Dkt. 226 at 12. But South's report contains a single opinion: that Smith & Wesson's "operational management (CEO/CFO), and staff . . . knew that based upon revenue projections being utilized for the basis of financial and operational management decision making,

that there was no probability, or a zero probability that the Gemtech Assets would achieve any earnout payment." Dkt. 220-3 at 8. South agreed that this paragraph reflects the sum total of the opinions he intends to offer in this case. Dkt. 220-4 (South 97:2-16). The rest of the report, he agreed, is background: its discussions of Smith & Wesson's board model, the KPMG valuation, and the later Form 10-Q contain no additional opinion. *Id.* (South 93:12-24, 94:6-10, 95:17-97:16).

Gemtech cannot expand that opinion through briefing. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report must contain "a complete statement of all opinions the witness will express"); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1051-52 (9th Cir. 2025) (expert testimony not disclosed in expert report was inadmissible).

Gemtech also relies on South's statements that forecasting is a "critical component of any business combination" and that presenting a board model that did not reflect management's true expectations would be "highly unlikely, and moreover, highly irregular," even "financial officer negligence" and an AICPA ethics violation. Dkt. 226 at 12; Dkt. 220-3 at 6. South testified that those statements are not separate opinions. Dkt. 220-4 (South 93:12-24). Nor did he analyze them. He identified no AICPA standard such a model would violate. *Id.* (South 122:18-123:14). And he agreed that building a model to find the minimum revenue needed to meet a hurdle rate is a reasonable thing for a business to do, an exercise he did not criticize "[a]t all." *Id.* (South 117:11-119:19). That is what Schedule 5—the board model on which his opinion rests—appears to be: it is labeled "Hurdle rate and NPV." *Id.* (South 109:5-9).

### B. South's Sole Opinion Is Unhelpful State-of-Mind Testimony and a Legal Conclusion That Does Not Bear on the Surviving Claims.

#### 1. South's Opinion Is Improper State-of-Mind Testimony and a Legal Conclusion.

South's single opinion falls squarely within the range of proffered testimony that "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Siring*

*v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *accord Hardy v. Kish*, No. 1:23-cv-00306-BLW, 2025 U.S. Dist. LEXIS 141438, at *7 (D. Idaho July 22, 2025) (quoting *Siring*). He agreed he intends to offer an opinion on what Smith & Wesson management was thinking or believing about the likelihood of an earn-out payment, Dkt. 220-4 (South 99:17-100:5); described his goal as educating the factfinder on "the intent of management," *id.* (South 100:13-17); and would testify that management "never ever thought there would be any payout" and "internally had no intentions of paying any money out on the earnout," *id.* (South 100:13-17, 129:20-24). These are statements about belief and intent, not analysis of objective conduct.

South's opinion is also an impermissible legal conclusion. Gemtech argues South should be allowed to opine that Smith & Wesson "had the requisite 'knowledge' under Section 1.6(c), as evidenced by their express statements and actions, so as act in bad faith." Dkt. 226 at 13. That opinion would not analyze evidence; it would apply the APA to the facts and announce whether Smith & Wesson breached it. An expert "cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citation omitted); *see also Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (affirming exclusion of expert declaration on reasonableness of reliance, a matter of law).

**2. South's Reading of the Documents Would Not Help the Court.**

South's inference—that a blank earn-out line in a spreadsheet reveals what management believed—is one the Court can draw or reject on its own; it needs no accountant to read a spreadsheet, an email, and a dollar figure. Dkt. 220-3 at 6-7; Dkt. 220-4 (South 87:11-88:13); *see* Fed. R. Evid. 702(a); *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2011 U.S. Dist. LEXIS 133105, at *12, *27 (S.D. Cal. Nov. 17, 2011) (excluding one accounting expert's opinion because "no specialized or technical knowhow is required to read and draw conclusions from the

internal documents," and another's because an accountant's "training and experience" does not "specially equip him to divine what [the defendant] truly believed" (citation omitted)).

### 3. South's Opinion Does Not Fit the Questions Left for Trial.

South's opinion also does not "fit" the questions left for trial. Rule 702's helpfulness requirement demands "a valid . . . connection to the pertinent inquiry," and expertise that is valid "for one purpose is not necessarily [valid] for other, unrelated purposes." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993). Both surviving theories turn on Smith & Wesson's post-closing decisions: whether it took "any actions in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment," and whether it failed to "consult with Ronald J. Martinez in advance of any decision made relating to the operation of the Business" when it had "knowledge that such decision will negatively impact the Earn-Out Payment." Dkt. 194-14 § 1.6(c); *see* Dkt. 226 at 13; *cf. Lazard Tech. Partners, LLC v. Qinetiq N. Am. Operations LLC*, 114 A.3d 193, 194–95 (Del. 2015) (affirming judgment for buyer where seller failed to prove "that any business decision of the buyer was motivated by a desire to avoid an earn-out payment"). South's opinion addresses only what management expected at signing; he identifies no post-closing decision. Nor may Gemtech use South to revive its dismissed fraud theory, which rested on the same internal projections. Dkt. 211 at 19–22; *see Hardy*, 2025 U.S. Dist. LEXIS 141438, at *10 (testimony relating to resolved issues "is plainly not relevant").

At most, pre-closing evidence may offer limited circumstantial context for what Smith & Wesson knew or expected when it *later* made particular decisions. But the contractual good-faith inquiry focuses on Smith & Wesson's conduct when it made those decisions, not on what it expected at signing, *see Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) (express contractual "good faith" standard "looks to the parties as situated at the time of the wrong"), *overruled on other grounds by Winshall v. Viacom Int'l Inc.*, 76 A.3d 808, 815 n.13 (Del.

2013), and pre-closing materials cannot alter the obligations the APA imposes, *see ev3, Inc. v. Lesh*, 114 A.3d 527, 538 (Del. 2014) (non-binding letter of intent might be admissible to rebut buyer's claimed understanding but "could not alter the meaning of" buyer's sole-discretion clause). Expecting that an earn-out will not be reached is not the same as acting to prevent it. And whatever limited inference the pre-closing documents support, South's reading of them, untethered to any expert analysis, is not admissible expert testimony under Rule 702. *Compare Hardy*, 2025 U.S. Dist. LEXIS 141438, at *8 (admitting police-practices testimony that was "based on the facts presented, analyzed through the lens of [the expert's] experience and knowledge as an expert in standards and training for . . . police officers" (citation omitted)), *with* Dkt. 220-4 (South 33:12-35:1, 100:13-17) (opining, without any probability analysis or other method, that management "never ever thought there would be any payout").

**C. South Applied No Reliable Method.**

Even if South's opinion were a proper subject of expert testimony, Gemtech must show by a preponderance of the evidence that he reached it through a reliable method, with no presumption of admission. *Engilis*, 151 F.4th at 1049-50. It has not made that showing.

**1. South Performed No Analysis That Can Be Tested or Replicated.**

South agreed he "did not render a probability analysis" and was "not sure that I really totally understand what a probability analysis is." Dkt. 220-4 (South 33:12-35:1). He has "knowledge, but not expertise" regarding the suppressor market. *Id.* (South 32:2-23). Asked the basis for his view that the board approved the modeling, he answered, "Common sense." *Id.* (South 66:12-67:8). And he testified that "[t]here was nothing in the depositions that was material in my rendering of my opinion" and did not believe he had seen any Smith & Wesson employee's deposition. *Id.* (South 74:25-75:22, 110:11-19). Nothing in that process can be tested or replicated. *See* Fed. R. Evid. 702(c).

South's process also lacked the rigor of his profession. He built his report's background from Gemtech's Second Amended Complaint and accepted it as true because "[n]othing has been brought to my attention that would not make that true." Dkt. 220-4 (South 47:13-48:2, 125:9-25). Accepting the proponent's pleading as true unless someone proves otherwise is not the rigor Rule 702 requires. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

**2. South's "Zero Probability" Conclusion Is Undefined and Contradicted by His Own Sources.**

South also could not say what his conclusion means. Asked what "zero probability" meant, he answered "zero, which means that there is no chance." Dkt. 220-4 (South 42:8-11). He later agreed that by zero probability he meant payment was just not very likely, and he stood by that answer, *id.* (South 82:19-84:1); then, asked whether a payout was therefore possible but not very likely, said he did not "think there's any probability or possibility of any earnout being paid," *id.* (South 84:2-16); and then said "[t]here's no way that earnout was going to be paid," *id.* (South 85:12-13). An expert who cannot consistently define his own conclusion cannot show that it "reflects a reliable application" of any method to the facts. Fed. R. Evid. 702(d).

South's own sources also treat payment as unlikely, not impossible. KPMG, whose valuation South relies on, valued the earn-out at $100,000; South acknowledged that KPMG's report addresses a "very diminished probability that there would be anything paid out on the . . . earnout" and agreed that KPMG did not conclude there was no possibility of a payout. Dkt. 220-3 at 7; Dkt. 220-4 (South 99:4-11, 120:13-121:25). The Form 10-Q he cites stated that Smith & Wesson "believe[d] it is unlikely that the acquired business will achieve the performance metrics." Dkt. 220-3 at 7. And South conceded that if sales had exceeded the earn-out terms, "there probably

would have been payout on the earnout." Dkt. 220-4 (South 129:25-130:5). Sources that assign the earn-out a positive value cannot support an opinion that its probability was zero.

South's key sources also postdate the moment his opinion addresses. His opinion concerns what management knew "up to and including the date of the APA," yet it rests on a KPMG valuation commissioned on August 22, 2017, and a Form 10-Q filed on December 7, 2017—both after the June 29, 2017 signing and the August 7, 2017 closing. Dkt. 220-3 at 5, 7–8. Without them, what remains is South's say-so that an accountant's reading of a spreadsheet and an email reveals what management believed. Rule 702 does not require the Court to accept an opinion "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**3. South Ignored the Obvious Alternative Explanation for the Board Model.**

South also ignored the most obvious alternative explanation for the board model: the account of the Smith & Wesson executives responsible for it.[1] Courts consider whether an expert "has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Andrew Fulmer, then Smith & Wesson's Vice President of Financial Planning and Analysis, Dkt. 220-3 at 3, testified that the model "was to support a minimum rate of return that we needed on the base purchase price for our board of directors to either approve or disapprove," and that the 645 percent scenario was "an example." Dkt. 225,

---

[1] Smith & Wesson's opening memorandum made this same point, citing a decision recognizing that "[s]igns of a faulty methodology include the failure to rule out other causes." Dkt. 220-1 at 10-11. Its reporter citation, date, and quotation were accurate, but its caption and case number were not; the correct citation is *Christiansen v. Syverson*, No. 3:19-cv-365-DWM, 2020 U.S. Dist. LEXIS 189737, at *9 (D. Idaho Oct. 13, 2020). *See also Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502–03 (9th Cir. 1994) (affirming exclusion where experts "failed to explain the basis for their conclusions," made no "effort to rule out other possible causes," and came "to a firm conclusion first and then [did] research to support it").

Stidham Decl. Ex. C (Fulmer 69:4-70:2, 70:19-24). James Debney, then Smith & Wesson's CEO, Dkt. 220-4 (South 46:3-6), testified that the numbers came from a "sensitivity analysis" designed to show "how low can you go" and "are not, like, revenue forecasts or, really, estimated numbers." Dkt. 225, Stidham Decl. Ex. F (Debney 130:3-25). South never addressed that explanation. He did not know how anyone at Smith & Wesson used the term "financial model," yet said it "would surprise me" if anyone testified that Schedule 5 was not a revenue projection. Dkt. 220-4 (South 107:13-19, 108:11-19). That is an assumption, not an analysis. *See* Fed. R. Evid. 702(b).

Gemtech responds that if Smith & Wesson's rebuttal expert may describe the model as a "stress test," South may call it a projection. Dkt. 226 at 13. But the evidence of the model's purpose comes from the executives who used it, not the rebuttal expert, and South must justify his own opinion regardless. Rule 702 applies expert by expert, and it places the burden on the proponent of each. *See* Fed. R. Evid. 702 (testimony admissible only "if the proponent demonstrates to the court that it is more likely than not" that the rule's requirements are met).

**D. South's Credentials Do Not Extend to the Subject of His Opinion.**

South is a CPA and CFF with M&A advisory experience. Dkt. 220-3 at 11; Dkt. 220-4 (South 31:9-32:1). But that experience does not extend to the subject of his opinion: how a public company's management and board evaluate an acquisition. He could not recall ever presenting to a board of directors on an acquisition, Dkt. 220-4 (South 65:5-9); has never prepared an ASC 805 valuation and has no specialized expertise in them, *id.* (South 101:7-102:6); and "would not consider [him]self an expert in SEC issues," *id.* (South 23:14-24). Yet his opinion rests on a board model, a KPMG ASC 805 valuation, and a Form 10-Q. *See Alves v. United States*, No. 3:19-cv-00044-REP, 2022 U.S. Dist. LEXIS 105246, at *9 (D. Idaho June 10, 2022) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise." (quoting *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003))).

**E. A Bench Trial Does Not Excuse Rule 702, and a Ruling Now Is Warranted.**

Gemtech argues that, because this is a bench trial, the Court should defer its reliability determination until trial. Dkt. 226 at 5. The Court has that discretion, but deferral serves no purpose where, as here, the defects are apparent on the face of South's report and deposition. And a bench trial changes when the Court rules, not whether Rule 702 applies. *See Alves*, 2022 U.S. Dist. LEXIS 105246, at *4-5 (court still acts as "a gatekeeper, not a fact finder" (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022))); *id.* at *6-11 (excluding expert opinions before bench trial). Cross-examination is the remedy for testimony that is "shaky but admissible," *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), but only once the Court has found it admissible: "'shaky' expert testimony, like any expert testimony, must still be 'admissible,' and this requires a determination by the trial court that it satisfies the threshold requirements established by Rule 702." *Engilis*, 151 F.4th at 1050. South's testimony never clears that bar.

Ruling now would also save limited trial time. South's testimony would take time from a seven-day bench trial split between the parties, Dkt. 218, to recite documents the Court can read for itself and repackage a dismissed fraud theory. *See Glenn v. B & R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1057 (D. Idaho 2018) (evidence "that meets *Daubert*'s reliability and relevance requirements may still be excluded on Rule 403 grounds"); *cf. United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) (in bench trials, "[f]or logistical and other reasons, pretrial evidentiary motions may be appropriate").

**F. In the Alternative, the Court Should Limit South's Testimony.**

If the Court does not exclude South's testimony entirely, it should preclude him from testifying (1) about what Smith & Wesson management intended, believed, or "knew," which is state-of-mind testimony; (2) that there was a "zero probability" of an earn-out payment, a

conclusion he could not define and his own sources contradict; (3) that Schedule 5 was a forecast of expected revenue, which he assumed without knowing how Smith & Wesson used it; and (4) that Smith & Wesson personnel were negligent or violated AICPA ethics standards, statements he disclaimed as separate opinions and tied to no identified standard. *See Alves*, 2022 U.S. Dist. LEXIS 105246, at *6-14 (excluding some of an expert's opinions while admitting others).

## III. CONCLUSION

Gemtech bears the burden of showing that South's testimony is admissible, and South admitted that his goal is to educate the factfinder on "the intent of management." Dkt. 220-4 (South 100:13-17). For these reasons, Smith & Wesson respectfully requests that the Court exclude South's testimony in its entirety or, alternatively, limit it as explained above.

DATED this 2nd day of November, 2026.

HOLLAND & HART LLP

By *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of November, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

- ktrout@trout-law.com
- ajones@trout-law.com

*Attorneys for Plaintiff*

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

40088799.v2