Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RICK VASQUEZ [DKT. 221]** |

COME NOW Defendants, Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants") and hereby submit this Reply Memorandum in Support of their Motion in Limine to Exclude Testimony of Rick Vasquez (Dkt. 221).

## I. INTRODUCTION

Gemtech offers the testimony of former ATF employee Rick Vasquez solely to rebut Philip Milks, the regulatory attorney whose firm, Orchid Advisors ("Orchid"), assessed Gemtech's compliance with federal firearms regulations before Smith & Wesson acquired its assets. Vasquez offers a single opinion: that ATF would *not* have revoked Gemtech's license. But Milks did not offer an opinion that ATF would revoke the license; he testified to Gemtech's numerous compliance problems. Vasquez's opinion rebuts nothing Milks says, and it does not resolve the questions left for trial under the parties' Asset Purchase Agreement.

Independently, Vasquez identifies no method beyond his own experience, lacks experience connected to the opinion, and reached it without reviewing Gemtech's underlying firearms records or applying ATF's enforcement criteria. Gemtech's opposition to this motion (Dkt. 226) does not engage with these points.[1] Instead, it leans on Vasquez's firearms credentials and argues that he

[1] Smith & Wesson corrects the following citations in its opening memorandum (Dkt. 221-1): the deposition passages cited at pages 12 and 14 (104:10-23 and 43:18-44:8) were not included in the transcript excerpts filed at Dkt. 221-6 but appear in the full transcript Gemtech filed under seal, Dkt. 227, Ex. 4; the quotation at page 5 ("did not have the opportunity to review the operation of [Gemtech]") is from Vasquez's report, Dkt. 221-5 at 5, not his deposition; at page 11, the citations to 100:24–25, 146:14–17, and 146:21–25 should be to 99:24–25, 145:14–17, and 145:22-24, and the intact-firearms point is better supported by Dkt. 227, Ex. 4 (Vasquez 133:17-22), where Vasquez acknowledged "the destroyed firearms still being onsite" as among the report's issues; at pages 12 and 15, the citations to 129:10–15 should be to 128:10–15 and 129:19–130:1; and at page 15, although Vasquez stated, "I call them administrative violations," Dkt. 221-6, Ex. D (Vasquez 143:9-11), he described "administrative" as a "common ATF usage term[]," *id.* (Vasquez 143:16–23), though he identified no regulatory definition, *id.* (Vasquez 108:5–17, 144:1–3). Smith & Wesson regrets these errors, none of which alters the substance of its arguments.

"would only come in" if Smith & Wesson calls Milks. Dkt. 226 at 16. On Gemtech's own framing, then, any Vasquez testimony should be limited to rebutting an opinion Milks actually gives at trial.

Smith & Wesson therefore respectfully requests that the Court exclude Vasquez's testimony in its entirety or, at minimum, grant the alternative relief described herein.

## II. ARGUMENT

### A. Vasquez Contradicts Nothing Milks Says.

Gemtech's principal defense of Vasquez is that his report is "literally a redline" of Milks's report and is therefore "directly contradictory." Dkt. 226 at 15. But marking up another expert's report is not the same as disagreeing with it, and Gemtech never identifies what opinion, methodology, or conclusion the redline supplies. Its rebuttal disclosure does not either; it recites Vasquez's background and states only that he "has authored a report, a copy of which is attached hereto as Exhibit 1." Dkt. 221-4 at 2. That "report" is a copy of Milks's report with Vasquez's commentary interspersed in red text. Vasquez's opinion surfaces only in that red-text commentary and in his deposition, where he described it as a "blanket opinion to cover the report": that Gemtech "would not have lost their license." Dkt. 221-6 (Vasquez 70:9–10, 71:23–72:1).

Gemtech does not identify a single finding in Milks's report that Vasquez disputes, and Vasquez himself acknowledged that "Mr. Milks did not affirmatively assert that Gemini's FFL would have been terminated." Dkt. 221-5 at 5. A rebuttal opinion that the license would not have been revoked answers a prediction Milks has not made. *See generally United States v. Lopez*, No. 2:23-cr-00055-CDS-DJA, 2025 U.S. Dist. LEXIS 63062, at *2 (D. Nev. Apr. 2, 2025) (expert testimony that "does not inform any issue in the case" is "not relevant and therefore not admissible"). Where his report pushes back, it is largely on tone. *See* Dkt. 221-5 at 39 (Vasquez writing that Orchid's commentary "is swayed to imply that ATF would be swooping in"). Disagreeing with tone is not contradicting an opinion.

That is also why Gemtech's argument that Vasquez must be allowed to respond if Milks testifies fails. Dkt. 226 at 15. Milks will testify about the compliance condition Smith & Wesson inherited at acquisition: deficiencies in Gemtech's A&D Books and NFA registrations, its security and asset controls, its firearm markings, and the absence of any functioning compliance program, along with the regulatory risks those conditions created and the reasonableness of Smith & Wesson's response. *See* Dkt. 225, Stidham Decl. Ex. A at 8–16. Vasquez's sole disclosed opinion—that ATF would not have revoked the license, Dkt. 221-5 at 33, 40—does not address that testimony, and Gemtech has not connected his ATF experience in firearms classification and technical support to assessing a manufacturer's compliance program or determining what enforcement action ATF would take, Dkt. 221-6 (Vasquez 22:18–28:7, 31:11–32:2). Unless Milks offers a revocation opinion at trial, there is nothing for Vasquez to answer.

**B. Whether ATF Would Have Revoked Gemtech's License Has No Bearing on the Section 1.6(c) Claim.**

Vasquez's opinion is also irrelevant to the only claim left for trial. Evidence is relevant only if "(1) [it is] probative of the proposition it is offered to prove, and (2) the proposition to be proved [is] one that is *of consequence to the determination of the action*." *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987) (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. Unit A 1981)) (emphasis added); Fed. R. Evid. 401. For expert testimony, the opinion must "logically advance a material aspect" of the proponent's case. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (citation omitted), *overruled in part on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citation omitted).

Section 1.6(c) gives Smith & Wesson "sole discretion with regard to all matters relating to the operation of the Business; provided, that Buyer shall not, directly or indirectly, take any actions in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment hereunder." APA ¶ 1.6(c) (Dkt. 194-14 at 11–12). It also requires Smith & Wesson "to consult with Ronald J. Martinez in advance of any decision made relating to the operation of the Business only if Buyer has knowledge that such decision will negatively impact the Earn-Out Payment." *Id.*

The only claim left for trial asks whether Smith & Wesson made post-closing decisions with the specific purpose of avoiding or reducing the earn-out payment, whether it failed to consult Martinez before a decision it knew would negatively impact the earn-out payment, and whether any breach caused damages. Dkt. 211 at 23-29. Whether in a hypothetical world in which ATF conducted a thorough review it would have revoked Gemtech's license answers none of those questions.

Milks is relevant for a different reason: to the extent Gemtech is permitted to contend that Smith & Wesson's involvement in compliance was a breach, Milks shows that the involvement was objectively well founded and not undertaken in bad faith or to reduce the earn-out. The absence of an opinion that the license would have been revoked does not mean Smith & Wesson lacked a legitimate reason to act; a "no revocation" prediction does not undercut concerns about operational burden, remediation costs, disruption, or lesser enforcement risks.

Because no party offers an expert opinion that ATF would have revoked Gemtech's license, Vasquez's opinion should be excluded as addressing a matter no party has put in issue. *See Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013 U.S. Dist. LEXIS 18811, at *20-21 (D. Ariz. Feb. 11, 2013) (excluding claims-handling expert's opinions where the insurer's claims process was "not in issue" and "[n]o one ha[d] accused Liberty Life of bad faith or

negligence"); *FTC v. DIRECTV, Inc.*, No. 15-cv-01129-HSG, 2017 U.S. Dist. LEXIS 13480, at *9-10 (N.D. Cal. Jan. 31, 2017) (excluding as "legally irrelevant" testimony on "countervailing benefits," which bear only on unfairness claims, where the claims sounded in deception).

**C. Gemtech Has Not Carried Its Rule 702 Burden on Foundation or Application.**

Even if Vasquez's opinion were relevant, Gemtech has not shown it is reliable. As the proponent, Gemtech must show by a preponderance that the opinion rests on sufficient facts and a reliable method. Fed. R. Evid. 702(b)-(d); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049-50 (9th Cir. 2025). Those are admissibility questions for the Court, and Gemtech gets no presumption that the opinion comes in. *See Engilis*, 151 F.4th at 1048-50 (confirming there is "no presumption in favor of admission" and that even "shaky" testimony must satisfy Rule 702's threshold requirements, and noting that the 2023 amendment corrected decisions treating the sufficiency of an expert's basis and the application of his methodology as "questions of weight and not admissibility" (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment)). The question is "whether [Vasquez] had sufficient factual grounds on which to draw conclusions." *Engilis*, 151 F.4th at 1051 (citation omitted). He did not: he identifies no method beyond his experience, considered too little of the record to apply it, and never connects either to his conclusion.

Vasquez's factual basis was the Orchid report, the emails produced with it, and, according to his report, the most recent ATF report of violations; he interviewed no one. Dkt. 221-6 (Vasquez 7:19–8:19, 70:23–71:5); Dkt. 221-5 at 20. His report rests on his "education, training, and experience," Dkt. 221-5 at 40, and a passing reference to having "worked with major manufacturers" that corrected similar errors, *id.* at 20. In his deposition, he also pointed to his reading of ATF's regulation and IOI guides and his participation in inspections. Dkt. 221-6

(Vasquez 109:5–13). But he never explains how that experience supports a prediction of ATF action or how he applied it to Gemtech's violations.

Those gaps go to the heart of his conclusion. He did not review the A&D Books, even though copies were attached to the Orchid materials he received, Dkt. 221-5 at 4: "[t]here was no reason to go through the A&D book." Dkt. 221-6 (Vasquez 99:24-25). Without those records, he could not reliably assess the violations' number, duration, repetition, correction, or operational significance—and so could not reliably label them merely administrative. Nor could he reliably treat them as resolved: he testified that the date errors were "fixed rapidly" "[b]ecause it's not in the report of violations," *id.* (Vasquez 146:10-15), but was "not sure" whether ATF investigators visited Gemtech after the Orchid assessment at all, *id.* (Vasquez 147:5-12).

Nor did he identify or apply the standard his opinion depends on. His report states that revocation requires "flagrant and willful noncompliance," Dkt. 221-5 at 40, yet asked what constitutes "flagrant and willful"—a phrase drawn from the ATF order appended to his report—he answered, "I cannot. I can't." Dkt. 221-6 (Vasquez 107:25-108:2). He could not identify the criteria an investigator uses to assess severity, *id.* (Vasquez 127:4-9), and did not know or consider the criteria in force from 2017 to 2024, *id.* (Vasquez 128:10-15, 130:2-7). And he agreed that a licensee who "doesn't care what the dates and what's the regulations and what the timelines mean" would be acting willfully, *id.* (Vasquez 113:5-10)—a question that, by his own standard, turns on the records he did not review.

Gemtech responds to none of this. To the extent its general position, stated as to its other experts, is that such challenges go to weight, not admissibility, *see* Dkt. 226 at 7–8, 11, 13, that position is foreclosed. These gaps are not matters for cross-examination; they leave no reliable bridge between the record and his conclusion. Because these defects come from Vasquez's own

admissions, excluding his opinion does not require the Court to weigh competing evidence or demand corroboration. An opinion that is "not based in facts or data" fails Rule 702(b). *See Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-00031-AKB, 2024 U.S. Dist. LEXIS 16930, at *15-16 (D. Idaho Jan. 29, 2024). And "[n]othing [in either *Daubert* or the Federal Rules of Evidence] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Engilis*, 151 F.4th at 1048 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

**D. Vasquez's General Qualifications Do Not Extend to Predicting License Revocation.**

Gemtech's remaining defense is Vasquez's credentials. Dkt. 226 at 14. No one disputes that Vasquez knows firearms; his ATF career was in firearms classification, technical support, and training. But his opinion is about something else: what enforcement action ATF would take against a manufacturer based on inspection findings. Gemtech has not connected his actual work to that opinion—to evaluating manufacturer compliance programs, applying the enforcement criteria in effect during the relevant period, assessing the severity and willfulness of recordkeeping violations, or predicting agency action from particular inspection findings. *See Alves v. United States*, No. 3:19-cv-00044-REP, 2022 U.S. Dist. LEXIS 105246, at *8-9 (D. Idaho June 10, 2022) (excluding mechanical engineer's duty-of-care opinions as outside his expertise because "an expert may be generally qualified but may lack qualifications to testify outside his area of expertise" (quoting *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003))).

Vasquez's own testimony reflects that limit. He never served as an IOI, Dkt. 221-6 (Vasquez 31:11-15), and he did not play any role in determining what type of either disciplinary or remedial action would be proposed against a firearms manufacturer by ATF, *id.* (Vasquez 31:21-32:2). He made no effort to determine the potential penalties for the violations in the Orchid report or the probability they would be assessed, and he described assessing the resulting business

impacts as "not my area of expertise." *Id.* (Vasquez 152:2-17). Expertise in a related area does not qualify a witness to offer a specific opinion outside it. *See United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (affirming exclusion of witness with knowledge of the history and purpose of a type of financial obligation who was not qualified to opine on the authenticity of the specific instrument at issue). That is especially so for predictions of how an agency would have exercised its enforcement discretion. Courts have excluded such opinions even from qualified former officials because they "depend on discretionary, multi-factor decision-making" and lack "an articulated, reliable method for forecasting how the Government would have acted on this record." *United States ex rel. Shepherd v. Fluor Corp.*, No. 6:13-cv-02428-JD, 2026 U.S. Dist. LEXIS 8112, at *16-17 (D.S.C. Jan. 14, 2026) (barring former senior Defense Department official from opining that oversight or debarment officials would have imposed penalties or other consequences); *see also AIG Ret. Servs. v. Altus Fin. S.A.*, No. CV 05-1035-JFW (CWx), 2011 U.S. Dist. LEXIS 162996, at *10-15 (C.D. Cal. Sept. 26, 2011) (excluding qualified experts' opinions on what a "prudent insurance commissioner" or "reasonable FRB" would have done where the experts did not explain how their experience led to those conclusions). The point is not that his job titles disqualify him; it is that Gemtech has not shown how any training, consulting, or supervisory experience equips him to predict ATF's response to these specific findings.

**E. A Bench Trial Does Not Relieve the Court of Its Gatekeeping Function.**

Gemtech also asks the Court to defer ruling because this is a bench trial. Dkt. 226 at 5, 15. But Rule 702's gatekeeping requirement applies even when the judge is the factfinder, *see Alves*, 2022 U.S. Dist. LEXIS 105246, at *4-5, and a pretrial ruling can be appropriate in a bench trial "[f]or logistical and other reasons," *cf. United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) (noting that threshold rulings are "generally superfluous" in bench trials but "may be appropriate in some cases"). This Court has excluded expert opinions before a bench trial. *Alves*,

2022 U.S. Dist. LEXIS 105246, at *6-11 (excluding duty-of-care opinions as unqualified, unreliable, and unhelpful).

Good reasons support a ruling now. Trial is set for seven days, split equally between the parties. Dkt. 218. Keeping Vasquez in the case would only spend that limited time on a hypothetical ATF enforcement proceeding the Court does not need to resolve. *See Hathaway v. Idaho Pac. Corp.*, No. 4:15-cv-00086-DCN, 2017 U.S. Dist. LEXIS 202738, at *14-15 (D. Idaho Dec. 8, 2017) (excluding evidence in part due to "the potential need to conduct mini-trials" (internal quotation marks omitted)).

Gemtech responds that, by the same logic, Milks should be excluded under Rule 403. Dkt. 226 at 15. But Milks addresses a live issue: the compliance condition Smith & Wesson inherited, which bears on its reasons for its post-closing decisions. *See* Dkt. 225, Stidham Decl. Ex. A at 15 (opining that "S&W had no option but to take over the compliance function of GT and make the decisions they did with respect to that responsibility"). Vasquez addresses a question no one has raised. Weighing probative value against wasted time, the two witnesses do not come out the same. Fed. R. Evid. 403.

**F. In the Alternative, the Court Should Exclude the Identified Categories of Opinion.**

At a minimum, the Court should bar Vasquez from (1) predicting whether ATF would have revoked Gemtech's license, an opinion he formed without reviewing the A&D Books or applying any enforcement criteria; (2) labeling the documented violations as "administrative" rather than "willful," a distinction he could not tie to any regulatory definition; and (3) testifying about ATF enforcement practice in general, where he could not identify the applicable criteria or those in force from 2017 to 2024. To the extent Vasquez disputes the character, severity, or likely regulatory consequences of the violations, those opinions exceed his demonstrated enforcement expertise and lack a reliable factual foundation.

Independently of Rule 702, the Court should hold Gemtech to its own description of Vasquez as a rebuttal-only witness. Rebuttal testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party," Fed. R. Civ. P. 26(a)(2)(D)(ii), and "cannot be used to advance new arguments or new evidence," *Cleaver*, 2024 U.S. Dist. LEXIS 16930, at *14 (citations omitted). Gemtech designated him solely as a rebuttal expert, Dkt. 221-4 at 2, and says he "would only come in" if Smith & Wesson calls Milks, Dkt. 226 at 15-16. The Court should therefore preclude Vasquez from Gemtech's case-in-chief and confine any testimony to contradicting opinions Milks actually offers at trial. If Milks does not offer an opinion on revocation, no revocation testimony is proper rebuttal.

## III. CONCLUSION

Vasquez's testimony addresses a question this case does not present, rebuts nothing Milks offers, and lacks the foundation and expertise Rule 702 requires. For these reasons, Smith & Wesson respectfully requests that the Court exclude his testimony in its entirety or, alternatively: (1) exclude the three categories of opinion identified above; and (2) preclude Vasquez from testifying in Gemtech's case-in-chief and confine any testimony to contradicting opinions Milks actually offers at trial.

DATED this 2nd day of November, 2026.

HOLLAND & HART LLP

By *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of November, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

- ktrout@trout-law.com
- ajones@trout-law.com

*Attorneys for Plaintiff*

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

40086563_v2