Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-cv-00035-REP<br><br>**REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF MATTHEW J. MURDOCK [Dkt. 223]** |

## TABLE OF CONTENTS

I. ARGUMENT ..... 2

A. MURDOCK'S RESCISSORY REVENUE MODEL IS BASED ON THE WRONG SCENARIO AND LACKS A RELIABLE METHODOLOGY. ..... 2

1. Delaware Law and the Ninth Circuit Define the Same But-For World: Smith & Wesson Owns the Business and Does Not Breach. ..... 2

2. Murdock's Recycled Rescissory Revenue Model Does Not Model Revenue After a Smith & Wesson Acquisition. ..... 3

3. Murdock Fails to Offer a Reliable Methodology, Grounded in Sufficient Facts, to Justify Use of the Rescissory Revenue Model. ..... 4

B. MURDOCK OFFERS NO METHOD CONNECTING ANY PROVEN BREACH TO ANY LOSS. ..... 6

C. MURDOCK'S MARKET-SHARE SCENARIOS ADMIT NO DOWNSIDE, CARRY NO PROBABILITIES, AND REST ON UNTESTED INPUTS FROM GEMTECH'S PRINCIPAL. ..... 7

D. DEFENDANTS CORRECT THEIR OPENING BRIEF, AND THE CORRECTED RECORD SUPPORTS EVERY GROUND FOR EXCLUSION. . 8

E. THE COURT SHOULD NARROW MURDOCK'S TESTIMONY. ..... 10

II. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013) ....................3

*Claar v. Burlington N. R.R. Co.*, 29 F.3d 499 (9th Cir. 1994).................................................8

*Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-00031-AKB, Dkt. 91, 2024 WL 326848, 2024 U.S. Dist. LEXIS 16930 (D. Idaho Jan. 29, 2024) ..................................8, 9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ..................................................................4, 8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .................................................4

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995).................................4, 9

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022) ..........................................8, 9

*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) ............................................. passim

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014), *overruled in part on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc)............9

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................................6, 9

*Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 712-13 (7th Cir. 2005) ..5

*In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, No. 24-5493, ___ F.4th ___, 2026 U.S. App. LEXIS 33297 (9th Cir. Oct. 30, 2026).....................................................5

*Paul v. Deloitte & Touche, LLP*, 974 A.2d 140 (Del. 2009) ...................................................2

*R.I. Off. of the Gen. Treasurer v. Boeing Co.*, 182 F.4th 422 (4th Cir. 2026), *reh'g pet. pending*.............................................................................................................................4

*Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 585 F. Supp. 3d 1326, 1332-33 (M.D. Fla. 2022) ...........................................................................................................................4

*TB Holding Co. v. J&S Siding*, No. 4:22-cv-00307-BLW, Dkt. 206, 2025 U.S. Dist. LEXIS 146520 (D. Idaho July 29, 2025) ......................................................................4, 8

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609 (9th Cir. 2016)................7

*United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018).........................................................10

*United States v. Heller*, 551 F.3d 1108 (9th Cir. 2009).........................................................10

**RULES**

Fed. R. Evid. 702 .......................................................................................................... passim

# I. INTRODUCTION

Gemtech's Opposition confirms the flaws that compel exclusion of its damages expert, Matthew J. Murdock. First, Murdock measured the wrong scenario. Damages for Gemtech's sole remaining claim, breach of contract, are measured by the earn-out payment Gemtech would have received but for the alleged breaches of Section 1.6(c) of the Asset Purchase Agreement ("APA"). Murdock did not model that scenario. He instead recycled the rescissory revenue model he built for Gemtech's fraud claim, which projects how Gemtech would have performed had it never been acquired and continued to operate as a separate business. Nor does he offer any reliable methodology, grounded in sufficient facts, connecting that model to the proper measure of contract damages. Federal Rule of Evidence 702 therefore requires exclusion.

Second, Murdock admits that his model ignores the timing, causation, and impact of the alleged breaches. It produces a single aggregate figure under each of three market-share assumptions, even though each of Gemtech's thirteen alleged breaches occurred at a different time and would have had a different effect. Murdock uses no method to connect any breach to any loss or to separate losses by breach. Rule 702 compels exclusion for this independent reason.

Third, Murdock's market-share scenarios lack a reliable foundation. They assume, without basis, that a never-acquired Gemtech would never have lost market share, assign no probability to uniformly positive outcomes, and rest on untested inputs from Gemtech's principal—including more capacity than Gemtech represents to the Court.

Finally, Gemtech's primary argument in its Opposition is that Smith & Wesson's opening brief relied on hallucinated cases and misstated both the law and the record. Smith & Wesson's opening brief did contain a number of incorrect citations, which are corrected in the Notice of Errata filed concurrently herewith and addressed in Part D below. Smith & Wesson regrets those

errors and does not take them lightly. The corrected record still supports every ground for exclusion, each of which rests on Murdock's own reports and Gemtech's brief.

Murdock's use of a recycled rescissory model to opine on contract damages is not a difference of opinion for cross-examination; it renders his testimony inadmissible. Because Gemtech has not carried its burden, the Court should exclude the testimony before trial or, at a minimum, narrow it as set out in Part E.

# I. ARGUMENT

## A. MURDOCK'S RESCISSORY REVENUE MODEL IS BASED ON THE WRONG SCENARIO AND LACKS A RELIABLE METHODOLOGY.

### 1. Delaware Law and the Ninth Circuit Define the Same But-For World: Smith & Wesson Owns the Business and Does Not Breach.

Delaware law governs the APA. APA § 9.5; *see* Dkt. 223-1 at 5-7. Section 1.6(c) gave Smith & Wesson "sole discretion with regard to all matters relating to the operation of the Business" and imposed no duty on Smith & Wesson to earn revenue from the Gemtech business. Smith & Wesson's discretion was subject to two limits: it could not "take any actions in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment," and it had to "consult with Ronald J. Martinez in advance of any decision" it knew "will negatively impact the Earn-Out Payment." APA § 1.6(c); *see* Dkt. 223-1 at 5–6. Both limits concern the Earn-Out Payment, not revenue generally.

Contract damages place the injured party "in the same place as he would have been if the contract had been performed," and they "should not act as a windfall." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009).

The performed contract here is Smith & Wesson's acquisition of the Gemtech business. The but-for world is therefore Smith & Wesson owning and operating the Gemtech business as part of its larger enterprise, in its sole discretion and with no obligation to prioritize the business

or devote any particular effort to its revenue. That discretion was subject only to the two limits in Section 1.6(c). That is the scenario that matters.

The Ninth Circuit applies the same principle to damages calculations under Rule 702: the model must reflect the relevant scenario absent the breach. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968 (9th Cir. 2013) (damages measured in a hypothetical world in which other things remained the same "but the breach had not occurred").

**2. Murdock's Recycled Rescissory Revenue Model Does Not Model Revenue After a Smith & Wesson Acquisition.**

Murdock based his contract damages opinion on a revenue model he built for Gemtech's fraud claim, one that projects how Gemtech would have performed had it never been acquired. *See* Dkt. 223-4 at 14. In doing so, Murdock changed more than whether the breach occurred. He removed the acquisition itself, and with it Smith & Wesson's ownership, costs, capital priorities, and lawful discretion.

Gemtech argues that the models differ because Murdock's report contains "separate sections" for rescissory and breach damages, with "a model and analysis done specifically for breach of contract." Dkt. 226 at 3, 8. But what matters is what Murdock did, not how he labeled it. The report concedes that the revenue used to calculate contract damages comes from "the analysis presented above"—the rescissory revenue model. Dkt. 223-4 at 18. The arithmetic confirms it: each breach figure equals the scenario's earn-out-period revenue, less $36,000,000, multiplied by 0.15. For Scenario 1, ($43,319,129 − $36,000,000) × 0.15 = $1,097,869. *Id.* Those revenues come from the same scenario schedules that drive the rescissory model. *Id.* at 13, 17–18.

Murdock's report also makes clear that the rescissory model does not depict Smith & Wesson operating the Gemtech business: it calculates "Gemtech's expected profits had S&W never acquired Gemtech." *Id.* at 14. His rebuttal report confirms that the model assumes that, "had

S&W not purchased Gemtech and Gemtech retained control, Gemtech would have focused on building or securing the necessary capacity." Dkt. 223-8 at 20; *see id.* at 6 n.8, 8. He even dismisses as "irrelevant" "[t]he revenue and growth that has been realized by Gemtech under S&W control." *Id.* at 4.

**3. Murdock Fails to Offer a Reliable Methodology, Grounded in Sufficient Facts, to Justify Use of the Rescissory Revenue Model.**

Gemtech must show, more likely than not, that each Rule 702 requirement is met, with "no presumption in favor of admission." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–50 (9th Cir. 2025). Treating "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," as questions of weight is "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

A damages opinion must fit the claim to be tried. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). A model "purporting to serve as evidence of damages . . . must measure only those damages attributable to that theory." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). *Comcast* arose under Rule 23(b)(3), but its logic reaches any damages opinion: a methodology is inconsistent with liability "if it measures damages attributable to theories of liability that are no longer part of a case." *R.I. Off. of the Gen. Treasurer v. Boeing Co.*, 182 F.4th 422, 441 (4th Cir. 2026) (citing *Comcast*, 569 U.S. at 37), *reh'g pet. pending*, No. 25-1492 (4th Cir. filed Sept. 2, 2026). *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 585 F. Supp. 3d 1326, 1332-33 (M.D. Fla. 2022) (excluding expert damages opinion as "unreliable" because expert used "the wrong measure of damages," incorrectly seeking lost profits instead of loss-of-use damages). This District applies the same principle under Rule 702 and excludes opinions on issues no longer in the case. *TB Holding Co. v. J&S Siding*, No. 4:22-cv-00307-BLW, Dkt. 206, 2025 U.S. Dist. LEXIS 146520, at *5 (D. Idaho July 29, 2025). The fraud claim is gone. Murdock built his revenue inputs for it,

and nothing in either report connects them to the world Section 1.6(c) defines. Cross-examination can test a model aimed at the right target; it cannot redirect one aimed at the wrong target. *See Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 712-13 (7th Cir. 2005) (affirming exclusion of expert because damages opinion did not match the one remaining theory of fraud and also included several months of profit that preceded the alleged fraud)

In *In re National Football League's "Sunday Ticket" Antitrust Litigation*, No. 24-5493, ___ F.4th ___, 2026 U.S. App. LEXIS 33297 (9th Cir. Oct. 30, 2026), the Ninth Circuit reversed the exclusion of damages experts, but it reaffirmed the rule Defendants invoke. Experts may help envision a "but-for world" by "reliably applying reliable methods to sufficient facts," and a court "must exclude unfounded or unreliable opinions." *Id.* at *6–7. In *Sunday Ticket*, the experts modeled a world "without the claimed anticompetitive conduct." *Id.* at *6. Here, by contrast, Murdock removed the acquisition. He ignored Smith & Wesson's different cost structure, management authority, capital allocation, manufacturing environment, market share, revenue recognition, and risk profile, and he ignored that Smith & Wesson had sole discretion to run the business, with no obligation to pursue the earn-out, subject only to the narrow limits of Section 1.6(c). *See* Dkt. 223-1 at 8–10.

Gemtech's Opposition identifies no adjustment Murdock made for Smith & Wesson's ownership and does not explain why standalone-Gemtech revenue reliably estimates revenue under Smith & Wesson's lawful operation. *See* Dkt. 226 at 8–11. It simply recites the expectation measure from *Paul* and asserts that Murdock placed Gemtech where it would have been "had Smith and Wesson not purposely pulled any opportunity for the earnout payment." *Id.* at 8.

Likewise, at deposition, Murdock was asked what he did to account for the fact that, under the contract, Gemtech would no longer operate as a standalone business. He answered: "Well, I

assumed — I guess I made the assumption that Smith & Wesson would have been able to operate the company similarly or better." Dkt. 227-1, Murdock Dep. 63:16–21. As his basis, he cited Smith & Wesson's "years of experience within the firearms industry" and its "team and the manufacturing abilities." He then concluded, "So it is an assumption that they would have been able to operate the company at the level it was at before." *Id.* at 63:22–64:4.

Murdock's reports do not provide the requisite bridge, and the assumption he stated at deposition is insufficient. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (opinion evidence "connected to existing data only by the *ipse dixit* of the expert" need not be admitted); *Engilis*, 151 F.4th at 1048–51; Fed. R. Evid. 702 advisory committee's note to 2000 amendment (an expert relying on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Because Gemtech has not carried its burden, the opinion should be excluded.

## B. MURDOCK OFFERS NO METHOD CONNECTING ANY PROVEN BREACH TO ANY LOSS.

Murdock admits that his model does not address when the alleged breaches occurred, what they caused, or what effect they had. Gemtech concedes that he "did not calculate the harm of each individual breach, as that would be impossible." It defends his figure only "when taken as a whole." Dkt. 226 at 9. Murdock testified that "[t]here's nothing I'm saying that this specific act caused this." Dkt. 227, Murdock Dep. 203:16–20.

His revenue model starts on the August 7, 2017 closing date and runs through August 7, 2020. It produces one figure for each of three market-share assumptions: $1,097,869, $2,387,638, and $3,537,982. Dkt. 223-4 at 17–18. Gemtech's thirteen alleged acts occurred at different times and would have had different effects. Dkt. 223-1 at 15. Murdock's figure stays

the same regardless of which acts the Court finds proved. If the Court finds fewer than all thirteen, the model gives it nothing to apply.

Rule 702(d) requires that the opinion "reflects a reliable application of the principles and methods to the facts of the case." Each opinion "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. An expert may assume causation, but the assumption "still had to be 'based on sufficient facts or data.'" *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016)(citing FRE 702).

Murdock's opinion fails three Rule 702 requirements, each of which Gemtech must show is more likely than not satisfied. *Engilis*, 151 F.4th at 1049–50. It fails Rule 702(b) because no facts or data support treating thirteen distinct acts as one aggregate loss; that premise appears only in Gemtech's brief. It fails Rule 702(d) because Murdock applied no method linking any breach to any loss, so his figure exceeds what his basis can reliably support. And it fails Rule 702(a) because a figure that does not change with the liability finding cannot help the Court measure damages for the breaches actually proved. Gemtech's answer that segregation is impossible confirms that Murdock applied no method at all.

### C. MURDOCK'S MARKET-SHARE SCENARIOS ADMIT NO DOWNSIDE, CARRY NO PROBABILITIES, AND REST ON UNTESTED INPUTS FROM GEMTECH'S PRINCIPAL.

Gemtech tells the Court that "Mr. Murdock never assumed capacity beyond what was done in 2016; scenario three does, but not until the year 2020." Dkt. 226 at 10. Murdock's rebuttal says otherwise: his analysis assumed Gemtech would exceed its 2016 capacity in 2020 under Scenarios 1 and 2 and in 2019 under Scenario 3. Dkt. 223-8 at 7. Because the earn-out period ran through August 7, 2020, every scenario assumes above-2016 capacity during the earn-out period, and Scenario 3 does so for more than a year of it. Dkt. 223-4 at 18.

Murdock bases his market-share assumptions on opportunities identified in "discussions with Ron Martinez," including Mr. Martinez's belief about what Cabela's "would have purchased." Dkt. 223-4 at 11 & n.55. The added capacity rests on Mr. Martinez's "active discussions with Alexandria Pro-Fab" and a Pro-Fab letter dated July 17, 2025. Dkt. 223-8 at 7–8 & nn.9, 11. Neither report tests these inputs against any independent source.

Untested inputs from a party's principal are not "sufficient facts or data," Fed. R. Evid. 702(b), and give an expert no "sufficient factual grounds on which to draw conclusions," *Engilis*, 151 F.4th at 1051 (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025–26 (9th Cir. 2022)). This District has excluded a damages expert who adopted a party's loss calculation without independent confirmation. *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-00031-AKB, Dkt. 91, 2024 U.S. Dist. LEXIS 16930, slip op. at 9, 11 (D. Idaho Jan. 29, 2024). Murdock's opinions relying on untested inputs, including the assumed additional capacity, should be excluded.

**D. DEFENDANTS CORRECT THEIR OPENING BRIEF, AND THE CORRECTED RECORD SUPPORTS EVERY GROUND FOR EXCLUSION.**

Gemtech identified errors in Defendants' opening brief, and Defendants found others on review. Defendants take responsibility for those errors. In addition to filing a Notice of Errata (Dkt. 229), Defendants respond below to Gemtech's contentions, including those that are inaccurate. The corrected record independently supports each ground for exclusion, each of which rests on Murdock's written reports and Gemtech's own brief.

a) *TB Holding*. The opening brief gave the correct LEXIS citation but misidentified the defendant and the date. Dkt. 223-1 at 7. The decision is *TB Holding Co. v. J&S Siding*, No. 4:22-cv-00307-BLW, Dkt. 206, 2025 U.S. Dist. LEXIS 146520 (D. Idaho July 29, 2025). It supports the proposition cited: the court excluded a damages witness who had never performed the valuation task at issue and conceded he was not an expert in that field. *Id.* at *6–8.

*b)* *Comcast*. The opening brief paraphrased *Comcast* inside quotation marks. Dkt. 223-1 at 8. The Court actually stated that a "damages case must be consistent with its liability case." 569 U.S. at 35. The brief's second quotation, that a model must "measure only those damages attributable to that theory," is accurate. *Id.*

c) *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Court's reasoning supports the proposition that failing to account for obvious alternative explanations creates an analytical gap. Dkt. 223-1 at 15. That proposition is further supported by the Advisory Committee's note to the 2000 amendment of Rule 702, which cites *Claar*, and the Ninth Circuit applied it in *Engilis*, 151 F.4th at 1053.

d) Accurate quotations. Two challenged quotations are accurate. The *Cleaver* court wrote that the expert was "simply parroting" the party's "method, analysis, and calculations" and "simply adopts and ratifies" the party's "version of the facts." *Cleaver*, slip op. at 9, 11. And *Engilis* requires "sufficient factual grounds on which to draw conclusions." 151 F.4th at 1051 (quoting *Elosu*, 26 F.4th at 1025–26).

e) *Barabin*. The opening brief cited *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), without noting its partial overruling on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). Dkt. 223-1 at 8. That partial overruling is irrelevant to the longstanding principle for which Defendants cited *Barabin*, which originates in *Daubert*: relevant expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

f) The "hypothetical" passage. The words "based on a hypothetical where Gemtech operates without Smith & Wesson," attributed to Murdock at 211:18–212:2 (Dkt. 223-1 at 4), were examining counsel's question, not Murdock's answer. Defendants withdraw the attribution. The underlying point stands, however: Murdock's own report confirms that the rescissory revenue model assumes Gemtech operated as a standalone company that Smith & Wesson never acquired. *See* Dkt. 223-4 at 14.

g) Deposition testimony. Defendants' Notice of Errata (Dkt. 229) provides the correct page citations for Murdock's deposition testimony, and the corrected citations confirm that Defendants did not mischaracterize his testimony. Defendants correct the deposition citations Gemtech states it could not locate: 236:12–15 (Dkt. 223-1 at 15) should instead cite Murdock's reports generally; 205:4–5 (*id.* at 10), 14:12–18 should be 13:14–16 (*id.* at 3); and 64:19–65:4 should be 63:19–21 (*id.* at 4). The quotation "I don't have a scenario in there where the market share is below what they could have done historically" (id. at 5) is from 287:5-7. The rebuttal-report citation for "irrelevant" (*id.* at 11) should read Dkt. 223-8 at 4, not Ex. F at 7. Each ground for exclusion rests independently on Murdock's written reports and Gemtech's brief.

### E. THE COURT SHOULD NARROW MURDOCK'S TESTIMONY.

Gemtech invokes *Flores* for the point that a judge sitting as factfinder has "less need for the gatekeeper to keep the gate." Dkt. 226 at 5 (quoting *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018)). That point bears on when the Court rules, not on the standard it applies, and even in a bench trial, "pretrial evidentiary motions may be appropriate in some cases." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

This is such a case. Each defect appears on the face of Murdock's reports and Gemtech's brief, and a ruling now will define the damages theory for a seven-day trial. If the Court does not exclude Murdock's damages opinions entirely, it should enter five independent limits, in descending order of breadth:

1. **Conceded opinions.** No lost-profits opinions, including the "Net Economic Loss" figures and the DIPM add-on, which Gemtech no longer defends.

2. **Rescissory and standalone revenue.** No rescissory opinion, and no opinion presenting revenue projected for a Gemtech that Smith & Wesson never acquired as the measure of contract damages.

3. **Market share and capacity.** Independently, no Scenario 2 or 3 opinion, and no opinion that depends on above-historical market share or the rebuttal's capacity expansion. *ThermoLife*, 648 F. App'x at 614.

4. **Causation.** No affirmative opinion that Defendants caused any revenue shortfall or the non-payment of the earn-out. Murdock "did not calculate the harm of each individual breach."

5. **Arithmetic only.** Any earn-out testimony is limited to applying the APA § 1.6 formula—$0.15 per dollar of revenue above $36,000,000, capped at $17,100,000—to revenue the Court finds from admissible evidence.

## II. CONCLUSION

Based on the foregoing, the Court should grant the motion and exclude Murdock's damages opinions or, at a minimum, enter the limits set out in Part E.

DATED this 2nd day of November, 2026.

HOLLAND & HART LLP

By */s/ Erik F. Stidham*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of November, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
ktrout@trout-law.com
ajones@trout-law.com
Attorneys for Plaintiff

*<u>/s/ Erik F. Stidham</u>*
Erik F. Stidham
HOLLAND & HART LLP

40086974.v5