Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE ALEXANDRIA PRO-FAB EVIDENCE** |

COME NOW Defendants Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants") and hereby submit this Memorandum in Support of Motion in Limine to Exclude the Alexandria Pro-Fab Evidence.

## I. INTRODUCTION

At trial, Gemini Technologies, Incorporated ("Gemtech") must prove that Smith & Wesson breached the Earn-Out Provision of the Asset Purchase Agreement, either by taking bad-

faith action with the specific purpose of avoiding or reducing the Earn-Out Payment or by failing to consult Ron Martinez, Gemtech's former CEO, before a decision Smith & Wesson knew would negatively impact that payment. Gemtech must also prove that the alleged breach caused Gemtech-brand revenue to miss the $36 million threshold it otherwise would have exceeded.

Gemtech's damages theory assumes a large increase in suppressor production after closing, at volumes well above anything Gemtech produced before closing. Gemtech identifies Alexandria Pro-Fab Co., Inc. ("Pro-Fab"), a Minnesota machine shop, as one source of that added production. But Gemtech has not identified any Pro-Fab witness for trial, and it has produced no supply agreement, volume commitment, or other contemporaneous document showing what Pro-Fab would have made for Gemtech, when, or in what quantities.

Instead, Gemtech's proof of what Pro-Fab could have produced, and whether Pro-Fab was willing to do so, comes from two sources. The first is an unsworn 2025 letter addressed "To Whom It May Concern" and signed by Pro-Fab's Chief Operating Officer, Greg Ellingson, eight years after the events it describes (the "Pro-Fab Letter"). It states in general terms that Pro-Fab was "willing and fully capable" of ramping up to meet Gemtech's workload. The second is testimony from Gemtech witnesses describing what they believe Pro-Fab could have produced and repeating statements they attribute to Pro-Fab personnel. Gemtech's damages expert, Matthew Murdock, relies on both.

Neither source can prove Pro-Fab's capacity or willingness. Offered for that purpose, the Pro-Fab Letter and the statements Gemtech's witnesses attribute to Pro-Fab personnel are hearsay, and Rules 801 and 802 bar them. Gemtech's own witnesses cannot fill the gap with their own estimates, because Rules 602 and 701 require personal knowledge and do not permit speculation about a nonparty's operations or commitments. And the same assertions do not

become substantive evidence by passing through Gemtech's expert. Rule 703 does not allow an expert to serve as a conduit for otherwise inadmissible assertions.

Smith & Wesson therefore requests an order excluding the Pro-Fab Letter, excluding Pro-Fab hearsay and lay testimony offered to prove that Pro-Fab had the capacity or willingness to absorb the production growth Gemtech's damages theory assumes, and precluding Murdock from disclosing those assertions as substantive evidence.

## II. BACKGROUND

After summary judgment, Gemtech's only remaining claim is breach of the Earn-Out Provision in the Asset Purchase Agreement ("APA"). Dkt. 211 at 29, 37–38. The earn-out is based on Gemtech-brand gross revenue during the thirty-six months after the August 7, 2017 closing. APA §§ 1.6(a)–(b) (Dkt. 194-14); Dkt. 211 at 6. Smith & Wesson would owe an earn-out payment only if that revenue exceeded $36 million, with total payments capped at $17.1 million. APA §§ 1.6(a)–(b). Gemtech alleges that Smith & Wesson's actual sales revenue during the earn-out period was approximately $7.2 million. Dkt. 213 ¶ 151.

The APA gave Smith & Wesson "sole discretion with regard to all matters relating to the operation of the Business," subject to two limits: it could not take actions "in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment," and it had to consult Martinez before a decision "only if [it] has knowledge that such decision will negatively impact the Earn-Out Payment." APA § 1.6(c). The APA also states that "there is no assurance that the Company will receive any Earn-Out Payment." *Id.*

Gemtech's damages theory assumes suppressor sales well above Gemtech's historical output. Murdock's revenue projections come from a model of "Gemtech's expected profits had S&W never acquired Gemtech." Dkt. 223-4 (Murdock Rpt.) at 14; *see also id.* at 18 (earn-out

model based on "the expected earn-out had the alleged breach not occurred"). In 2016, its highest-revenue year for suppressors since 2010, Gemtech sold 18,523 suppressors using roughly eight contract manufacturers. Dkt. 225, Ex. E (Pickett Rpt.) at 24; Dkt. 227, Ex. 1 (Murdock Dep. 97:3–11). Smith & Wesson's expert notes that Murdock's projections imply unit sales well above that level and that Murdock "has not disclosed how such a capacity increase could be achieved other than the possibility of using Alexandria Pro-Fab." Dkt. 225, Ex. E (Pickett Rpt.) at 24–25. Murdock's rebuttal states that his analysis "did not assume Gemtech would exceed their 2016 capacity until 2020 under Scenario 1 and 2 and 2019 under Scenario 3." Dkt. 223-8 (Murdock Rebuttal) at 7. Because the earn-out period ran through August 7, 2020, each scenario assumes above-2016 production during the earn-out period. *See* Dkt. 233 at 11. Gemtech's witness list likewise describes Murdock's testimony as including that Gemtech "was expanding production with Alexandria Pro-Fab." Dkt. 235 at 9.

Gemtech has not listed any Pro-Fab employee as a trial witness. Dkt. 235. Its Pro-Fab evidence comes from Gemtech personnel who never worked there and offer conflicting descriptions of Pro-Fab's size. Martinez testified that Pro-Fab "had 100 CNC machines" and "had the capabilities, without a question." Dkt. 227, Ex. 3 (Martinez Dep. 137:13–19, 138:2–11); *see* Stidham Decl., Ex. 1 (GT 30(b)(6) Dep. 62–63). Former Gemtech employee Jacob Kunsky recalled "[l]ike, 250 machines," did not know Pro-Fab's suppressor volume, and recalled Pro-Fab making subcomponents for Gemtech, not full assemblies. Stidham Decl., Ex. 2 (Kunsky Dep. 144:20–145:2, 146:4–7, 147:2–6).

In his June 2024 report, Murdock did not quantify Pro-Fab's capacity. He stated only that "[h]ad Gemtech worked with Alexandria Pro-Fab, it would have significantly increased its production capacity." Dkt. 223-4 (Murdock Rpt.) at 10 & nn.47–48. After Pickett's report,

Murdock served a rebuttal report on July 22, 2025, that relies on a letter dated July 17, 2025. Dkt. 223-8 (Murdock Rebuttal) at 7–8 & nn.9, 11.

The July 17, 2025 letter is signed by Pro-Fab's Chief Operating Officer, Greg Ellingson, and addressed "To Whom It May Concern." Stidham Decl., Ex. 3. It states, in general terms, that Pro-Fab was "willing and fully capable" of ramping up to meet Gemtech's workload. *Id.* The letter is unsworn and does not identify any time period, product, volume, price, or basis for its statements. *Id.* The letter also does not state whether Ellingson worked with Gemtech in 2017, *id.*, and no one deposed him. Gemtech's working contact at Pro-Fab was its operations manager, Dave Dahl. Stidham Decl., Ex. 2 (Kunsky Dep. 137:21–138:5). Gemtech has listed the letter as a trial exhibit. Dkt. 236 at 19.

At deposition, Murdock testified that he did no independent work regarding Pro-Fab's capacity and relied on "the letter they sent." Dkt. 227, Ex. 1 (Murdock Dep. 97:19–98:1). Asked whether Pro-Fab had capacity in 2017, he answered: "That's what I inferred from the letter." *Id.* 116:2–9. He testified that his only other basis came from "discussions with Mr. Martinez." *Id.* 117:5–6, 119:9–12. Asked whether Pro-Fab had ever manufactured anything for Gemtech "on any scale," he answered that he knew of "test runs." *Id.* 120:22–121:1. He did not have the letter when he served his original report and does not know who requested it. *Id.* 130:18–131:9. He could not recall any 2017 document in which Pro-Fab committed to be Gemtech's primary manufacturer. *Id.* 133:4–10.

## III. LEGAL STANDARD

The Court "must decide any preliminary question about whether . . . evidence is admissible," Fed. R. Evid. 104(a), and may do so before trial, *see* Fed. R. Evid. 103(b); Fed. R. Civ. P. 16(c)(2)(C). A motion in limine is "a procedural mechanism to limit in advance

testimony or evidence in a particular area," *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009), and a "useful tool[] to resolve issues which would otherwise clutter up the trial," *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Even in a bench trial, such motions "may be appropriate" for "logistical and other reasons," *Heller*, 551 F.3d at 1112, and a ruling here will set the scope of deposition designations and live testimony. *See Alves v. United States*, No. 3:19-cv-00044-REP, 2022 U.S. Dist. LEXIS 105246, at *4–11 (D. Idaho June 10, 2022) (excluding expert testimony before bench trial).

## IV. ARGUMENT

### A. Rules 801 and 802 Bar the Pro-Fab Letter and Other Pro-Fab Statements Offered to Prove Capacity or Willingness.

Offered to show what Pro-Fab could have produced for Gemtech, and that Pro-Fab was willing to ramp up to support the production increase Gemtech's damages theory assumes, the Pro-Fab Letter and other statements attributed to Pro-Fab personnel matter only if they are true. That makes them hearsay. Fed. R. Evid. 801(c). Rule 802 bars them unless an exception applies. Fed. R. Evid. 802.

The Pro-Fab Letter is relevant, if at all, only for its truth. Pro-Fab's capacity has no bearing on whether Smith & Wesson breached Section 1.6(c). That section gave Smith & Wesson "sole discretion" to operate the Business, imposed no efforts obligation, and limited that discretion only by prohibiting bad-faith actions with the specific purpose of avoiding or reducing the Earn-Out Payment and by requiring consultation before a decision Smith & Wesson knew "will negatively impact the Earn-Out Payment." APA § 1.6(c). The letter's only possible use is on causation and damages. Murdock relies on it to support his assumption that Gemtech would have produced more suppressors than it ever had, beginning in 2019 or 2020, and so would have

earned more Gemtech-brand revenue during the earn-out period. Dkt. 223-8 (Murdock Rebuttal) at 7–8 & nn.9, 11. That use depends entirely on the letter's assertions being true, which is what makes it hearsay.

The business-records exception does not apply. Rule 803(6) requires a record made at or near the time by someone with knowledge, kept in the course of a regularly conducted activity as a regular practice, and shown by a custodian, another qualified witness, or a certification. Fed. R. Evid. 803(6)(A)–(D). It also does not apply when the circumstances show a lack of trustworthiness. Fed. R. Evid. 803(6)(E). The Pro-Fab Letter was written in 2025 about events in 2017, is addressed "To Whom It May Concern," and was prepared during this litigation, five days before Murdock served his rebuttal report. Nothing suggests Pro-Fab prepares such letters as part of its regular business recordkeeping, and Gemtech has offered no Pro-Fab custodian, qualified witness, or certification to lay the foundation. A letter written eight years after the fact for use in litigation lacks the trustworthiness the exception requires. "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (quoting *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981)).

Rule 807 does not save the letter either. Rule 807 requires both "sufficient guarantees of trustworthiness" and a showing that the statement is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). The Pro-Fab Letter satisfies neither requirement. The same circumstances that defeat Rule 803(6) defeat trustworthiness here. And Gemtech could have obtained more probative evidence through reasonable efforts by deposing Ellingson or calling him as a trial witness, but it did neither. Dkt. 235. Rule 807 also requires written notice before trial, which

Gemtech has not provided. Fed. R. Evid. 807(b); *see United States v. Orm Hieng*, 679 F.3d 1131, 1142 (9th Cir. 2012) (rejecting Rule 807 argument absent notice).

The same analysis applies to other out-of-court statements attributed to Pro-Fab personnel about Pro-Fab's capacity or willingness to expand. Martinez, for example, testified that Pro-Fab "said, yes, they were capable of doing what we needed to do." Dkt. 227, Ex. 3 (Martinez Dep. 138:17–20). When offered to prove what Pro-Fab could or would have done, statements like that are hearsay. Fed. R. Evid. 801(c), 802. Relabeling them as evidence of Pro-Fab's "interest" does not avoid the hearsay rule when the statements matter only if true. *See United States v. Lloyd*, 807 F.3d 1128, 1162 (9th Cir. 2015). And even if a statement cleared the hearsay bar, it would still require a proper foundation, including personal knowledge. *See Collier v. Turner Indus. Grp., L.L.C.*, 797 F. Supp. 2d 1029, 1041 (D. Idaho 2011). The Pro-Fab Letter does not say that Ellingson had any involvement with Gemtech in 2017.

The Court should exclude the Pro-Fab Letter and preclude Gemtech from offering it, or any other statements attributed to Pro-Fab personnel, to prove that Pro-Fab had the capacity or willingness to absorb the production growth Gemtech's damages theory assumes.

### B. Rules 602 and 701 Bar Lay Testimony About What Pro-Fab Could or Would Have Produced for Gemtech.

Gemtech has not listed any Pro-Fab witness. Its evidence of what Pro-Fab could have produced for Gemtech, and what Pro-Fab was willing to commit, comes instead from Gemtech witnesses. None of them worked at Pro-Fab, and none has shown personal knowledge of what Pro-Fab could or would have committed to Gemtech during the earn-out period.

Rule 602 requires personal knowledge. Fed. R. Evid. 602. Rule 701 limits lay opinion to opinion "rationally based on the witness's perception" and "not based on scientific, technical, or

other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a), (c). Lay opinion must be "predicated upon concrete facts within [the witness's] own observation and recollection." *United States v. Lopez*, 762 F.3d 852, 863–65 (9th Cir. 2014) (internal quotation marks omitted). It cannot rest on speculation, *see Seyb v. Members for the Idaho Bd. of Med.*, No. 1:24-cv-00244-BLW, 2026 U.S. Dist. LEXIS 123124, at *6–7 (D. Idaho June 2, 2026), or on information from others "well beyond [the witness's] own personal experience," *Lloyd*, 807 F.3d at 1155.

Rules 602 and 701 therefore bar lay testimony that Pro-Fab could or would have absorbed the production increase Gemtech's damages theory assumes. Martinez testified that Pro-Fab "had 100 CNC machines" and "had the capabilities, without a question." Dkt. 227, Ex. 3 (Martinez Dep. 137:13–19, 138:2–11). Former Gemtech employee Jacob Kunsky recalled "[l]ike, 250 machines," did not know Pro-Fab's suppressor volume, and recalled Pro-Fab making subcomponents for Gemtech, not full assemblies. Stidham Decl., Ex. 2 (Kunsky Dep. 144:20–145:2, 146:4–7, 147:2–6). The two witnesses also disagree about Pro-Fab's size. Kunsky testified that every machine he saw on a tour "had a person or two" and that he believed Pro-Fab could take on new work based on "[l]ooking at their job schedule and using them." *Id.* (Kunsky Dep. 145:8–14, 146:8–20). He also reasoned that because Pro-Fab made "like, 10,000 bulk carriers a month" and Gemtech's parts were "substantially easier," "the same machine could run it." *Id.* 145:18–146:3. But that was his only visit to Pro-Fab for Gemtech, *id.* 149:13–15, and he could not say when it occurred, other than that it was "probably" before the acquisition, *id.* 148:3–13, 150:7–12. He also did not know whether anyone at Gemtech had entered into a contract with Pro-Fab. *Id.* 149:6–12. A single undated tour of a busy shop, a look at its job schedule, and a comparison to parts made for other customers do not give a witness personal

knowledge of what the supplier could have committed to one customer from 2017 through 2020, much less at the volumes Gemtech's damages theory assumes.

Gemtech's past work with Pro-Fab does not change that. Kunsky recalled that Pro-Fab's work for Gemtech was "all sub-assemblies," with "[n]o assemblies, that I know of." Stidham Decl., Ex. 2 (Kunsky Dep. 138:20–139:3, 147:2–6). His view that Pro-Fab was "capable of making anything we made and quickly," *id.* 139:1–2, describes the kinds of parts Pro-Fab could machine, not the volume it would have committed to Gemtech during the earn-out period. And to the extent Martinez would draw on industry experience to estimate how far a contract manufacturer could scale production, that is specialized knowledge within Rule 702 and is not admissible as lay opinion. Fed. R. Evid. 701(c); *Seyb*, 2026 U.S. Dist. LEXIS 123124, at *7–8. Gemtech disclosed no non-retained expert opinions. *See* Dkt. 222.

The Court should preclude lay testimony offered to prove what Pro-Fab could have produced for Gemtech or what Pro-Fab was willing to commit.

### C. Rule 703 Does Not Permit Murdock to Present Pro-Fab Assertions as Substantive Evidence.

Gemtech cannot use expert testimony to do what it cannot do through the Pro-Fab Letter or lay witnesses: prove, as a fact, what Pro-Fab could have produced or would have committed. Murdock relies on the Pro-Fab Letter and on Martinez's statements about Pro-Fab. Dkt. 227, Ex. 1 (Murdock Dep. 97:19–98:1, 116:2–9, 117:5–6, 119:9–12); Dkt. 223-8 (Murdock Rebuttal) at 7–8 & nn.9, 11. Gemtech has also listed Murdock's reports as trial exhibits. Dkt. 236 at 19 (Exs. 211, 213, 214).

Rule 703 allows an expert to consider certain inadmissible material in forming an opinion, but it does not admit that material for its truth. *Paddack*, 745 F.2d at 1261–62 (Rule 703

"does not allow the admission of the reports to establish the truth of what they assert"). The rule permits disclosure of otherwise inadmissible facts or data only where their probative value in helping the factfinder evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. That limitation prevents a party from using an expert as a conduit to place hearsay before the Court as proof of what it asserts. *See United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997) (otherwise inadmissible evidence "cannot be properly admitted simply by attachment to an appraiser's report"); *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-00031-AKB, 2024 U.S. Dist. LEXIS 16930, at *13 (D. Idaho Jan. 29, 2024) (an expert "may not simply act as a conduit to parrot a party's position on an issue").

Because the Pro-Fab Letter and Martinez's statements about Pro-Fab are not admissible to prove Pro-Fab's capacity or willingness, Gemtech cannot present those same assertions through Murdock as substantive evidence. The Court should preclude Murdock from disclosing the contents of the Pro-Fab Letter, or Martinez's statements about Pro-Fab's capacity or willingness, as proof of what Pro-Fab could or would have done. With those assertions limited to explaining the basis for his opinion, Murdock's assumption that Gemtech could have exceeded its 2016 production during the earn-out period rests on no admissible evidence of Pro-Fab's capacity. That provides an additional basis to exclude his revenue opinions. *See* Dkt. 223-1.

## V. CONCLUSION

Smith & Wesson respectfully requests an order in limine providing that, at trial and in any deposition testimony offered at trial:

1. The July 17, 2025 letter signed by Pro-Fab's Chief Operating Officer, Greg Ellingson, is excluded and may not be offered or relied upon to prove the truth of any statement in it;

2. Gemtech may not offer testimony or documents repeating other statements attributed to Pro-Fab personnel about Pro-Fab's capacity or willingness to expand, when offered to prove the truth of those statements;

3. Gemtech may not offer lay testimony or opinion that Pro-Fab had the capacity or willingness to absorb Gemtech's claimed production increase, including testimony about the volume Pro-Fab could have produced for Gemtech; and

4. Murdock's testimony and reports may not disclose the contents of the Pro-Fab Letter, or Martinez's statements about Pro-Fab's capacity or willingness, as substantive evidence of what Pro-Fab could or would have done.

DATED this 23rd day of November, 2026.

HOLLAND & HART LLP

By *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of November, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

- ktrout@trout-law.com
- ajones@trout-law.com

*Attorneys for Plaintiff*

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

37182606_v3