IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GEMINI TECHNOLOGIES, )
INCORPORATED, an Idaho ) Case No. 1:18-CV-00035-CWD
corporation, )
Plaintiff, )
vs. )
SMITH & WESSON, CORP., a )
Delaware corporation; and )
AMERICAN OUTDOOR BRANDS )
CORPORATION, a Massachusetts )
corporation, )
Defendants. )
________________________________)

VIDEOTAPED 30(b)(6) DEPOSITION OF GEMINI TECHNOLOGIES,

TESTIMONY OF RONALD JOHN MARTINEZ

TAKEN MAY 28, 2024

REPORTED BY:

ANDREA L. CHECK, CSR No. 748, RPR, CRR

Notary Public



Exhibit 1

and affiliations for the record, beginning with the noticing attorney.

MR. STIDHAM: Erik Stidham of Holland & Hart on behalf of the defendants.

MR. McCRANEY: Zach McCraney of Holland & Hart on behalf of the defendants.

MR. TROUT: Kim Trout of Trout Law on behalf of the plaintiff.

VIDEOGRAPHER: Thank you. Will the court reporter please swear in the witness and then counsel may proceed.

COURT REPORTER: Okay. Will you raise your right hand, please.

THE WITNESS: Yes.

RONALD JOHN MARTINEZ,

first duly sworn to tell the truth relating to said cause, testified as follows:

EXAMINATION

QUESTIONS BY MR. STIDHAM:

Q. Good morning, Mr. Martinez.
A. Good morning.
Q. My name is Erik Stidham, and I represent the defendants in this case.



Mr. Martinez, would you state your full name for the record.
A. Ronald J. Martinez, or John is the middle name.
Q. And what was the year of your birth, Mr. Martinez?
A. 1966.
Q. Thank you. And where do you currently reside?
A. In Eagle, Idaho.
Q. Mr. Martinez, have you ever had your deposition taken before?
A. Once.
Q. And can you give me just the general context of that?
A. It was just general -- it was a long time ago, ten years ago.
Q. What did it relate to?
A. It was a discussion within the company, so...
Q. So you had a -- was there a lawsuit involved?
A. Yes.
Q. And were you a party to that lawsuit?
A. Yes. I would guess I was, yes.
Q. Okay. Were you a plaintiff or a defendant?
A. Plaintiff.
Q. What was the lawsuit about?



A. Discussion of employment.
Q. When you say "discussion," did you -- just so I'm clear, as the plaintiff were you asserting legal claims against your employer?
A. Yes, sir.
Q. And which employer was that?
A. It was HSBC.
Q. And what was the nature of your allegations?
A. I had left the company, and they owed some money.
Q. What did they owe money for?

MR. TROUT: I'm going to object to the line of questioning. It's far outside of the 30(b)(6) notice for which Mr. Martinez is appearing.

MR. STIDHAM: Mr. Trout, that's fair. I was just trying to get some background. But I would ask, Mr. Trout, if you'd just object to form in the future.

Q. (BY MR. STIDHAM) But we'll get some more background on that when we take your individual deposition. Okay?

But, anyway, you've had your deposition taken at least once; is that fair?
A. Yes, sir.
Q. Okay. Did you have a chance to talk with your attorneys regarding deposition procedures prior to this



deposition here today?
A. Yes.
Q. And did you meet with your attorneys to prepare for this deposition?
A. Yes.
Q. And I don't want to ask about the substance of those conversations. Okay? So I'm not asking that.

But who did you meet with to prepare for your deposition here today?
A. My attorneys.
Q. And who is that, specifically?
A. Kim Trout and Steve.
Q. And how long did you meet with them to prepare for your deposition?
A. A few hours. I don't recall the exact amount of time.
Q. No, an estimate is fine, sir; that's all I'm looking for.
A. A few hours.
Q. Okay. And when did that take place?
A. Last week.
Q. And did you do anything else to prepare for your deposition here today?
A. Yeah. I read the second amended complaint, looked that over, looked over the notes here that you





**Exhibit 1**

back orders of a magnitude of $8 million in 2016?
A. Can you repeat the first part of that?
Q. Sure. What was the reason that GT was unable to fulfill about $8 million worth of orders in 2016 such that they had $8 million in back orders?
MR. TROUT: Object to the form.
THE WITNESS: Waiting for our manufacturers to fulfill those orders for us.
Q. (BY MR. STIDHAM) So there was a manufacturing constraint that caused the back orders?
MR. TROUT: Object to the form.
THE WITNESS: Yes.
Q. (BY MR. STIDHAM) So what were the plans from 2017 to 2018 relating to coming up with sufficient manufacturing capacity to fulfill $85 million worth of orders in 2018?
MR. TROUT: Object to the form.
THE WITNESS: We looked at a variety of different manufacturers, and Alexandria Pro-Fab was one that was 100 CNC machines and was the manufacturer Polaris.
Q. (BY MR. STIDHAM) Did GT ever engage with that manufacturer?
A. Yes.
Q. Is that the manufacturer in Minnesota?



A. Yes, sir.
Q. In 2017, had GT -- excuse me -- in 2016 had GT engaged with Polaris?
I misspoke. The name of the manufacturer -- what was the name of the manufacturer again, sir, that was in Minnesota?
A. Alexandria Pro-Fab.
Q. Pro-Fab. In 2016 had GT engaged with Pro-Fab?
A. Not in 2016.
Q. Looking at the 2018 projections for $85 million, what percentage of those -- what percentage of that $85 million is anticipated to be international sales?
A. I don't know what the exact percentage was.
Q. Who would know?
A. We're talking 2017. I don't know the exact percentage, but we had an idea of the projects and the orders.
Q. And what were the projects?
A. Off the top of my head, they were in the BEC presentation.
Q. So the -- and I know there's a document that was a PowerPoint presentation that was made in August of 2017 to the Business Ethics Committee.
Is that what you're referring to as "they were



in the BEC," the opportunities, the international opportunities?
A. Yes. And I didn't know about the BEC until after I sold Gemtech, which I would never have sold Gemtech had I known about it.
Q. So had you known about the BEC, you never would have sold Gemtech?
A. Correct.
Q. And we'll get to some aspects of that here in your complaint. But since you've brought that up, what is it about the BEC that had you known about it you never would have sold Gemtech?
A. The constraints.
Q. When you say "constraints," what do you mean by "constraints"?
A. They pretty much stopped most of our international sales that we were working on.
Q. Okay. And do you have any basis to contend that the BEC required levels of compliance that were somehow inappropriate?
MR. TROUT: Object to the form.
THE WITNESS: Repeat that question again --
MR. STIDHAM: Sure.
THE WITNESS: -- so I can understand what you're saying.



Q. (BY MR. STIDHAM) Are you contending that the BEC required levels of compliance that were somehow inappropriate?
MR. TROUT: Object to the form.
THE WITNESS: No, I can't answer that, because we -- our compliance with international dealt with international, the DSP-83 and the process that we were using for years. So what they were doing was different than what the regulation for the U.S. government was.
Q. (BY MR. STIDHAM) What was it that they were doing differently than the U.S. regulations, the BEC?
A. The committee looked at every --
MR. TROUT: I'm going to object to the form. You can answer.
THE WITNESS: Repeat the question again, please.
Q. (BY MR. STIDHAM) What was it that the BEC was doing differently than what you believe was required by the U.S. government?
MR. TROUT: Object to the form.
THE WITNESS: At that time, they pretty much stopped what we were working on overseas.
Q. (BY MR. STIDHAM) And my question was different than that, sir. It is: What was it that you contend that the BEC was requiring in 2017 with regard





**Exhibit 1**

REPORTER'S CERTIFICATE

I, ANDREA L. CHECK, CSR No. 748, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony and all objections made were recorded stenographically by me and transcribed by me or under my direction;

That the foregoing is a true and correct record of all testimony given, to the best of my ability;

I further certify that I am not a relative or employee of any attorney or party, nor am I financially interested in the action.

IN WITNESS WHEREOF, I set my hand and seal this 6th day of June, 2024.

Andrea Check

ANDREA L. CHECK, CSR No. 748, RPR, CRR
Notary Public
1109 West Main Street, Suite 220
Boise, Idaho 83702

My Commission expires July 20, 2028.



Kim J. Trout
ktrout@trout-law.com

June 7, 2024

RE: Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
5/28/2024, Ronald John Martinez 30(b)(6) (#6706852)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at Calendar-Idaho@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions



Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
Ronald John Martinez 30(b)(6) (#6706852)

E R R A T A S H E E T

PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________

________________________________ _______________
Ronald John Martinez 30(b)(6) Date



Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
Ronald John Martinez 30(b)(6) (#6706852)

ACKNOWLEDGEMENT OF DEPONENT

I, Ronald John Martinez 30(b)(6), do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________
Ronald John Martinez 30(b)(6) Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS
______ DAY OF ________________, 20___.

__________________________
NOTARY PUBLIC