Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,<br><br>Defendants. | Case No. 1:18-CV-00035-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE SPECULATIVE BIG-BOX RETAIL EVIDENCE** |

COME NOW Defendants Smith & Wesson Sales Company and Smith & Wesson Brands, Inc. (collectively "Smith & Wesson" or "Defendants") and hereby submit this Memorandum in Support of their Motion in Limine to Exclude Speculative Big-Box Retail Evidence.

## I. INTRODUCTION

At trial, Gemini Technologies, Incorporated ("Gemtech") must prove that Smith & Wesson breached the Earn-Out Provision of the Asset Purchase Agreement, either by acting in bad faith with the specific purpose of avoiding or reducing the Earn-Out Payment or by failing to consult Ron Martinez, Gemtech's former CEO, before a decision it knew would negatively impact that payment. Gemtech must also prove that the alleged breach caused Gemtech-brand revenue to fall short of the $36 million threshold it otherwise would have exceeded.

Gemtech's causation-and-damages theory relies on a finding that national "big-box" retailers—principally Cabela's—would have purchased substantial quantities of Gemtech suppressors and rolled them out across dozens of stores, even though those sales never occurred. But Gemtech has identified no witness from any of the retailers that allegedly would have made those purchases, and it has produced no purchase order, volume commitment, or other retail agreement establishing the SKU counts, store counts, rollout timing, or order quantities its damages theory assumes. Instead, Gemtech's proof reduces to (i) Martinez's predictions about what nonparty retailers would have done, (ii) out-of-court statements Martinez attributes to retail personnel, (iii) references to an "executed" Cabela's agreement that has never been produced, and (iv) an expert report that adopts Martinez's account.

The Federal Rules of Evidence do not permit that proof. First, Rules 602 and 701 bar lay testimony speculating about purchasing and rollout decisions made by companies Martinez did not control and of which he lacks personal knowledge. Second, Rules 801 and 802 bar buyer statements, whether repeated by Martinez or embedded in documents, when offered to prove retailer intent, expected purchases, or rollout plans. Third, Rule 1002 bars testimony about the contents or terms of any purported "executed" Cabela's agreement that has not been produced,

and the onboarding documents that were produced cannot be recast through testimony as a purchase commitment. Fourth, Rule 703 does not allow Gemtech's damages expert to serve as a conduit for placing Martinez's big-box account before the Court as substantive evidence of what retailers would have bought.

Accordingly, Smith & Wesson requests an order excluding evidence offered to prove what any big-box retailer would have purchased or implemented (including volume, SKU count, store count, revenue, or rollout timing) and prohibiting any characterization of vendor-onboarding communications as a retail purchase commitment or pilot-program agreement.

## II. BACKGROUND

After summary judgment, Gemtech's only remaining claim is that Smith & Wesson breached the Earn-Out Provision of the Asset Purchase Agreement ("APA"). Dkt. 211 at 29, 37–38. The earn-out depended on Gemtech-brand gross revenue during the thirty-six months after closing. APA §§ 1.6(a)–(b) (Dkt. 194-14). Smith & Wesson would owe an earn-out payment only if that revenue exceeded $36 million, and payments were capped at $17.1 million. *Id.* Gemtech alleges that AOB's and Smith & Wesson's sales revenue from the Gemtech business during the earn-out period was approximately $7.2 million, far below the $36 million threshold. Dkt. 213 ¶ 151.

The APA gave Smith & Wesson "sole discretion with regard to all matters relating to the operation of the Business," subject to two limits: it could not take actions "in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment," and it had to consult Martinez before a decision "only if [it] has knowledge that such decision will negatively impact the Earn-Out Payment." APA § 1.6(c). Gemtech contends that, absent the alleged breach,

Gemtech-brand revenue would have been higher, including through sales to national "big-box" sporting-goods retailers—particularly Cabela's.

Before the acquisition, Gemtech sold suppressors primarily through independent dealers and distributors. Murdock Rpt. (Dkt. 223-4) at 10. Before closing, Martinez pursued potential placement with national chains such as Cabela's, Gander Mountain, and Scheels. *Id.* at 11. Cabela's did not then carry suppressors. Martinez Dep. (Dkt. 227, Ex. 3) 192:20–25. Gemtech's witness list indicates that Martinez will testify that Gemtech expected to reach the earn-out cap "based on its domestic growth and other expected sales." Dkt. 235 at 3. Gemtech's damages expert, Matthew Murdock, ties his higher market-share scenarios to "placing products in big box stores (e.g., Cabela's)," which he calls "a substantial potential revenue stream." Murdock Rebuttal Rpt. (Dkt. 223-8) at 10, 15.

Martinez has at times described the Cabela's business as effectively decided. *See* Martinez Dep. 193:1–4, 193:13–18. The Cabela's documents produced in discovery, however, reflect vendor-onboarding steps rather than a purchase order or volume commitment. In July 2017, Cabela's invited Gemtech to begin the process for its Vendor Trade Agreement ("VTA"), Cabela's standard onboarding agreement for new vendors. Stidham Decl., Ex. A. On August 17, 2017, Gemtech's Chief Financial Officer, Mark Thompson, forwarded Martinez an e-signature notice referring to an "executed Vendor Trade Agreement." *Id.*, Ex. B. The signed VTA has not been produced. Martinez later returned Cabela's Proposed Product Listing ("PPL"), a vendor-submitted form proposing items for Cabela's to carry; it lists 43 products ("SKUs," or stock-keeping units) but lists "Annual Estimated Units Ordered" as zero. *Id.*, Ex. C; *see* Murdock Rpt. at 11.

Gemtech's account of what big-box retailers would have purchased comes from Martinez, and Murdock adopts it. Martinez has testified that Cabela's was planning to carry more than 70 suppressor products, that Gemtech would supply 50 of them, that a pilot program would lead to all 77 Cabela's stores, and that the initial order would be "quite large." Martinez Dep. 185:18–22, 193:1–4; Stidham Decl., Ex. D (GT 30(b)(6) 84:23–25). He estimated order volume by multiplying an assumed number of units per SKU by an assumed store count. *Id.*, Ex. D (GT 30(b)(6) 84:12–20). And he attributes the pilot-program decision to unnamed "head buyers." Martinez Dep. 193:10–18. Murdock's higher market-share scenarios likewise assume placement in big-box retailers such as Cabela's, Gander Mountain, and Scheels, and his Cabela's assumptions are "[b]ased on discussions with Ron Martinez." Murdock Rpt. at 11 & n.55; Murdock Dep. (Dkt. 227, Ex. 1) 73:23–74:4, 258:4–16.

Gemtech has not identified any trial witness from Cabela's, Gander, Scheels, Bass Pro Shops, Sportsman's Warehouse, or Silencer Shop to testify about retailer decisions, purchase quantities, pricing, rollout timing, or store counts. Dkt. 235. And Martinez testified that, when he was terminated, there was no written agreement with Cabela's, no purchase order, and no written commitment to a pilot program. Martinez Dep. 186:16–187:22, 190:6–8, 193:5–8. He also acknowledged, as to demonstrations generally, that "[n]othing is a guarantee." *Id.* 202:2–4. And his discussions with Gander about SKUs did not result in a purchase order. *Id.* 191:13–20.

## III. LEGAL STANDARD

The Court "must decide any preliminary question about whether . . . evidence is admissible," Fed. R. Evid. 104(a), and may do so before trial, *see* Fed. R. Evid. 103(b); Fed. R. Civ. P. 16(c)(2)(C). A motion in limine is "a procedural mechanism to limit in advance testimony or evidence in a particular area," *United States v. Heller*, 551 F.3d 1108, 1111 (9th

Cir. 2009), and a "useful tool[] to resolve issues which would otherwise clutter up the trial," *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Even in a bench trial, such motions "may be appropriate" for "logistical and other reasons," *Heller*, 551 F.3d at 1112, and a ruling here will set the scope of deposition designations and live testimony. *See Alves v. United States*, No. 3:19-cv-00044-REP, 2022 U.S. Dist. LEXIS 105246, at *4–11 (D. Idaho June 10, 2022) (excluding expert testimony before bench trial).

## IV. ARGUMENT

### A. No Witness May Testify to What Big-Box Retailers Would Have Bought.

Gemtech's damages theory relies on the premise that national retailers—especially Cabela's—would have placed substantial orders for Gemtech suppressors and rolled them out across dozens of stores. Those are purchasing and rollout decisions of nonparty retailers, and the evidence of them comes from Martinez's projections rather than from any retailer decisionmaker or written commitment.

A witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. A lay witness's opinion must be "rationally based on the witness's perception." Fed. R. Evid. 701(a). A lay opinion witness may not speculate or rely on hearsay. *See Seyb v. Members for the Idaho Bd. of Med.*, No. 1:24-cv-00244-BLW, 2026 U.S. Dist. LEXIS 123124, at *6–7 (D. Idaho June 2, 2026) (explaining that lay witnesses "cannot rely on speculation or hearsay" and "must rely on their personal experience and observations"); *United States v. Lopez*, 762 F.3d 852, 863–65 (9th Cir. 2014) (explaining that lay opinion must be "predicated upon concrete facts within [the witness's] own observation and recollection" (internal quotation marks omitted)).

Those rules limit Martinez to what he personally perceived in his dealings with retailers—what he said, what he did, and what documents he submitted. They do not permit him to testify that Cabela's would have ordered particular volumes, carried a particular number of SKUs, rolled suppressors out to a particular number of stores, or done so on a particular timeline. Martinez did not control Cabela's decisions, and by his own account none of the usual markers of a retailer decision existed—no written agreement, purchase order, or pilot commitment. Martinez Dep. 186:16–187:22, 190:6–8, 193:5–8. His volume estimates multiply assumptions—an assumed number of units per SKU times an assumed store count—rather than reflecting any retailer decision, commitment, or order. Stidham Decl., Ex. D (GT 30(b)(6) 84:12–20). And he attributes the pilot-program decision to unnamed "head buyers." Martinez Dep. 193:10–18. A witness's relationships with buyers do not give him personal knowledge of a retailer's purchasing and rollout decisions.

Courts exclude this kind of predictive testimony. A lay witness may not offer an opinion that "necessarily speculates on the probability of future events," *Seyb*, 2026 U.S. Dist. LEXIS 123124, at *7, and Rule 701 "prohibits opinions" based on statements from unidentified third parties "well beyond [the witness's] own personal experience," *United States v. Lloyd*, 807 F.3d 1128, 1155 (9th Cir. 2015). The same principle applies to projected revenue. A company officer may testify to revenue lost on existing accounts "based on [the company's] actual operating history," but not to projections of new business where the proponent has "not shown how the projected revenue losses relate to [the company's] actual operational history." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, No. 2:04-CV-08-BES-LRL, 2006 U.S. Dist. LEXIS 97235, at *20–21 (D. Nev. Mar. 6, 2006), *aff'd*, 523 F.3d 1051 (9th Cir. 2008). Gemtech had no history of suppressor sales to Cabela's, and Cabela's did not then carry suppressors. Martinez Dep.

192:20–25. Other courts routinely exclude company officers' projections of sales to customers that never committed to buy. *See US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (affirming exclusion of company president's lost-profits testimony as "speculation and conjecture" where he "could not identify any customer interested in buying . . . a specific amount . . . at a specific price" and had no "written commitments from any customer"); *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 863–64 (7th Cir. 2009) (affirming exclusion of company president's lay lost-profits testimony where he lacked personal knowledge of how third parties would respond to the opportunity); *Spectre Corp. v. United States*, 160 Fed. Cl. 486, 501–03 (2022) (excluding CEO's and salesman's projected sales to prospective customers as not rationally based on their perception and, to the extent based on customers' statements, as hearsay).

Nor can Gemtech recast Martinez's projections as lay testimony grounded in industry experience. To the extent Martinez offers opinions about the likelihood of a chain-wide rollout, the number of units per SKU, or expected volumes based on specialized experience, those opinions fall within Rule 702 and are barred as lay opinion. Fed. R. Evid. 701(c); *Seyb*, 2026 U.S. Dist. LEXIS 123124, at *7–8. Gemtech disclosed no non-retained expert opinions. *See* Dkt. 222.

These limits apply however Gemtech offers the testimony—whether to argue that the $36 million threshold was achievable through big-box retail, *see* Dkt. 235 at 3, or that Martinez's termination cost Gemtech big-box revenue it otherwise would have earned. Either use depends on proof of what nonparty retailers would have purchased, proof Martinez cannot supply. Fed. R. Evid. 401, 402, 602, 701. Nor can evidence of hypothetical retailer purchases substitute for proof of breach. The APA left the operation of the Business, including whether and how to pursue any

retail account, to Smith & Wesson's "sole discretion," imposed no efforts obligation, and limited that discretion only through provisions that turn on Smith & Wesson's knowledge and purpose, not on Martinez's expectations. APA § 1.6(c).

### B. Rules 801 and 802 Bar Buyer Statements Offered to Prove Retailer Intent or Expected Purchases.

Gemtech also cannot avoid Rules 602 and 701 by substituting buyer statements for Martinez's own projections. Much of Martinez's account consists of what he says retail personnel told him about SKU counts, store counts, rollout plans, and expected order size (*e.g.*, the SKU and store counts Cabela's was "looking at," that a pilot program would lead "to all the stores," and that the initial order would be "quite large"). *See* Stidham Decl., Ex. D (GT 30(b)(6) 84:1–25); Martinez Dep. 185:18–22, 192:23–193:4. Gemtech has also listed trial exhibits recounting those discussions, including Martinez's notes, his SWOT presentation, and his text messages with Mark Buckingham. Dkt. 236 (Pl. Exs. 1, 69, 221). Emails or messages from retail personnel offered for the same purpose present the same problem.

Offered to prove what Cabela's or other retailers would have purchased or implemented—SKU counts, store counts, rollout timing, or expected order volume—these are out-of-court statements offered "to prove the truth of the matter asserted," and therefore hearsay. Fed. R. Evid. 801(c), 802; *see Spectre*, 160 Fed. Cl. at 502–03 (sales projections resting on prospective customers' statements that they would purchase were based on inadmissible hearsay). Gemtech has not identified any retailer witness who will testify to retailer decisions, purchase quantities, or rollout plans. Dkt. 235.

No exception applies. Rule 803(3) admits a statement of "the declarant's then-existing state of mind (such as motive, intent, or plan)," but not "a statement of memory or belief to prove

the fact remembered or believed.” Fed. R. Evid. 803(3). That limit applies “when the statements are offered to prove the truth of the fact underlying the memory or belief.” *Wagner v. County of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013). Gemtech would not be offering the buyer statements to show how any buyer felt; it would be offering them to prove the underlying facts—that Cabela’s would have carried Gemtech products in particular quantities, across particular stores, on a particular schedule. Nor is a buyer’s statement predicting what Cabela’s would do a statement of the buyer’s own state of mind. Purchasing and rollout decisions belonged to Cabela’s as a company, and a statement describing what another will do “has nothing to do with” the declarant’s state of mind; as to that assertion, “no state of mind exception or any other exception to the hearsay rule would be available.” *United States v. Pheaster*, 544 F.2d 353, 376–77 (9th Cir. 1976).

Even if the retail personnel testified in court, their predictions would have to satisfy the personal-knowledge and lay-opinion requirements. Fed. R. Evid. 602, 701. Those requirements apply equally to out-of-court declarants whose statements are offered for their truth. *See Collier v. Turner Indus. Grp., L.L.C.*, 797 F. Supp. 2d 1029, 1041 (D. Idaho 2011). The problem is compounded where, as here, the statements are attributed to unnamed “head buyers” and are not tied to any purchase order or written commitment.

Nor can Gemtech fall back on the apparent reliability of the statements. “The Federal Rules of Evidence do not include a ‘reliability’ exception,” and “the exceptions themselves . . . are the criteria for whether hearsay evidence is sufficiently reliable to overcome the rule against hearsay.” *United States v. Orm Hieng*, 679 F.3d 1131, 1142 (9th Cir. 2012). The residual exception requires written notice before trial unless the court, for good cause, excuses its absence, Fed. R. Evid. 807(b), and Gemtech has given none. *See Orm Hieng*, 679 F.3d at 1142

(rejecting Rule 807 argument "[w]ithout any showing that the government provided this required notice or that the notice should be excused"). Nor could secondhand accounts of statements attributed to unnamed buyers satisfy the exception's requirement of "sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1).

Finally, Gemtech cannot recast buyer statements as evidence of buyer "interest" or as "background." A statement that is relevant to the asserted non-truth purpose only if it is true remains hearsay. *Lloyd*, 807 F.3d at 1162 (rejecting state-of-mind theory where the statements were "not relevant" to that purpose "unless [they] were true"); *see also Spectre*, 160 Fed. Cl. at 502–03 (rejecting argument that customers' statements supporting sales projections were not offered for their truth). Buyer enthusiasm matters to causation and damages only as a proxy for what retailers would actually have purchased—which is the truth of the statements. Fed. R. Evid. 401, 402.

### C. No Witness May Prove the Terms of an Unproduced Cabela's Agreement or Recast Onboarding Documents as a Purchase Commitment.

Gemtech cannot use testimony to supply the terms of a Cabela's agreement that no one has produced, or to recast the onboarding documents that were produced as a commitment to buy. "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. The rule "does apply when a witness seeks to testify about the contents of a writing . . . without producing the physical item itself—particularly when the witness was not privy to the events those contents describe." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). Its application "turns on 'whether contents are sought to be proved.'" *Id.* (quoting Fed. R. Evid. 1002 advisory committee's note). "If testimony attempts to prove the contents of the document, such testimony is not admissible unless the

original document is provided or an indication the original is lost." *Marceau v. Dep't of Ins.*, No. 1:09-CV-00514-N-EJL, 2011 U.S. Dist. LEXIS 87076, at *17–18 (D. Idaho Aug. 5, 2011) (striking testimony describing the substance of emails that were never produced).

Thompson referred to an "executed Vendor Trade Agreement," Stidham Decl., Ex. B, and Martinez has at times described the Cabela's business as effectively decided, *see* Martinez Dep. 193:1–4, 193:13–18, but the signed VTA has never been produced. Absent the agreement itself, testimony that the VTA or any other Cabela's agreement contained a purchase obligation, volume term, pilot commitment, or rollout term would prove the contents of an unproduced writing, and Rule 1002 requires the original. Fed. R. Evid. 1002. "Where the rule applies, the proponent must produce the original (or a duplicate . . . ) or explain its absence," *Bennett*, 363 F.3d at 953, and Gemtech has made no showing under Rule 1004 that would permit other evidence of the agreement's contents. *See* Fed. R. Evid. 1004, 1008. The Court should exclude testimony describing the terms of any Cabela's agreement.

The same concern applies to the onboarding documents that were produced—the VTA correspondence and the PPL. Stidham Decl., Exs. A–C. None states a purchase commitment, and the PPL lists "Annual Estimated Units Ordered" as zero. *Id.*, Ex. C. A witness's characterization of those documents as a purchase commitment or pilot program would not be based on personal knowledge of any Cabela's decision or rationally based on the witness's perception. It would substitute the witness's gloss for what the documents say and invite the Court to treat onboarding paperwork as proof of a commitment the documents do not contain. Fed. R. Evid. 602, 701(a), 403.

**D. Rule 703 Does Not Permit Murdock to Relay Martinez's Big-Box Account as Substantive Evidence.**

Gemtech cannot use its damages expert to put Martinez's big-box account—and any buyer statements embedded in it—before the Court as proof that Cabela's or other retailers would have purchased specific volumes or rolled products out across their stores. Murdock's big-box assumptions come from Martinez. Murdock Rpt. at 11 & n.55; Murdock Dep. 73:23–74:4, 258:4–16.

Rule 703 permits an expert to base an opinion on inadmissible facts or data that experts in the field would reasonably rely on, and it allows the proponent to disclose otherwise inadmissible facts or data "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Even when disclosed, those facts explain the basis of the opinion; they are not admitted to establish the truth of what they assert. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984) (Rule 703 "merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion" and "does not allow the admission of the reports to establish the truth of what they assert"); *see also United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997) (otherwise inadmissible evidence "cannot be properly admitted simply by attachment to an appraiser's report").

Even if Murdock describes assumptions drawn from Martinez's account to explain the basis for his opinions, that reliance does not supply admissible proof that any retailer would have purchased particular quantities, carried particular SKUs, or implemented a particular rollout. An expert "may not simply act as a conduit to parrot a party's position on an issue." *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-00031-AKB, 2024 U.S. Dist. LEXIS 16930, at *13 (D. Idaho Jan. 29, 2024); *see TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir. 1993) (damages expert's adoption of another's sales projections was not reasonable reliance

under Rule 703; "[b]y assuming the sales projections . . . , [the expert] in essence assumed the very matter at issue"); *US Salt*, 563 F.3d at 691 (affirming exclusion of damages expert who "relied almost exclusively on [the company president's] speculative estimates without any independent verification"). The Court should therefore preclude Gemtech from offering Martinez's big-box account, whether through Murdock's testimony or his reports, as substantive evidence of what retailers would have purchased or implemented. With that account limited to explaining the basis for his opinions, Murdock's higher market-share scenarios rest on no admissible evidence of big-box purchases to the extent they depend on big-box placement. That provides an additional basis to exclude those opinions. *See* Dkt. 223-1.

## V. CONCLUSION

Smith & Wesson respectfully requests an order in limine providing that, at trial and in any deposition testimony offered at trial:

No witness may testify to what any big-box retailer would have purchased or implemented—including volume, revenue, SKU count, store count, or rollout timing—whether offered to show that the earn-out threshold was achievable or that Martinez's termination cost Gemtech big-box revenue;

No witness may testify to, and no party may offer, out-of-court statements by personnel of Cabela's, Gander Mountain or Gander Outdoors, Scheels, Bass Pro Shops, Sportsman's Warehouse, or Silencer Shop to prove retailer intent, rollout timing, SKU or store counts, or expected order volume;

No witness may (a) characterize the Cabela's new-vendor form, Vendor Trade Agreement materials, Proposed Product Listing, or similar onboarding communications as a purchase commitment or pilot program, or (b) testify that the Vendor Trade Agreement or any

other Cabela's agreement contained a purchase, volume, pilot, or rollout term, absent production of the agreement or a foundation under Rule 1004; and

Murdock's reliance on Martinez's account of big-box retailers, or on statements Martinez attributes to retail buyers, does not make that account or those statements substantive evidence of what any retailer would have purchased, whether presented through Murdock's testimony or his reports.

DATED this 23rd day of November, 2026.

HOLLAND & HART LLP

By *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of November, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kim J. Trout
Alyssa R. Jones
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755

*Attorneys for Plaintiff*

- ktrout@trout-law.com
- ajones@trout-law.com

*/s/Erik F. Stidham*
Erik F. Stidham
of HOLLAND & HART LLP

37189049_v3