IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GEMINI TECHNOLOGIES, )
INCORPORATED, an Idaho ) Case No. 1:18-CV-00035-CWD
corporation, )
Plaintiff, )
vs. )
SMITH & WESSON, CORP., a )
Delaware corporation; and )
AMERICAN OUTDOOR BRANDS )
CORPORATION, a Massachusetts )
corporation, )
Defendants. )
________________________________)

VIDEOTAPED 30(b)(6) DEPOSITION OF GEMINI TECHNOLOGIES,

TESTIMONY OF RONALD JOHN MARTINEZ

TAKEN MAY 28, 2024

REPORTED BY:
ANDREA L. CHECK, CSR No. 748, RPR, CRR
Notary Public

and affiliations for the record, beginning with the noticing attorney.
MR. STIDHAM: Erik Stidham of Holland & Hart on behalf of the defendants.
MR. McCRANEY: Zach McCraney of Holland & Hart on behalf of the defendants.
MR. TROUT: Kim Trout of Trout Law on behalf of the plaintiff.
VIDEOGRAPHER: Thank you. Will the court reporter please swear in the witness and then counsel may proceed.
COURT REPORTER: Okay. Will you raise your right hand, please.
THE WITNESS: Yes.

RONALD JOHN MARTINEZ,
first duly sworn to tell the truth relating to said cause, testified as follows:

EXAMINATION
QUESTIONS BY MR. STIDHAM:
Q. Good morning, Mr. Martinez.
A. Good morning.
Q. My name is Erik Stidham, and I represent the defendants in this case.



Mr. Martinez, would you state your full name for the record.
A. Ronald J. Martinez, or John is the middle name.
Q. And what was the year of your birth, Mr. Martinez?
A. 1966.
Q. Thank you. And where do you currently reside?
A. In Eagle, Idaho.
Q. Mr. Martinez, have you ever had your deposition taken before?
A. Once.
Q. And can you give me just the general context of that?
A. It was just general -- it was a long time ago, ten years ago.
Q. What did it relate to?
A. It was a discussion within the company, so...
Q. So you had a -- was there a lawsuit involved?
A. Yes.
Q. And were you a party to that lawsuit?
A. Yes. I would guess I was, yes.
Q. Okay. Were you a plaintiff or a defendant?
A. Plaintiff.
Q. What was the lawsuit about?



A. Discussion of employment.
Q. When you say "discussion," did you -- just so I'm clear, as the plaintiff were you asserting legal claims against your employer?
A. Yes, sir.
Q. And which employer was that?
A. It was HSBC.
Q. And what was the nature of your allegations?
A. I had left the company, and they owed some money.
Q. What did they owe money for?
MR. TROUT: I'm going to object to the line of questioning. It's far outside of the 30(b)(6) notice for which Mr. Martinez is appearing.
MR. STIDHAM: Mr. Trout, that's fair. I was just trying to get some background. But I would ask, Mr. Trout, if you'd just object to form in the future.
Q. (BY MR. STIDHAM) But we'll get some more background on that when we take your individual deposition. Okay?
But, anyway, you've had your deposition taken at least once; is that fair?
A. Yes, sir.
Q. Okay. Did you have a chance to talk with your attorneys regarding deposition procedures prior to this



deposition here today?
A. Yes.
Q. And did you meet with your attorneys to prepare for this deposition?
A. Yes.
Q. And I don't want to ask about the substance of those conversations. Okay? So I'm not asking that.
But who did you meet with to prepare for your deposition here today?
A. My attorneys.
Q. And who is that, specifically?
A. Kim Trout and Steve.
Q. And how long did you meet with them to prepare for your deposition?
A. A few hours. I don't recall the exact amount of time.
Q. No, an estimate is fine, sir; that's all I'm looking for.
A. A few hours.
Q. Okay. And when did that take place?
A. Last week.
Q. And did you do anything else to prepare for your deposition here today?
A. Yeah. I read the second amended complaint, looked that over, looked over the notes here that you







Exhibit D

Q. Anybody else, sir, besides that individual?
A. I can't remember exactly -- I can't remember the...
Q. Okay. And then I think you indicated the big box projects that were being pursued -- or big box opportunities that were being pursued were Cabela's and then Sportsman's Warehouse, and I apologize I might have missed one other.
A. Gander Mountain.
Q. Who was involved at GT in pursuing those opportunities?
A. I was.
Q. You were. And we've talked about Cabela's?
A. Uh-huh.
Q. Who at Sportsman's Warehouse were you interacting with -- or, excuse me -- who were you working with to get an opportunity at Sportsman's Warehouse?
A. It would be in purchasing. I cannot remember the name at this point.
Q. Would it be reflected in documents?
A. Yeah, it would be somewhere.
Q. And what was the opportunity at Sportsman's Warehouse?
A. To have Gemtech in their stores to sell.



Q. And then Gander Mountain was another opportunity you were pursuing; correct?
A. Uh-huh. Uh-huh.
Q. Who at Gander Mountain were you working with?
A. I can't remember. I can't remember his name. I can't remember. I can't recall his name.
Q. But that would be reflected in emails?
A. Yeah.
Q. That you would have had?
A. Yes, I imagine so.
Q. All right. And then the opportunity with Cabela's, I understand, was to have suppressors, GT -- or, excuse me -- Gemtech suppressors sold at Cabela's; is that correct?
A. That is correct.
Q. Do you know whether Cabela's sells any suppressors?
A. I think they do, but, again, I pulled myself out of the market, but I'm pretty sure they do.
Q. Do you know whether Sportsman's Warehouse sells any suppressors online or in their stores?
A. Last time I was there they did, yes.
Q. What about Gander Mountain?
A. They're Midwest. I don't know off the top of my head.



Q. Did you have any discussions with Cabela's, Gander Mountain, or Sportsman's Warehouse regarding anticipated volume of sales of GT suppressors?
A. Yes. How many SKUs they were looking at, and how many stores they were looking at.
Q. And what was -- were the estimates -- well, did GT somehow calculate the anticipated revenue from the SKUs in stores?
A. Yes.
Q. What was the -- what were the other factors being estimated?
A. Well, you looked at the SKUs and how many SKUs, you looked at how many stores they had. And Cabela's was 77, plus they were in the process with Bass Pro, and I don't remember how many stores they had total. And they were looking at 50 SKUs, if I remember right. Each SKU is at least four deep, timesed by 77 stores, plus Bass Pro, which is -- I forget how many stores those were, and that's where you get your numbers.
Q. So how many sales -- how were you projecting number of sales in the stores?
A. Well, they would have to have those initial going into the stores. I'm pretty sure that initial order would be quite large. And that was something they



were working out at that time was how they were going to process it and how they were going to go through the ATF process in the stores.
Q. Did Gemtech ever reach any written agreements with Cabela's, Sportsman's Warehouse, Gander, or any other big box stores to sell product?
A. I don't know if there's a written agreement, but we had orders from Sportsman's Warehouse. We also were getting our initial orders ready for Cabela's of the products they were going to put in.
Q. So was there -- I'm sorry, didn't mean to interrupt. Go ahead.
A. No, that's it.
Q. So there's a -- you believe there's a PO that was -- or some other purchase order document that was signed between the big box stores and GT prior to the APA?
A. Well, you lumped them all together, so I --
Q. Fair enough. Let me back them up.
For any of those three, was a purchase order in place for GT products at the time of the APA?
A. I know Sportsman's Warehouse had a PO. In regards to Cabela's, we were going through what SKUs they were going to have in the stores. We were choosing.







Exhibit D

REPORTER'S CERTIFICATE

I, ANDREA L. CHECK, CSR No. 748, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony and all objections made were recorded stenographically by me and transcribed by me or under my direction;

That the foregoing is a true and correct record of all testimony given, to the best of my ability;

I further certify that I am not a relative or employee of any attorney or party, nor am I financially interested in the action.

IN WITNESS WHEREOF, I set my hand and seal this 6th day of June, 2024.

Andrea Check

ANDREA L. CHECK, CSR No. 748, RPR, CRR
Notary Public
1109 West Main Street, Suite 220
Boise, Idaho 83702

My Commission expires July 20, 2028.



Kim J. Trout
ktrout@trout-law.com

June 7, 2024

RE: Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
5/28/2024, Ronald John Martinez 30(b)(6) (#6706852)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at Calendar-Idaho@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions



Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
Ronald John Martinez 30(b)(6) (#6706852)

ERRATA SHEET

PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________
PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________
PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________
PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________
PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________
PAGE_____ LINE_____ CHANGE________________________
________________________________________________
REASON__________________________________________

_______________________________ _______________
Ronald John Martinez 30(b)(6) Date



Gemini Technologies, Inc. v. Smith & Wesson Corp., Et Al.
Ronald John Martinez 30(b)(6) (#6706852)

ACKNOWLEDGEMENT OF DEPONENT

I, Ronald John Martinez 30(b)(6), do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________
Ronald John Martinez 30(b)(6) Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS
______ DAY OF ________________, 20___.

__________________________
NOTARY PUBLIC