Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
Cameron L. McCue (ISB #12329)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Email: efstidham@hollandhart.com
jmaiko@hollandhart.com
clmccue@hollandhart.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

GEMINI TECHNOLOGIES, INCORPORATED, an Idaho corporation,

Plaintiff,

vs.

SMITH & WESSON SALES COMPANY, a Delaware corporation; and SMITH & WESSON BRANDS, INC., a Nevada corporation,

Defendants.

Case No. 1:18-cv-00035-REP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE RE: CONSTRUCTION OF 1.6(c)**

## I. INTRODUCTION

The trial on Count One should be about the nine operating decisions Gemtech pleaded—not about an amorphous cumulative-failure theory. Section 1.6(c) of the Asset Purchase Agreement ("APA") does not impose a general duty to maximize Gemtech revenue or preserve Gemtech's opportunity to meet the earn-out threshold. It gives Smith & Wesson sole discretion over the Business and then creates two decision-specific limits: no action taken in bad faith for the specific purpose of avoiding or reducing the Earn-Out Payment, and a procedural obligation

to consult with Ronald J. Martinez only before a decision that Smith & Wesson knew would negatively affect that payment. The Third Amended Complaint ("TAC") pleads nine such decisions in the section Gemtech titled "Smith & Wesson Breaches Section 1.6 Earn-Out Provisions." Each is tied to an actor, a document, or a specific time, and each is paired with an allegation that Smith & Wesson did not consult Martinez. Dkt. 213, ¶¶ 98-126.[1]

Smith & Wesson asks the Court to hold Gemtech to that list. The request follows from the contract, which operates one decision at a time, and from Gemtech's own pleading choices. Its Rule 30(b)(6) designee, when asked what Smith & Wesson conduct Gemtech contended breached the APA, named only pleaded decisions. Now that only the breach-of-contract claim remains, Gemtech attempts to repackage its dismissed fraud and implied-covenant claims by assuming that breach of contract can arise broadly from cumulative conduct that would cause Gemtech brand revenue to fall short of $36 million (and thus miss the earn-out threshold). This new theory of liability contradicts the language of the Earn-Out Provision negotiated between two sophisticated parties represented by counsel.

Smith & Wesson therefore asks the Court to rule that Count One is limited to the nine pleaded decisions; that no other act may be adjudicated as an independent breach; and that no unpleaded breach claim be deemed tried by implied consent. This motion does not seek to exclude evidence of why a pleaded decision was made. It asks the Court to decide, before the evidence comes in, which decisions are on trial as potential instances of breach.

[1] The parties stipulated to striking Paragraph 114 from the TAC (among other paragraphs not discussed in this Motion) and agreed that with those portions stricken, the TAC would remain the operative Complaint. Dkt. 217.

## II. BACKGROUND

### A. Section 1.6(c) Operates Decision by Decision.

Section 1.6(c) gives Smith & Wesson "sole discretion with regard to all matters relating to the operation of the Business" and then limits that discretion in two defined circumstances:

> [P]rovided, that Buyer shall not, directly or indirectly, take any actions in bad faith that would have the specific purpose of avoiding or reducing the Earn-Out Payment hereunder. In addition, Buyer agrees to consult with Ronald J. Martinez in advance of any decision made relating to the operation of the Business only if Buyer has knowledge that such decision will negatively impact the Earn-Out Payment.

APA § 1.6(c) (Dkt. 213-4 at 21–22). The first sentence (the "Act Proviso") requires, for each challenged action, both bad faith and a specific purpose of avoiding or reducing the Earn-Out Payment. The second (the "Consultation Contingency") is triggered only by knowledge, before a particular decision, that "such decision" will negatively impact the Earn-Out Payment.

### B. The TAC Pleads Nine Decisions, Each with Its Own No-Consultation Allegation.

The TAC identifies the following decisions, each followed by an allegation that Smith & Wesson did not consult Martinez:[2]

| No. | Pleaded act or decision | TAC ¶¶ |
|---|---|---|
| 1 | Hold on all current export licenses (Bahrain, MRKAS, UK MOD), August 29, 2017 | 98 |
| 2 | Postponement of Jason Pace's international demonstrations, travel, and activities "[i]mmediately following August 7, 2017" | 103–04 |
| 3 | Termination of Martinez, September 18, 2017 (intent allegations at ¶¶ 100–02) | 99 |
| 4 | Termination of Pace, September 28, 2017 | 105–06 |
| 5 | January 2018 decision to reduce the five-person inventory and control group | 109 |

[2] "Smith & Wesson" refers to both Defendants.

| No. | Pleaded act or decision | TAC ¶¶ |
|---|---|---|
| 6 | February 1, 2018 terminations under the "GT RIF Plan" | 117–19 |
| 7 | May 15, 2018 assignment of Gemtech brand management to Tony Miele | 120–21 |
| 8 | June 27, 2018 terminations of remaining Idaho employees | 122–23 |
| 9 | Decision to wind down and close the Idaho operations, carried out beginning January 2019 | 115, 124–25 |

Paragraph 126 then alleges a failure to consult "about these, and other important decisions," without naming any other decision. Dkt. 213, ¶ 126.

**C. Gemtech Amended Three Times and Never Pleaded Additional Acts or Decisions as Section 1.6 Breaches.**

Gemtech's original complaint alleged four decisions: the license cancellation, the Martinez termination, the postponement of international demonstrations, and the Pace termination, followed by a failure to consult "about these important decisions." Dkt. 1 ¶¶ 41–45, 59–61.

Gemtech amended its Complaint three times, adding factual allegations that it contends constitute breaches of the APA to reach the nine alleged breaches in the above table. *See* Dkt. 54, 164, 213, 217.

**D. The Court Dismissed the Fraud and Implied-Covenant Claims With Prejudice.**

At summary judgment the Court allowed Count One to proceed and identified as presenting triable questions "Defendants' termination of Mr. Martinez, termination of Mr. Pace in late September 2017, termination of 5 key GemTech employees by June 2018, and shuttering of GemTech's business operations in Idaho in January 2019." Dkt. 211 at 29. The Court dismissed Count Two, which alleged that Smith & Wesson breached the implied covenant "by

acting in bad faith to intentionally divert resources away from GemTech and deny it a meaningful opportunity to achieve the earnout payment," because the integrated Section 1.6(c) clause left "no contractual gap" to fill. *Id.* at 29, 31–33. It dismissed Count Three, fraud in the inducement, because Smith & Wesson "made no misrepresentations of existing fact." *Id.* at 22. Both dismissals were with prejudice. *Id.* at 37–38.

### E. Gemtech's Witness Disclosures Recast Its Dismissed Theories as a Cumulative Breach Theory.

Gemtech's witness disclosures reveal the problem this motion is meant to prevent. Martinez is expected to testify that Smith & Wesson took direct and indirect actions that made the $36 million threshold impossible to reach and therefore made an earn-out impossible. Dkt. 235. That cumulative theory bypasses the express Section 1.6(c) questions—what action was taken, what decision was made, what Smith & Wesson specifically intended, and what Smith & Wesson knew before that decision. It also mirrors the theories the Court dismissed: the implied-covenant theory that Smith & Wesson diverted resources and denied Gemtech a meaningful earn-out opportunity, and the fraud theory that the earn-out was represented as achievable when it was not.

## III. LEGAL STANDARD

The Court may decide the scope of trial before evidence is offered. The Court has inherent authority to rule in limine to manage trial, *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), and the Order Setting Trial directs counsel to raise anticipated evidentiary questions in pretrial briefs. Dkt. 218, ¶ 8(b). A pretrial order "controls the course of the action unless the court modifies it," Fed. R. Civ. P. 16(d), and an order issued after a final pretrial conference may be modified "only to prevent manifest injustice," Fed. R. Civ. P. 16(e). When evidence is

admissible for one purpose but not another, the Court "must restrict the evidence to its proper scope." Fed. R. Evid. 105.

## IV. ARGUMENT

### A. Count One Should Be Tried on the Nine Pleaded Acts or Decisions—No More and No Less.

#### 1. Section 1.6(c) requires a decision-specific inquiry into purpose and knowledge.

The first question is what Section 1.6(c) permits the Court to decide. The answer starts with the text. The provision does not ask whether Smith & Wesson's overall operation of the Gemtech brand reduced revenue or made the earn-out harder to achieve. It asks whether a particular action was taken in bad faith for the specific purpose of avoiding or reducing the Earn-Out Payment, or whether a particular decision triggered a consultation duty because Smith & Wesson knew that "such decision" would negatively affect that payment.

The Earn-Out Provision is unambiguous. Thus, the Court "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions." *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016). "[C]lear and unambiguous terms are interpreted according to their ordinary and usual meaning." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). The Court should "strictly construe contract language, especially when, as here, it was negotiated by sophisticated parties, or parties with sophisticated counsel." *Franco v. Avalon Freight Servs. LLC*, No. 2020-0608-MTZ, 2020 Del. Ch. LEXIS 359, at *6 (Del. Ch. Dec. 8, 2020).

Section 1.6(c)'s words are decision-specific. The Act Proviso turns on whether "actions" were taken in "bad faith" and for the "specific purpose" of avoiding or reducing the Earn-Out Payment. APA § 1.6(c). The Consultation Contingency turns on whether, before "any decision,"

Smith & Wesson had knowledge that "such decision" would negatively impact the Earn-Out Payment. *Id.* The required state of mind therefore attaches to the challenged action or decision, not to a retrospective assessment of the business as a whole.

For the Act Proviso, "bad faith" is a subjective, not objective, standard. *See, e.g.*, *ev3, Inc. v. Lesh*, 114 A.3d 527, 540 (Del. 2014) (holding party suing for breach of contract on a provision giving defendant "sole discretion, to be exercised in good faith" must present evidence of defendant's subjective bad faith); *DV Realty Advisors LLC v. Policemen's Annuity & Benefit Fund of Chicago*, 75 A.3d 101, 111 (Del. 2013) (holding contract duty of "good faith" is not a standard of objective reasonableness). "[B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different than the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *SIGA Techs., Inc. v. Pharmathene, Inc.*, 67 A.3d 330, 346 (Del. 2013).

The Consultation Contingency is equally exacting. "Knowledge" means "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." BLACK'S LAW DICTIONARY (9th ed. 2004). It does not mean negligence, hindsight, speculation, assumption, or what Smith & Wesson allegedly should have known after the fact. It is a subjective standard.

The structure of the Earn-Out Provision, coupling each act or decision with a subjective state of mind, requires a decision-by-decision analysis of the challenged conduct and the corresponding state of mind. No contract language permits cumulative analysis of alleged errors. No contract language imposes a duty to pursue, let alone prioritize, the earn-out. Each act has its own potential purpose. And each decision must be assessed based on what Smith & Wesson

knew before that decision about whether it would negatively impact the Earn-Out Payment, especially given that the Earn-Out Payment was considered unlikely. In turn, bad faith or knowledge must be determined based on the individual act or decision.

Earn-out cases apply the same discipline. In *Lazard Tech. Partners, LLC v. Qinetiq N. Am. Operations LLC*, the Delaware Supreme Court affirmed judgment for the buyer because the seller failed to prove that any challenged business decision was "motivated by a desire to avoid an earn-out payment." 114 A.3d 193, 194–95 (Del. 2015). The significance here is not merely that the buyer won; it is that the court evaluated whether a business decision was specifically motivated by earn-out avoidance, rather than asking whether the buyer's overall management decisions made the earn-out less likely.

For instance, Gemtech alleges Smith & Wesson's pausing of international sales activity breached the Act Proviso. Whether Smith & Wesson acted in bad faith for the specific purpose of avoiding or reducing an Earn-Out Payment by taking that action depends on different facts than Smith & Wesson's termination of Martinez's employment. As to the former, the Court would evaluate Smith & Wesson's legitimate reasons for pausing international sales activity, such as licensing issues, product-plan flaws, manufacturing capability, and the number of sales that actually occurred. Those considerations differ from the facts relevant to the Martinez termination, where the Act Proviso analysis would depend on the employment agreement between the parties and Smith & Wesson's reasons for terminating Martinez.

Similarly, the evidence needed to prove Smith & Wesson's alleged "knowledge" under the Consultation Contingency differs depending on which decision is at issue. Smith & Wesson's knowledge when it terminated Martinez is inherently different from its knowledge a year later, when it closed Gemtech's Idaho operations. Apart from the progression of events and passage of

time, different facts would be relevant to each decision. For Martinez's termination, Smith & Wesson would have had to know that Martinez's departure from the Gemtech brand would reduce or eliminate an earn-out. If Smith & Wesson believed Martinez was harming the brand and was incompetent, the Consultation Contingency was not triggered. That inquiry differs from Smith & Wesson's beliefs about the impact of closing Gemtech operations in Idaho, including whether the parties contemplated centering manufacturing in Springfield or elsewhere and whether losing the Idaho employees was certain to reduce or eliminate an earn-out.

The defined term "Earn-Out Payment" reinforces the same limit. Section 1.6 uses that term to mean the payment due if the $36 million threshold is met, not revenue from Gemtech-branded sales. A decision that affected revenue therefore matters only if it supports the required finding about the Earn-Out Payment itself—specific purpose under the Act Proviso or knowledge under the Consultation Contingency.

**2. Rule 8 and the text of Section 1.6(c) make the pleaded decisions the issues for trial.**

A complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quotation omitted); Fed. R. Civ. P. 8(a)(2); *see also Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1096 (D. Idaho 2010) (applying *Pickern* to bar new grounds for breach of the same contract "distinct from the grounds stated in [the] amended Complaint," because considering them "would effectively amend the Complaint after the close of discovery"). The pleading does real work: "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (affirming district court's decision to prohibit plaintiffs from pursuing a new theory raised at

summary judgment); *see also WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992–93 & n.5 (8th Cir. 2018) (holding that "only those theories of breach that [plaintiff] pleaded in its complaint were before the court," and that defendant "was not required to intuit additional theories" of breach). A plaintiff therefore may not supply at a later stage the factual grounds its complaint omitted. *See DK Holdings v. Miva, Inc.*, No. 16-CV-0580 W (AGS), 2019 U.S. Dist. LEXIS 57663, at *8–11 n.2 (S.D. Cal. Apr. 3, 2019) (refusing to consider breach theory first asserted in summary judgment opposition, even though the facts underlying it had been explored in discovery before the operative complaint was filed); *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 16 F. Supp. 3d 1185, 1201 (D. Haw. 2014) (holding that alleged breaches first raised in opposition brief and at hearing "are not part of this action" because they were not pleaded). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings," *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quotation omitted), and trial is not a third, *see Enzo Biochem, Inc. v. PerkinElmer, Inc.*, No. 03 Civ. 3817 (RJS), 2013 U.S. Dist. LEXIS 159060, at *12–14 (S.D.N.Y. Oct. 28, 2013) (holding that new breach theories raised in summary judgment opposition "are not properly before the Court and may not be presented at trial").

Section 1.6(c) makes the grounds of a claim especially concrete. The Act Proviso reaches "any actions" that "would have the specific purpose of avoiding or reducing the Earn-Out Payment." The Consultation Contingency attaches to "any decision" and requires knowledge that "such decision" will reduce the Earn-Out Payment. APA § 1.6(c). Each standard applies to a particular action and a particular state of mind. *See Lazard Tech. Partners, LLC v. Qinetiq N. Am. Operations LLC*, 114 A.3d 193, 195 (Del. 2015) (earn-out covenant "only barred the buyer from taking action specifically motivated by a desire to avoid the earn-out"). Gemtech pleaded

Count One the same way. Its breach section identifies each decision and pairs it with a no-consultation allegation. Dkt. 213 ¶¶ 98, 99, 103, 105, 109, 115, 117, 119, 121, 123, 125. That list is the claim Smith & Wesson has prepared to defend. *See WireCo*, 897 F.3d at 993 (where complaint "was specific as to the nature, bases, and grounds" of alleged breaches, defendant "was entitled to tailor its defense accordingly"). The list also cuts both ways: Smith & Wesson includes the license hold and the Pace postponement, although Gemtech did not press them at summary judgment, because each is pleaded with its own no-consultation allegation. Dkt. 213, ¶¶ 98, 103.

**3. Gemtech chose the nine-decision list with the full benefit of discovery and knowledge of the facts.**

Gemtech's own testimony confirms that the pleaded list defines Count One. Its Rule 30(b)(6) designee testified on May 28, 2024, after preparing from the Second Amended Complaint and its exhibits, that the bad-faith conduct consisted of firing Martinez, firing the director of international sales, firing "pretty much . . . the entire company," and closing Idaho. Stidham Decl., Ex. A (Gemtech 30(b)(6) 233:21–234:3). On consultation, he identified the Martinez and Pace terminations, the firing of "almost the entire company," and the Idaho closure; he separately described the license cancellation as made "without my knowledge or consultation." *Id.* at 238:13–239:3, 123:4–8. He did not identify any other decision. That omission matters because each decision he named is already on the pleaded list.

**4. Paragraph 126's reference to "other important decisions" identifies nothing and cannot enlarge the list.**

Paragraph 126 does not change that result. It alleges a failure to consult "about these, and other important decisions," but it identifies no other decision, decisionmaker, date, or alleged knowledge. TAC ¶ 126. Gemtech may argue that the phrase preserves a broader trial theory, but *Pickern* forecloses that move: a nonexclusive list of hypothetical grounds is no substitute for

investigating and alleging the grounds for a claim. 457 F.3d at 968–69. The point is stronger here. Gemtech has used the phrase since the original complaint, Dkt. 1 ¶ 45, and later amended by name the decisions it wanted to challenge. Paragraph 126 also contains the TAC's only allegation of decision-related knowledge, and it ties that knowledge to "these" decisions, not unidentified ones. It cannot convert unpleaded operating choices into Section 1.6(c) breaches. *See Enzo*, 2013 U.S. Dist. LEXIS 159060, at *14 (barring unpleaded breach theories where the court had warned that a plaintiff may not plead specific breaches "and then argue every possible breach of contract [it could] think of" (quotation omitted)).

**5. Gemtech may not revive the dismissed fraud and implied-covenant theories under Count One.**

Gemtech's fraud allegations cannot do the work of a contract claim. Paragraphs 91 and 92 fall within Count One's incorporated range, but they are pleaded in fraud terms. Paragraph 91 alleges "misrepresentations, and/or material omissions" that "fraudulently induc[ed] GT to enter into the APA," followed by categories of later conduct such as canceled international opportunities, reduced marketing and manufacturing, and barred trade-show attendance. TAC ¶ 91(a)–(g). Paragraph 92 alleges that Smith & Wesson "never intended to fulfill its promises" and lists similar alleged failures, including failure to consult "about the ongoing business operations." TAC ¶ 92(a)–(d). The Court dismissed that fraud theory with prejudice because Smith & Wesson "made no misrepresentations of existing fact." Dkt. 211 at 22, 38. And even apart from dismissal, those categories identify no actor, date, or decision capable of giving fair notice under Rule 8. *Pickern*, 457 F.3d at 969.

Count Two cannot return either. The Court dismissed it because the parties "expressly defined the limitations of the discretion clause," leaving no gap for an implied duty. *Id.* at 31–33. A theory that Smith & Wesson breached Section 1.6(c) by starving, diverting, or dismantling the

business in the aggregate is Count Two under another name. Count One is governed by the express terms, under which Smith & Wesson had to consult Martinez only if it "had knowledge of a decision that would negatively impact the earnout payment." *Id.* at 32.

That does not make ¶¶ 91–92 irrelevant for every purpose. To the extent those paragraphs describe pleaded terminations or the Idaho closure, TAC ¶¶ 91(c), 91(e), 92(b), Smith & Wesson does not ask the Court to strike them. But they should be used, if at all, only as circumstantial evidence of intent or motive behind a pleaded decision—not to prove a separate breach, revive a misrepresentation claim, or impose a duty to preserve Gemtech's opportunity to earn the payment.

**6. The HR-046 and "false and misleading" memorandum allegations are evidence of intent behind the two terminations, not separate breaches.**

The same limiting principle applies to the HR-046 and memorandum allegations. Paragraphs 100 and 101 allege that Debney's September 18, 2017 memorandum stating that Martinez "has left the company" was "false and misleading" because Martinez was fired. TAC ¶¶ 100–01 & Ex. 29. Paragraphs 102 and 106, each framed as "[f]urther demonstrating the bad faith conduct of AOB and Smith & Wesson in terminating" Martinez or Pace, allege that Smith & Wesson failed to follow internal "HR-046 Corrective Action – Disciplinary Procedure." TAC ¶¶ 102, 106 & Ex. 30. Gemtech's own pleading thus treats these allegations as evidence about the Martinez and Pace terminations, not as independent Section 1.6(c) breaches.

They are not separate breaches. HR-046 is an internal policy, not a term of the APA, and Section 1.6(c) does not incorporate it. Martinez's Employment Agreement made him an at-will employee, and the Court recognized that it "undoubtedly allowed" his termination. Dkt. 211 at 29. An announcement made after a termination is not itself a "decision made relating to the operation of the Business" that could reduce the Earn-Out Payment. APA § 1.6(c). Smith &

Wesson does not seek to exclude this evidence, which the Court considered at summary judgment, Dkt. 211 at 7, but it should be received only on the purpose and knowledge behind the two terminations.

**B. The Court Should Rule Now That Evidence Admitted for a Limited Purpose Will Not Try Unpleaded Issues by Implied Consent.**

Rule 15(b)(2) provides that an issue not raised by the pleadings but "tried by the parties' express or implied consent" is treated as if pleaded. In a bench trial, where evidence is often received broadly and sorted later, that rule creates a risk, although the Ninth Circuit applies it narrowly. Implied consent requires that the party "understood the evidence was introduced to prove the unpleaded issue." *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 506 (9th Cir. 1987). "Where evidence alleged to have shown implied consent was also relevant to the other issues at trial, it cannot be used to imply consent to try the unpleaded issue." *In re Acequia, Inc.*, 34 F.3d 800, 814 (9th Cir. 1994) (quotation and brackets omitted); *accord Patelco Credit Union v. Sahni*, 262 F.3d 897, 907 (9th Cir. 2001). Rule 15(b) does not permit amendment to add issues "inferentially suggested by incidental evidence in the record." *Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983) (quotation omitted).

Evidence admitted on intent therefore cannot establish consent to try a different decision, but the line is easier to hold if drawn now. The Court should order that (a) this motion is a timely and continuing objection to all evidence offered to prove an unpleaded breach; (b) evidence received for a limited purpose will not be treated as trying an unpleaded issue by consent; (c) if Gemtech intends to offer evidence to prove a breach other than the nine pleaded decisions, it must say so on the record when it offers the evidence and move under Rule 15(b)(1), for decision under the good-cause and manifest-injustice standards, *Coleman*, 232 F.3d at 1294–95; Fed. R.

Civ. P. 16(e); and (d) the Court's findings under Rule 52(a) will address only the pleaded decisions.

## V. CONCLUSION

For those reasons, the Court should grant the motion and enter an order limiting Count One to the nine pleaded decisions identified above. The same ruling should be reflected in any order entered after the December 21, 2026 pretrial conference so the parties try the case the TAC actually pleads. Fed. R. Civ. P. 16(d); Dkt. 218 ¶ 2.

DATED: November 23, 2026.

HOLLAND & HART LLP

By: *__/s/ Erik F. Stidham__*
Erik F. Stidham
Jennifer M. Aiko
Cameron L. McCue
Attorneys for Defendants

40285750